# TITLE 20 UTILITIES

## CHAPTER 1

### Termination of Electric Service

20-1-101 DEFINITIONS   For purposes of this chapter.

(a)   "Appliances essential for maintenance of health" means any electric device which is certified by a licensed physician as being essential to prevent or to provide relief from serious illness or to sustain the life of a member of the household and for which there is no reasonable alternative.

(b)   "Board" means the Crow Tribal Health Board.

(c)   "Customer" means any purchaser of gas or electric service supplied by a utility for residential purposes.

(d)   "Deliquent Account" means an account for residential service which remains unpaid for at least 20 days after the bill is rendered. The exact due date shall be printed on the face of the bill.

(e)   "Elderly" means any residential electric or gas consumer aged 62 or older, who resides at the service address.

(f)   "Handicapped" means any residential electric or gas consumer who resides at the service address and has any physical or mental impairment which substantially limits one or more of such person's life activities, and such person:

(i)   is certified as being physically disabled by a licensed physician, or

(ii)   is certified as being mentally disabled by a licensed psychiatrist or registered psychologist, Veterans Administration, Social Security Administration, or local board of health.

(g)   "Landlord Customer" means one or more individuals or an organization listed on a gas or electric utility's records as the party responsible for payment of the gas or electric service provided to one or more residential units of a building, which is occupied by a tenant.

(h)   "Person unable to pay or to pay only in installments" means any purchases of electric service for residential purposes, who is a recipient of public assistance and/or has an income at or below Federal poverty guidelines.

(i)   "Residential Building" means a building containing one or more dwelling units occupied by one or more tenants, but excluding hotels and motels not used primarily for residential purposes.

(j)   "Tenant" means any person or group of persons whose dwelling unit in a residential building is provided natural gas or electricity, pursuant to a rental agreement, but who is not the customer of the utility which supplies said gas or electricity.

(k)   "Termination of Service" means a cessation of service effectuated by the utility and not voluntarily requested by a customer.

(l)   "Utility means any person, firm or corporation, including an electric cooperative, which furnishes electric service with the Crow Reservation.

20-1-102 GROUNDS FOR TERMINATION OF SERVICE  Subject to the requirements of this chapter a utility may terminate service to a customer for any of the following reasons:

(a)   Non payment of a deliquent account;

(b)   Misrepresentation of identity for the purpose of obtaining utility service;

(c)   Unauthorized interference, diversion or use of the utility's service situated or delivered on or about the customers premises;

(d)   Failure to comply with the terms and conditions of a deferred payment agreement made in accordance with these rules;

(e)   Refusal to grant a duly authorized representative of a utility access to equipment upon the premises of the customer at reasonable times for the purpose of inspection, maintenance or replacement when the utility has given the customer reasonable notice of the need for such access and the time of visitation;

(f)   Violation of other rules of the Board or utility which adversely affects the health or safety of the customers or other persons, or the integrity of the utility's delivery system.

20-2

### 20-1-103 PROHIBITED GROUNDS FOR REFUSAL OR TERMINATION OF SERVICE

None of the following shall constitute grounds for a utility to refuse or terminate service:

(a) The failure of any person, other than the customer against whom termination is sought, to pay any charges due to the utility;

(b) The failure of a customer to pay for merchandise, appliances or other services not related to delivery of electric service to the customer.

(c) The failure of a customer to pay a minimum periodic service charge incurred prior to the customer's request for service.

(d) The failure of customer or landlord to grant a right of way for utility lines other than those lines delivering electricity directly to the customer.

(e) The failure of the customer to give a lien upon any property, to secure payment for utility service, provided nothing in this section shall prevent a utility from requiring a security deposit consistent with this chapter and rules adopted by the Board.

### 20-1-104 STATEMENT OF TERMINATION POLICY

(1) A current general statement of the utility's termination policy shall be posted in all local business offices of the utility, shall be made available upon request to all existing customers and shall be provided to all new customers when they initiate servce. This statement must be written in clear and understandable language and must include the following information:

(a) The time allowed to pay outstanding bills:

(b) A statement that arrangements for installment payment of delinquent bills can be made at any time prior to termination of service;

(c) The title and telephone number of the utility employee to which inquiries and disputes may be directed;

(d) The time allowed to initiate a dispute;

(f) Instructions for designating elderly or handicapped status or a medical emergency;

(g)  Instructions for designating the presence of special appliances essential for maintenance of health or safety.

