Case 1:17-cv-00065-SPW-TJC Document 1-4 Filed 05/17/17 Page 1 of 18
Case 1:08-cv-08000 Document 645-4 Filed 05/17/17 Page 1 of 18
EXHIBIT 3

IN THE APSAALOOKE APPEALS COURT
APSAALOOKE (CROW) INDIAN RESERVATION
CROW AGENCY, MONTANA

---

ALDEN BIG MAN, ) Case No. 12-118
)
    Petitioner/Appellant, ) AP-2013-001
)
v. )
) **OPINION**
BIG HORN COUNTY ELECTRIC )
COOPERATIVE, INC., )
    Respondent/Appellee. )
)

---

**Appeal from the Tribal Court of the Crow Nation**
**Honorable Jonni Dreamer-Big Hair, Presiding.**

**Appearances:**

Joe Hardgrave, Attorney for the Appellant, Alden Big Man
James E. Torske, Attorney for the Appellee, Big Horn County Electric cooperative, Inc.

Before Chief Justice Joey Jayne, Justice Leroy Not Afraid, Justice Kari Covers Up
Chief Justice Joey Jayne delivers the opinion of the Court.

## SUMMARY

On January 26, 2012 Big Horn County Electric Cooperative, Inc., a rural nonprofit cooperative incorporated with the State of Montana, disconnected electrical services to Alden Big Man, an enrolled member of the Crow Tribe who lived on the Crow Indian Reservation. The Crow trial court held that it did not have subject matter jurisdiction over this matter, denied Alden Big Man's motion for summary judgment, and dismissed the case. In reviewing the Crow trial court's dismissal of this matter de novo, we reverse and remand to the Crow trial court with instructions.

## I. INTRODUCTION

The Petitioner/Appellant, Alden Big Man (herein after "Big Man"), filed a Complaint on May 2, 2012. The Respondent/Appellee, Big Horn County Electric Cooperative, Inc. (herein after "BHCEC"), filed an Answer to the Complaint on May 14, 2012. Thereafter, Big Man filed a Motion and Brief for Summary Judgment on July 11, 2012. BHCEC filed a Response to summary judgment on July 24, 2012. Next, Big Man filed a Rely Brief on October 22, 2012 with a final response by BHCEC on December 6, 2012. The Crow trial court issued an Order denying Appellant's Motion for Summary Judgment and dismissed the case on May 6, 2013. On May 24, 2013, the trial court issued another Order dismissing this case.

From this decision, Big Man appealed the lower court decision on May 28, 2013. He subsequently filed a Brief in support of his appeal on June 27, 2013. BHCEC filed a responsive appeal brief on July 15, 2013.

This matter remained dormant until a new chief appeals court judge scheduled oral arguments on September 26, 2016. A three (3) panel appeals justices heard Big Man and BHCEC present their appellant briefs.

## II. BACKGROUND

Big Man became a BHCEC member on February 15, 1999. *Appellee Reply Brief, Exhibit A, Application for Membership and for Electric Service.* On that date, he agreed to purchase electric energy from BHCEC on a monthly basis until such time that either party gave a thirty (30) day notice to the other for disconnection of service. BHCEC provides electrical service on the Crow Reservation, Montana. It provides electrical service through a membership

Disconnect Date for January 23, 2012. *Respondent's Answer, Exhibit 2.* Big Man filed a Motion for Summary Judgment on July 11, 2012, *supra*.

### A. BIG MAN ARGUMENT

Big Man initially argued in his motion for summary judgment that there were no genuine issues of material fact and that the lower court should grant summary judgment in his favor. The lone fact Big Man presented was that BHCEC disconnected his electrical service on January 26, 2012. BHCEC agreed that it disconnected the electrical power on January 26, 2012. Next, Big Man addressed BHCEC's affirmative defense that the Crow Tribal court had no jurisdiction over this matter because the correct forum was Montana State district court. Big Man argued that Crow tribal court should have jurisdiction under both the "substantial relationship" and the "fundamental policy of a state" prongs of the forum clause analysis. *Petitioner's Brief, Page 2.* Thirdly, Big Man brought in a "consensual relationship" analysis for the proposition that BHCEC formed a consensual relationship with Big Man, and that therefore, the correct forum was Crow Tribal Court. *Id.* After BHCEC replied, the Crow Tribal Court entered an order in favor of BHCEC and dismissed the case. Big Man appealed.