(h)  Details of the method of termination as described in 20-1-113.

(i)  Availability of a copy of this chapter, regarding termination of service.

20-1-105   NOTICE PRIOR TO AND AT THE TIME OF TERMINATION
(1)  A utility may not terminate service to any residential, firm, commercial, industrial or other customer unless written notice is served.

(2)  The utility shall have an employee available during normal business hours to orally explain the utilitty's termination policy. The oral explanation must be available in both the Crow and English languages.

(3)  Termination notice shall be served as follows:

(a)  If no payment or request for installment payment is received within 20 days of mailing of a utility bill, the utility must send a second notice by personal service or certified mail (return receipt requested). The second notice must notify the customer that utility service will be disconnected if payment or arrangement for installment payments are not made. Service on the customer must be made at least ten days prior to the date of the proposed termination.

(b)  A utility may terminate utility services upon serving written notice five business days prior to the proposed termination date when a customer:

(i)  remits an insufficient funds check as payment to the utility after receiving the notice of termination, or

(ii)  breaches a payment agreement made pursuant to 20-1-115

(c)  The provisions of (a) shall govern notice of termination to landlord customers, except that the first notice must be sent at least 30 days prior to the date of the proposed termination.

(d)  The utility shall give written notice of the proposed termination for nonpayment to each residential unit reasonable likely to be occupied by an affected tenant of a landlord customer subject to termination. Such notice shall not be rendered earlier than five business days following initial notification to the landlord customer. However, if the landlord

20-4

customer disputes the amount owing, such notice shall not be rendered until the dispute has been resolved. In no event shall such notice be served upon the tenants less than 15 days prior to the termination of service to the landlord customer on account of nonpayment. Upon affidavit, the Board may, for good cause shown by the utility, reduce the minimum time between notification of the landlord customer and notification of the tenants.

(c) Service to tenants shall not be terminated because of a landlord's delinquent account if the tenants or any of them agree to accept responsibility for all future changes. A utility must provide the tenant or tenants at least 30 days to pay any required security deposit if they assume responsibility for changes when the landlord's account is deliquent.

(d) Prior to termination of service the utility must make a diligent attempt to contact the customer, either in person or by telephone, to apprise him of the proposed action. If telephone or personal contact is not made, the utility employee shall leave notice in a place conspicuous to the customer that service will be terminated on the next business day unless the delinquent charges have been paid.

(4) When service is terminated, the utility employee terminating service shall leave notice upon the premises in a place conspicuous to the customer that service has been terminated which gives the address and telephone number of the utility where the customer may arrange to have service restored. The utility shall have personnel available after the time of termination and during normal business hours authorized to reconnect service if the conditions cited as grounds for termination are corrected to the utility's satisfaction and upon payment of any reconnection charge specified in the utility's filed tariffs.

(5) The time required between notices and before termination of service are a minimum. A utility is free to give greater amounts of time.

20-1-106  CONTENTS OF WRITTEN NOTICE  (1) The written notices required by these rules must contain:

(a) The utility's statement of termination policy;

(b) An identification of the customer and service account affected by the proposed termination;

(c) A statement of reasons for termination;

(d) The date of proposed termination;

(e)   The amount of the reconnection fee, if any;

(f)   A summary of rights and remedies, including procedures to dispute the termination notice, provisions relating to elderly and handicapped consumers and those suffering a medical emergency, provisions for customers who are unable to pay their bills and steps necessary to make a claim of inability to pay, availability of installment payment arrangements and sources of financial assistance.

(g)   Designation of the bill in question as actual or estimated;

(h)   Except for notification of tenants, amount owed and time period over which amount was incurred;

(i)   Instructions on how service can be restored;

(j)   In the case of a landlord customer, the date on or after which the utility will notify tenants of the proposed termination.

(k)   In the case of notification of tenants:

(i)   The amount of an average monthly bill for utility service to the premises and the largest bill for utility service to the premises in the previous 12 months;

(ii)   A statement that Board procedures and the Laws of The Crow Tribe may give the tenant certain rights with respect to which the tenant may wish to consult an attorney or Montana Legal Services.