Big Man presented three (3) issues on appeal. Big Man summarized the issues on appeal as 1) whether the Crow Tribe has jurisdiction to enact and enforce the Crow Tribal Law and Order Code (CLOC) dealing with termination of electrical services (herein after "Title 20") against BHCEC under the *first* Montana exception (*Montana v. United States, 450 U.S. 544, 101 S. Ct. 1245, 67 L.Ed.2d 398 (1981)*) which states that "a tribe may regulate, through taxation, licensing or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealings, contracts, leases, or other arrangements,". 2) whether the Crow Tribe has jurisdiction to enact and enforce Title 20 against BHCEC under

*Montana*'s second exception which states that jurisdiction exists when nonmember conduct "threatens or has some direct effect on the tribe's political integrity or economic security or health or welfare of the tribe," and 3) whether the Crow Tribe's inherent authority to exclude BHCEC includes a lesser authority of regulatory and adjudicative jurisdiction not bound by *Montana*.

Big Man began his argument by citing a federal case *Big Horn County Electric Cooperative, Inc. v. Adams, 219 F.3d 944 (9th Cir. 2000)* which adopted certain aspects of *Montana v. United States, supra*. He stated that in the *Adams* case, the federal court ruled that a district court correctly concluded that "Big Horn (BHCEC) formed a consensual relationship with the Tribe (Crow) because Big Horn entered into contracts with tribal members for the provision of electrical services…Big Horn's voluntary provision of electrical services on the Reservation did create a consensual relationship." *Adams 219 at 951*. Thus, and since Big Man signed a cooperative agreement with BHCEC for electrical service in 1999, that this created a consensual relationship between them. *Appellant Brief, page 6.* (*Adams* involved the Crow Tribe enacting a utility valorem tax upon BHCEC's utility property. The federal court ruled the tribe did not have jurisdiction because the tax was not a tax on the "activities of a nonmember" but a tax on a nonmember's property which did not equate to a *Montana* first exception.) Despite the ruling in *Adams*, Big Man proposed and relied on the 1981 United States Supreme Court, *Montana*, who ruled that tribal jurisdiction applied to "activities of nonmembers who enter into consensual relationships" under the *first* exception to *Montana*." Big Man reasoned that BHCEC's affirmative action to turn off his electrical service was an "activity" which fell within the *first* exception of *Montana. Appellant Brief, page 6.* Big Man stated that the *first* exception existed because when non-Indians "enter consensual relationships with the tribe or its

members" that a consensual relationship was established between Big Man and BHCEC through a cooperative agreement. Big Man argued that when he entered into a consensual contractual relationship with BHCEC for electrical service BHCEC acquiesced to regulatory and adjudicative jurisdiction of the Crow Tribal court. *Id.*

Armed with his conviction that the Crow Tribal court had jurisdiction over BHCEC under the *first* exception to *Montana*, Big Man turned to his proposal that *Montana*'s second exception also applied. He argued that the *second* exception to *Montana* existed here because the conduct of a non-Indian (BHCEC) "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare" of the Crow Tribe and its members. *Montana, 450 U.S. at 566, 101 S. Ct. 1245.* Big Man argued that "The purpose of the Crow law regarding winter month termination of power that specifically applies to cooperatives is designed to protect the health and safety of elderly and disabled tribal members just like Mr. Big Man." *Petitioner's Motion for Summary Judgment, page 3.*

Big Man relied on these two (2) exceptions to the United States Supreme Court case *Montana v. United States, supra,* for his proposition that the Crow Tribal court had jurisdiction to hear his complaint. *Montana* has been called a "path marking case concerning tribal civil authority over nonmembers," *Strate v. A-1 Contractors, 520 U.S. 438, 117 S. Ct. 1404 (1997).* The two exceptions were carved out from the main rule that "the exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation." *Montana, 450 U.S. 564, 101 S. Ct. 1245.* In *Montana*, the court had before it the Crow Tribe's authority for regulatory jurisdiction over on-reservation non-Indian activity on non-Indian land. *Id.*