20-1-107   GROUNDS FOR TERMINATION OF SERVICE WITHOUT WRITTEN NOTICE   (1)   A utility may terminate service without prior notice only:

(a)   If a condition immediately dangerous or hazardous to life, physical safety or property exists;

(b)   Upon order by the Crow Tribal Court, the Board or any other public authority authorized by the Crow Tribe.

(c)   If such service is obtained fraudulently or without authorization of the utility.

20-1-108   CUSTOMER'S RIGHT TO DISPUTE A TERMINATION NOTICE

(1)   Utilities must provide a reasonable procedure for customers and tenants to dispute the termination of service.   If

the utility decides such a dispute against the customer, it must do so in writing and must advise the customer that he or she may apeal the decision to the Board. The utility may not terminate service until ten days after it renders a decision on the dispute.

(2) In its investigation of the proposed termination or during any hearing regarding the proposed termination, the Board may make inquiry of the parties as to the following matters, among others:

(a) The extent to which the customer lacks control over their source of money for payments, including such matters as the lateness of public assistance checks;

(b) Weather conditions;

(c) The existence of illness of residents in the affected residences;

(d) The ages of the persons residing in the affected units;

(e) The exisitence of, or potential for, termination of service by other companies.'

(3) The Board may consider and give due weight to the above matters in any decision rendered on the appeal.

(4) The Board may order continuation of service pending appeal provided sufficient arrangements are made to insure payment for future service.

20-1-109   TERMINATION NOTICE FOR NONPAYMENT – WHEN PROHIBITED   (1) A notice of termination of service may not be issued for nonpayment of a delinquent account if the entire amount is disputed by the customer and the customer is currently negotiating the dispute with the utility or has filed a complaint with the Board. A utility may, however, issue a notice of termination of service with respect to that portion of any delinquent account which is not disputed by the customer.

20-1-110   TERMINATION OF SERVICE DURING WINTER MONTHS
(1) During the period of November 1st to April 1st and on any day when the reported ambient air temperature at 8:00 a.m. is at or below freezing or if the U.S. Weather Service forecasts a snowstorm or freezing temperatures for the succeeding 24-hour period, no termination of residential service may take place if the customer establishes that he or she is unable to pay, or able to pay only in installments, that he or she or a member of the household is at least 62 years old or that he or she or a member of the household is handicapped.

(2) No termination of service may take place during the period of November 1st to April 1st except with specific prior approval of the Board.

20-1-111  MEDICAL EMERGENCIES  (1) Service may not be terminated to a residence where a physician or local board of health certifies to the utility that the absence of service will aggravate an existing medical emergency of any permanent resident. All certifications must be in writing. Ther certificate must provide the name and address of the person with a medical emergency that would be aggravated by a termination of service and the office address and telephone number of the certifying physician or local board of health. All written certification must be signed by a physician or by a person with knowledge of the facts at the local board of health. A medical emergency certificate expires in 30 days, but may be renewed on a monthly basis.

(2) To avoid the burden of substantial arrearage at the end of the medical emergency, the utility and the customer, or a representative of the customer, shall negotiate an equitable payment plan that is reasonable and consistent with the customer's ability to pay. If the parties cannot reach a satisfactory agreement, either party may seek such an agreement through the Board.

20-1-112  TIME OF TERMINATION  (1) Service shall not be discontinued on a day, or a day immediately preceding a day, when the services of the utility are not available to the general public for the purpose of reconnecting terminated service. Service may be terminated only between the hours of 8:00 a.m. and 12:00 noon.

20-1-113  METHOD OF TERMINATION  (1) Actual termination may not take place until one day after personal or telephone notice or, in the alternative, one business day after notice has been posted in a place conspicuous to the customer when the customer was not contacted personally or by phone.

(2) The utility's representative (employee) shall attempt to inform the occupant of the affected residence that service is to be discontinued. The employee shall present the occupant with a statement of charges due and shall request verification that the delinquent charges have not been paid or are not subject to a dispute previously registered with the utility or the Board. Upon the presentation of evidence which reasonably indicates that the charge has been paid or is subject to a dispute previously registered with the utility or the Board, service shall not be terminated.

(3)   The employee shall be authorized to accept payment. If payment in full of all delinquent charges is tendered, service shall not be termianted.

(4)   Payment may be tendered in any reasonable manner including personal check.  Payment by personal check is not reasonable if the customer has paid the utility with checks returned for insufficient funds twice or more within the previous two years.