Big Man's reliance on the *first* exception to *Montana* narrowed in on the Crow Tribe's power to "regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases or other arrangements." *Appellant Brief, page 5*. Big Man emphasized that he is in a class ("a member") covered by the *first* Montana exception without reference to the Crow Tribe, that BHCEC is a nonmember, and that BHCEC entered into a consensual agreement (relationship) with Big Man for a commercial dealing (supplying electricity). *Appellant Brief page 6*. Big Man further argued he fulfilled the requirements of the *first* exception to *Montana* through *Adams, supra*, which held that BHCEC's supplying electricity on the Crow Reservation is an activity. *Id.*

Now turning to the *second* exception of *Montana*, Big Man argued that the Crow tribal court has jurisdiction in this matter because electricity in homes has "obvious and recognized" effects on the health or welfare of Big Man. *Appellant Brief, page 7*. The *second* Montana exception states that "a tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana at 565, 101 S. Ct. 1245*. Big Man drew a parallel with consumer natural gas consumption regulation. In 1997 United States Supreme Court ruled that "state regulation of natural gas to consumer serves important interests in health and safety…with the purpose that buyers are not frozen out of their houses in cold months. *General Motors Corp. v. Tracy, Tax Commissioner, Ohio, 519 U.S. 278, 306-07 (1997)*. Big Man argued that BHCEC's conduct of shutting electricity off in the middle of winter is "conduct which threatens to freeze people out of their homes for months on end" which constitutes a threat that has direct effect on the political

integrity, economic security or the health and welfare of the tribe in protecting tribal members. *Appellant Brief, page 9.*

With the interest of protecting tribal members, Big Man brought to the Crow trial court's attention a case decided in Crow Tribal Court dealing with a Crow Tribal member, Jerry Harris, who filed a complaint against BHCEC for nearly identical reasons as the instant case. *Harris v. Big Horn County Electric Cooperative,* No. 86-223 (Crow Tr. Ct., Dec. 9, 1986) 14 ILR 6023. In the *Harris* case, BHCEC shut off Harris' electrical service during the winter month, an act which was prohibited by Title 20. Harris was without running water because the water pump operated by electrical power. He had a propane heater which operated with an electric fan. The court in *Harris* opined that Title 20 was the regulation which the Crow Tribe implemented to protect consumers in the winter months. *Id.*

Big Man's final argument centered on his proposition that the Crow Tribe possesses inherent power to exclude. He argued that the exclusion power included "the lesser authority of regulatory and adjudicative jurisdiction" independent of *Montana. Appellant Brief, page 9.* Big Man relied heavily on a web of United States Supreme Court and federal court cases for the proposition that the Crow Tribe's power to exclude is the Crow Tribe's power to regulate. *Appellant Brief, page 9.* He commenced with another path making case *South Dakota v. Bourland,* 508 U.S. 679, 113 S. Ct. 2309 (1993). Citing *Bourland,* Big Man stated that a "simple way to describe *Montana* would be the exceptions were carved out to allow a Tribe's inherent authority to regulate the conduct of non-members even on non-member owned fee land." *Id.* He went a step further with *Bourland* stating that *Montana* did not eliminate inherent sovereignty but that from a tribe's "inherent power to exclude flow lesser powers, including the power to regulate non-Indians on tribal land." *Id.*

Big Man created this nexus between *Montana* and *Bourland* in his argument. He essentially stated that, in a span of twelve (12) years between *Montana* and *Bourland*, that the United States Supreme Court was consistent with its opinion that when "tribal land is converted to non-Indian land, a tribe loses its inherent power to exclude non-Indians from that land and thereby also loses the incidental regulatory jurisdiction formerly enjoyed by the Tribe." *Appellant Brief, page 9*. Based on this rationale, Big Man requested the lower court to conclude that it had jurisdiction in this matter because the land upon which BHCEC delivered electrical power was on Crow tribal land citing that nonmembers on "tribal lands are subject to the tribe's power to exclude them, including the lesser power to place conditions on entry, on continued presence, or on reservation conduct." *Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 144 (1982)*.