20-1-114   THIRD-PARTY NOTIFICATION   (1)   If a customer designates a third person to receive customer notifications of termination of service, the utility shall forward a duplicate of such notices to the designated third party.  The third party so notified will not be liable for the account of the customer, unless he or she has agreed to be a guarantor for the customer.

(2)   Each utility shall promptly, and in no event later than 90 days after the effective date of these rules, devise procedures reasonably designed to provide a voluntary system of third parrty notification for all customers.  Such procedures shall be submitted by each company in writing to the Board. The Board may require, by a written notification, such modifications of a utility's procedures as it considers reasonably necessary to carry out the purposes of this rule.

20-1-115   PAYMENT ARRANGEMENTS   (1)   When a customer cannot pay a bill in full, the utility must continue to serve the customer if the customer and the utility can agree on a reasonable portion of the outstanding bill to be paid immediately, and the manner in which the balance of the outstanding bill shall be paid.

(2)   In deciding on the reasonableness of a particular agreement, the utility shall take into account the customer's ability to pay, the size of the unpaid balance, the customer's payment history, and the amount of time and reasons why the debt is outstanding.

(3)   If a customer fails to make the payment agreed upon by the date that it is due, the utility may, but is not obligated to, enter into a second such agreement.

(4)   No such agreement or settlement shall be binding upon a customer if it requires the customer to forego any right provided for in these rules.

**20-1-116   IDENTIFICATION OF LANDLORD CUSTOMERS**
Utilities shall determine, prior to termination, whether the residence subject to termination is occupied by a tenant.

**20-1-117   NOTICE TO BOARD OF TERMINATIONS AFFECTING TENANTS**
(1) Notwithstanding anything contained elsewhere in this chapter, prior to any termination for nonpayment which would affect tenants, the utility shall notify the Board in writing of the proposed termination. Upon notice and investigation of such proposed termination, or during any hearing pursuant to the complaint procedures pursuant to 20-1-108, the Board may make inquiry of the parties as to the following matters, among others:

(a)   The amount the tenants have paid to the utility in relation to the amount equal to one month's bill, and the arrearage on any earlier bill due from tenants;

(b)   The number of vacant units in the building;

(c)   The extent to which the tenants have control over their source of money for rent payments, including such matters as the lateness of public assistance checks, direct rent payments by the Welfare Department to the tenants' landlord, or participation by tenants in a leased housing or rental assistance program;

(d)   Whether the tenants are engaged in rent withholding against their landlord;

(e)   The amount of payments recently received by the utility from the landlord and the size of the past due bill of the landlord;

(f)   Whether the utility has pursued collection remedies, other than threatened termination of service, against the landlord;

(g)   Weather conditions;

(h)   The existence of illness of persons residing in the affected units;

(i)   The ages of the persons residing in the affected units;

(j)   The availability of other housing to the tenants; and

(4) The Board may order continuation of service for a period not to exceed 30 days to allow the tenants to make arrangements for service.

**20-1-118 EXEMPTIONS** (1) If hardships result from the application of any of this chapter, or if unusual difficulty is involved in complying with any of this chapter, application may be made by any utility to the Board for an exemption of the application of a particular provision. Such application shall be made on a case by case basis. The Board may not grant a general exemption to any provision of this chapter.

**20-1-119 BOARD AUTHORIZED TO ADOPT RULES.** (1) The Board is authorized to adopt rules to implement this chapter.

(2) The Board must send copies of any rules adopted to all electric utilities at least 30 days prior to the effective date. Service of the rules shall be made by certified mail (return receipt requested).

**20-1-120 REMEDIES** (1) Any person dissatisfied with any decision of the Board made pursuant to this chapter may seek review of the Board's decision in the Crow Tribal Court. The Court shall affirm the decision of the Board if it is supported by substantial evidence and within the discretion of the Board.

(2) The Board and any customer or tenant harmed by a utility's failure to follow this chapter are each entitled to recover twice any actual damage but in no event less than twice the amount of a deliquent bill or other charge sought to be collected by the utility. The utility shall be barred from recovery of charge due at the time it takes action in violation of this chapter.

(3) The Court may order continuation or restoration of service during the pendancy of any action. The Court may require a bond or other security to insure payment for future charges if it orders continuation or restoration service ex parte.

(4) The Court may award attorneys fees to the prevailing party in any action brought under this section.