Big Man claimed that the Crow trial court failed to acknowledge that a tribe retains inherent authority independent from *Montana* citing *Bourland*, supra, and *Water Wheel Camp Rec. Area, Inc. v. LaRance, 642 F.3d 802, 805 (9th Cir. 2011)*. *Appellant Brief, page 10*. Big Man stated the court in *Water Wheel* affirmed *Montana* by holding that the Colorado River Indian Tribes (CRIT) had regulatory jurisdiction through its inherent authority to exclude *Water Wheel* independent of *Montana*. *Id*. Implicitly, Big Man argued that he (and the Crow Tribe) stand in the same shoes as the Colorado River Tribes – and that the Crow trial court has jurisdiction over BHCEC. *Appellant Brief, page 10*. Big Man argued that, based on the principle in *Water Wheel*, that the Crow Tribe's inherent sovereign power to exclude gave the Crow Tribe both regulatory and adjudicatory powers over BHCEC. *Appellant Brief, page 11*.

Big Man succinctly requested the Crow trial court adopt *Water Wheel* as authority because of the following:

In *Water Wheel*, the Court held "the tribe has regulatory jurisdiction through its inherent authority to exclude, independent from the power recognized in *Montana*. The *Water Wheel* Court reasoned: "As a general rule, both the Supreme Court and the Ninth Circuit have recognized that *Montana* does not affect this fundamental principle as it relates to regulatory jurisdiction over non-Indians on Indian land." *642 F.3d at 812.*

*Appellant Brief, page 10.*

Finally, Big Man cited a 2013 federal case *Grand Canyon Skywalk Development, LLC v. 'Sa' Nyu Wa, Inc.*, 2013 U.S. App. LEXIS 8512 (9th Cir. Ariz. April 26, 2013) to underscore his position that "*Strate* exception does not apply here to deny the tribal court of its initial jurisdiction. The tribal court does not plainly lack jurisdiction because *Montana's* main rule is unlikely to apply to the facts of this case." *Appellant Brief, page 10.* Big Man proposed to the Crow trial court that the federal court in *Grand Canyon Sky Walk* affirmed *Water Wheel* (providing for tribal jurisdiction without the application of *Montana*.) *Id.*

## B. BHCEC ARGUMENT

BHCEC responded to the motion for summary judgment on July 24, 2012. BHCEC's argument is two-fold. First, it objects to Big Man's motion for summary judgment based on Federal Rule 56 (C)(2) which provides that "a party may object that the material cited to support...a fact cannot be presented in a form that would be admissible in evidence." *Respondent's Response Brief to Motion for Summary Judgment, page 1.* Since Big Man filed a motion for summary judgment at the onset of the case, BHCEC urged the Crow trial court to recognize that "appellant courts rely upon tribal courts to fully develop the record in justification of assumption of jurisdiction over non-members." *Id. at page 2.* BHCEC relied on *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 105 S. Ct. 2447(1985) for the proposition that it is "necessary and appropriate for the parties and the tribal court to ensure that a full record

is developed in tribal court" when there is a question of an assumption of jurisdiction over non-members. *Id.*

Secondly, BHCEC stated it was "incumbent upon the court to first engage in a good faith inquiry into the regulatory authority of the Crow Tribe over the activities or conduct of the Defendant before it can be decided whether the Court has adjudicatory jurisdiction in this case." *Id.* BHCEC objected to Big Man's assertion that Title 20 is enforceable against BHCEC. BHCEC argued that Title 20 is not admissible evidence of enforceability against BHCEC since there are "many genuine issues of material fact not now before the court." *Id.*

BHCEC argued that the motion for summary judgment should be dismissed on the basis that Crow Tribal Court lacks jurisdiction in this case. BHCEC's position is that there must be admissible factual basis to support the Crow Tribes' legislative authority to exclude, by regulation, BHCEC from "engaging in activities on the reservation and set conditions on entry to the land." BHCEC further stated that this regulation must justify the preservation of tribal self-government and territorial management ascribed by the court in *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 128 S. Ct. 2709 (2008). BHCEC alleged that Big Man could not point to clear error in the Crow trial court's findings of fact. *Appellee Brief, page 2.*

BHCEC raised the issue of whether the Crow Tribe may regulate the conduct and activities of BHCEC through Title 20 of the Crow Law and Order Code (CLOC). It was Big Man's assertion that BHCEC violated the terms of Title 20. The Crow Tribal Legislature adopted Title 20 in 1986 which states in pertinent part, "that during the period of November 1st to April 1st... no termination of residential service may take place except with specific prior approval of the board." *CLOC 20-1-110.* Title 20 specifically states that a utility is required to

notify a customer, in writing by personal service or certified mail at least ten (10) days before an anticipated termination date with notice to the board. *CLOC 20-1-105 (2)(a), 20-1-117.*

BHCEC believed, first, that an analysis must be made on Title 20 to reach the ultimate issue of whether the Crow Tribe has adjudicatory authority over BHCEC. BHCEC offered decisive federal cases to determine whether the Crow Tribe has authority to adjudicate a complaint against a nonmember. BHCEC began with *Nevada v. Hicks, 533 U.S. 353, 361, 121 S. Ct. 2304 (2001)* to argue that this case "involves tribal interference in the contractual relations between Plaintiff and Big Horn which have nothing whatsoever to do with the tribe's right of self-government and right to control internal relations between the tribe and its members." (The holding in *Hicks* was that "this case is limited to the question of tribal-court jurisdiction over state officers enforcing state law. We leave open the question of tribal-court jurisdiction over nonmember defendants in general." *Hicks, 353 U.S. at 358.*)

BHCEC next argued and relied on *Hicks* who opined that "tribal assertion of regulatory authority over nonmembers must be connected to that right of the Indians to make their own laws and be governed by them." *Hicks, supra, at 361, 121 S. Ct. 2304.* BHCEC then turned to Big Man's assertion that he fulfilled the 2 exceptions to *Montana*. *Appellee Brief, page 3.*

BHCEC disagreed that Big Man fulfilled the requirements of either *Montana* exception. BHCEC planted tribal regulatory authority within the realms of *Montana*'s main rule. He began his analysis with the instructive language of *Plains Commerce Bank v. Long Family Land & Cattle Co., 544 U.S. 316, 128 S. Ct. 2709 (2008)* (the enforcement of a tribal anti-discrimination tort ordinance upheld by a tribal court.) BHCEC relied on the *Plains* case to disagree with Big Man's assertion that consensual agreement alone can give a tribe regulatory authority and adjudicatory authority to regulate nonmembers on non-Indian fee land. *Appellee's Brief, page 3.*

The United States Supreme Court in *Plains Commerce* quoted its previous landmark case that in (dealings with tribes and given *Montana*'s main rule "that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe,") a tribe's authority to regulate nonmembers are invalid. *Atkinson Trading Co. v. Shirley,* 532 U.S. 645, 121 S. Ct. 1825 (2001).

BHCEC agreed with the Crow trial court's Conclusion of Law # 4 (that the issue before the court is whether *Montana* and *Strate* govern the Crow Tribe's power to regulate BHCEC in relation to shutting off the electric power to Big Man.) *Appellee Brief, page 2.* With that backdrop, BHCEC began its analysis that the starting point "... must start by acknowledging the main rule that an Indian tribe's power does not extend to the activities of nonmembers." *Id.* BHCEC relied on the 2008 United States Supreme Court case that held that tribal courts did not have jurisdiction over a tribal family's discrimination claim against a non-Indian bank because neither exception to *Montana* applied. *Plains Commerce,* 544 U.S. at 318. BHCEC offered instructive language from *Plains Commerce* which defined tribal regulatory authority. *Appellee Brief, page 3.*

BHCEC requested the Crow trial court give deference to the following language in *Plains Commerce*:

> Given *Montana's* "general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of an Indian tribe," *Atkinson, supra,* at 651, 121 S. Ct. 1825 (quoting *Montana, supra,* at 565, 101 S. Ct. 1245), efforts by a tribe to regulate nonmembers, especially on non-Indian fee land, are "presumptively invalid," *Atkinson, supra,* at 659, 121 S. Ct. 1825. The burden rests on the tribe to establish one of the exceptions to *Montana's* general rule that would allow an extension of tribal authority to regulate nonmembers on non-Indian fee land. *Atkinson,* 532 U.S. at 654, 121 S. Ct. 1825. These exceptions are "limited" ones, Id., at 647, 121 S. Ct. 1825, and cannot be construed in a manner that would "swallow the rule," Id., at 655, 121 S. Ct. 1825, or "severely shrink" it, *Strate,* 520 U.S. at 458, 117 S. Ct. 1404..."

With that setting, BHCEC attacked Big Man's argument's that Big Man fulfilled *Montana's first* and *second* exceptions. BEHCEC argued that *Montana's first* exception was inapplicable to this matter. BHCEC disagreed with Big Horn's pronouncement that the Crow Tribe had tribal regulatory and judicatory authority because the "parties entered into a consensual and contractual relationship." BHCEC agreed with the holding in *Plains Commerce* which defined the extent of tribal power as:

> *Montana* and its progeny permit tribal regulation of nonmember conduct inside the reservation that implicates the tribe's sovereign interests. *Montana* expressly limits its first exception to the "activities of nonmembers," 450 U.S. 565, 101 S. Ct. 1245, allowing these to be regulated to the extent necessary to protect tribal self-government and to control internal regulations," *Id.*, at 564. See *Big Horn County Elec. Cooperative Inc. v. Adams*, 219 F.3d 944, 951, [27 Indian L. Rep. 2207](9th Cir. 2000)("*Montana* does not grant a tribe unlimited regulatory or adjudicative authority over a nonmember. Rather, *Montana* limits tribal jurisdiction under the first exception to the regulation of the activities of nonmembers"…(Emphasis supplied.)

*Appellee Brief, page 5.*

Next, BHCEC argued that *Montana's second* exception did not apply to this case. It stated that Big Man never offered facts to rebut the Crow trial court's conclusion that "there was no allegation or circumstances demonstrating potential catastrophic consequences in absence of enforcement of the regulation." *Order, page 9.* BHCEC, again, relied on *Montana's* holding that "the second exception authorizes the tribe to exercise civil jurisdiction when non-Indians' conduct menaces the political integrity, the economic security, or the health or welfare of the tribe. The conduct must do more than injure the tribe, it must imperil the subsistence of the tribal community." *Montana, 450 U.S. at 566, 101 S. Ct. 1245.* BHCEC, then added an Indian law commentator's (Cohen) suggestion that "the elevated threshold for application of the second Montana exception suggests that tribal power must be necessary to avert catastrophic consequences." *Appellee Brief, page 6.*

Lastly, BHCEC countered Big Man's assertion that "the power to exclude is the power to regulate." BHCEC agreed with Big Man that the "power to exclude is the source of tribal power to regulate" but the court must examine the facts to determine if "tribal sovereign interest is at stake to justify regulation." *Appellee Brief, page 6*. BHCEC argued that tribal power to exclude, and thus the power to regulate the conduct of nonmembers entering a reservation, is limited by *Montana, supra,* and other cases. *Id.* BHCEC rejected Big Man's reliance on *Water Wheel, supra*. BHCEC said *Water Wheel* was distinguishable to the instant case because that case concerned an "unlawful detainer action for breach of a lease of tribal lands and trespass by a nonmember over which obviously the tribe had retained regulatory power in order to protect its most valuable assets and to preserve tribal self-government." *Appellee Brief, page 7*. On the other hand, BHCEC highlighted *Water Wheel's* holding that the Colorado River Indian Tribes possessed both regulatory and adjudicative jurisdiction over nonmembers. *Id.*

BHCEC acknowledged (but disagreed with *Water Wheel*) that the basis for the federal court decision in *Water Wheel* was that it saw "important sovereign interests at stake, the existence of regulatory jurisdiction, and long standing Indian law principles recognizing tribal sovereignty all support finding adjudicative jurisdiction here. Any other conclusion would impermissibly interfere with the tribe's inherent sovereignty, contradict long-standing principles the Supreme Court has repeated recognized, and conflict with Congress' interest in promoting tribal self-government." *Id.*

Finally, BHCEC used a 1995 federal court case *Devil's Lake Sioux Tribe v. North Dakota Public Service Commission, 895 F. Supp. 955 (1995)* for that court's holding that "the promulgation and enforcement of a reservation wide utility regulation scheme, without regard to land ownership, occupancy or use is beyond the sovereign authority of the tribe-under the fact

Case 1:08-cv-03000 Document 645-4 Filed 05/17/17 Page 15 of 18

specific situation present here." *Appellee Brief, page 8*. BHCEC stated that *Devil's Lake* judgment would hold Title 20 "fatally flawed." *Id*. BHCEC alleged that "a thorough review of Title 20 reveals it contains no limitation upon its application based upon whether the land served by electricity is fee or trust land owned by members or nonmembers. As enacted it purports to apply to all customers who are defined as purchasers of gas or electric service for residential purposes." *Appellee Brief, page 9*.

## C. LOWER COURT DECISION

The Crow trial court opined that this case is "about whether the tribe may deny Defendant the right to deliver electric service to tribal cooperative members unless Defendant agrees to the non-disconnect provisions of Title 20." *Order, page 7*. Relying on *Plains Commerce, supra,* the lower court, in dicta, advised Big Man that "tribal jurisdiction depends upon what non-Indians "reasonably" should "anticipate" from their dealings with a tribe or its members in connection with activities on a reservation." The Court, citing *Hicks, supra, at 361, 121 S. Ct. 2304*, stated that this case was not about tribal self-government nor of tribal rights to control internal relations between the Crow Tribe and its members. *Order, page 8*. It reasoned that there must be a "nexus" between tribal regulatory authority over non-tribal members and the "right of the Indians to make their own laws and be governed by them." *Hicks, supra, at 361, 121 S. Ct. 2304*. And since there is no contractual dispute between Big Man and BHCEC, this case involved Crow tribal government interference. *Order, page 8*.

In a conclusion of law, the lower court acknowledged that this case was not about tribal regulatory authority over nonmember "fee land within the reservation," as addressed in *Montana*. Rather, the lower court labeled *Montana* as setting the "outer limits of tribal civil jurisdiction, both regulatory and adjudicatory, over nonmember activities on tribal trust and nonmember fee

land." *Order, page 4.* It went a step further by adopting both *Strate v. A-1 Contractors, 520 U.S. 438, 117 S. Ct. 1404 (1997)* and *Hicks, supra.* The United State Supreme Court in *Strate* held that "a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction." *Strate, 520 U.S. at 453, 117 S. Ct. 1404.* In essence, then, BHCEC contended that tribal court jurisdiction only turns on "regulable" tribal action relying on *Hicks. Order, page 4.*

Based on those conclusions and established case law, the Crow trial court ordered that Big Man must prove one of the *Montana* exceptions. It opined that Big Man had to overcome the presumptive absence of "tribal civil authority over Defendant's (BHCEC) enforcement" of Big Man's cooperative membership agreement with BHCEC. *Order, page 5.*

Furthermore, the Crow trial court ordered that if Big Man was unable to rebut the above conclusion, that Big Man had to prove that the Crow Tribe possessed power to enforce Title 20 over BHCEC. *Id.*

The Crow trial court took note of BHCEC's argument that two (2) relationships existed under a *first* Montana exception application. The court categorized the first relationship as between Big Man and BHCEC under the Application for Membership and for Electric Service signed on February 15, 1999. *Order, Page 6; Defendant's Response to Plaintiff's Motion for Summary Judgment, Exhibit A.* The lower court stated that Big Man's complaint was not based on the "commercial relationship" between Big Man and BHCEC under the service agreement nor of any violation of the agreement between the parties. *Order, page 6.* Rather, that Big Man's complaint involved the "relationship" between the Crow Tribe and BHCEC regarding the enforcement of Title 20. *Id.*

The Crow trial court rejected Big Man's *first* Montana exception analysis by concluding that since the complaint is between the Crow Tribe and BHCEC, the "continuing consensual"

requirement under Montana's *first* exception was eliminated. The court concluded that Big Man and BHCEC had no "continuing relationship" as required under the *first* exception of *Montana* citing a 1999 case. *Burlington N.R.R. v. Red Wolf*, 196 F.3d 1059, 1064 (9th Cir. 1999). *Order, page 6.* The court further concluded that this complaint involved Crow Tribal "interference" between Big Man and BHCEC that did not infringe on the tribe's right of "self-government and right to control internal relations between the tribe and its members" as required by *Hicks, supra.* Under *Hicks*, any tribal command of regulatory authority over nonmembers must have a nexus of tribal right to make their own "laws and be governed by them." *Id.*

The Crow trial court eliminated the *second* Montana exception quickly with it reliance on the *Plains Commerce, supra,* (who quoted *Montana*). In *Plains Commerce*, the United States Supreme Court cloaked the second exception with tribal civil jurisdiction over non-Indians only when non-Indian "conduct" affected the "political integrity, the economic security, or the health or welfare of the tribe." *Montana at U.S. 566, 101 S. Ct. 1245.* The Supreme court stated that any non-Indian conduct must "imperil the subsistence" of a tribal community. *Id.*

Without any findings of fact, the Crow tribal court ruled that *Montana*'s second exception was inapplicable in the instant case. It eliminated the *second* Montana exception by stating "no allegation has been made that regulation of Defendant is necessitated by circumstances involving catastrophic consequences. As none exists..." *Order, page 9.*

Without hesitation, the lower court moved in and out of an "exclusion" analysis but ended with its conclusion that the "Crow Tribe" had no power to exclude as the basis for enforcing tribal regulations over Defendant's activities and therefore, the first exception did not apply to the case. *Order, page 8.* Under *Hicks, supra,* the United States Supreme Court reviewed the conditions a tribe could authorize on a nonmember's right of entry (onto tribal

lands). *Hicks*, 533 U.S. at 359, 121 S. Ct.2304. Previously, tribes possessed traditional, unlimited regulatory authority to exclude persons from the reservation. *Id*.

Initially, the Crow trial court began its "exclusion" analysis by stating that this case did not involve a "right of entry" scenario. The lower court agreed with BHCEC that this case involved activities on "land" rather than a "right of entry" under *Hicks, supra*. Thus, this case fell into the realm of a *Montana* and *Strate* screenplay. The court did not analyze the "right of entry" as it applied to Big Man. Rather, the lower court concluded that BHCEC engaged the Crow Tribe and its members with benefits of electrical service through a cooperative agreement "without prior expectation or notice of regulation of the Title 20 type, nor notice the tribe reserved a gatekeeping right to exclude Defendant from the reservation." *Order, page 7*.

The Crow trial court relied on *Plains Commerce* to conclude that this case is "about whether the tribe may deny Defendant the right to deliver electric service to tribal cooperative members unless Defendant agrees to the non-disconnect provisions of Title 20." The court cited *Plains, supra*, to agree with BHCEC that "tribal jurisdiction depends upon what non-Indians "reasonably" should "anticipate" from their dealings with a tribe or its members in connection with activities on a reservation. *Id*.

Interestingly, the Crow lower court cited a non-case law "commentator" (Cohen) for the proposition that the application of the second exception to *Montana* must rise to an "elevated threshold" wherein tribal power must be necessary "to avert catastrophic consequences." *Order, page 9*. The Crow lower court stated that because there was no catastrophic consequence in this matter, that the second exception to *Montana* did not apply. *Id*.

The Crow trial court ordered that the "Crow Tribe is without legislative jurisdiction to adopt and enforce Title 20 regulation over the activities of Defendant and as this Court's