adjudicative jurisdiction does not exceed the Crow Tribe's legislative jurisdiction." The court dismissed this case.

## III. STANDARD OF REVIEW

The inquiry of tribal court jurisdiction is a question of federal law reviewed *de novo*. *United States ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 905 (9th Cir. 1994). *National Farmers Union Ins. Cos. V. Crow Tribe of Indians*, 471 U.S. 845, 852-53, 105 S. Ct. 2447, 85 L.Ed.2d 818 (1985). We review findings of fact for clear error. *Smith v. Salish Kootenai College*, 434 F.3d 1127, 1130 (9th Cir. 2006).

## IV. ANALYSIS

This Court determines whether the Crow trial court correctly applied the relevant Crow Tribal, federal, or case law. Big Man, as the moving party for summary judgment, must demonstrate error by the Crow trial court. Also, since BHCEC, a nonmember, raised the defense that Crow Tribal Court had no jurisdiction over it, we conduct an analysis on subject matter jurisdiction.

The Crow trial court did not acknowledge the Crow Law and Order Code (CLOC) in its order. It simply used federal law and other case law for its conclusions of law. This Court, however, chooses to apply Crow fundamental law, first, before moving on to an analysis of tribal court jurisdiction as decided by the United States Supreme Court and federal courts.

### A. FINDINGS OF FACT

The Court begins its analysis with the Crow Tribal Court fundamental law under Title 5, Rules of Civil Procedure. Rule 1 states that all civil matters "shall govern the procedures in the Crow Tribal Court in all suits of a civil nature." *Rule 1, Rules of Civil Procedure*. Of particular interest for the Court is Rule 15 which states as follows (in pertinent

part):

> RULE 15. Findings by The Court. In all civil actions tried by the court without a jury, the court shall specifically decide the facts of the case and state separately its conclusions of law based on those facts. The findings of facts and conclusions of law shall be set forth in writing, signed by the trial judge, and made a part of the permanent record of the trial...

The Court is vested with the appellate authority to review the Crow trial court's findings of fact and conclusions of law in a civil judgment. *CLOC, 3-3-308* (It shall be the duty and responsibility of the Appellate Judge to ensure that all appellate matters are decided solely on the basis of the law and facts presented...). Thus, the Court's analysis will include whether the Crow trial court's judgment was decided on the substantive law and facts presented pursuant to Rule 15.

## B. JURISDICTION

To some degree a tribal court's jurisdiction is given deference because they are competent law-applying bodies. *Santa Clara Pueblo v. Martinez, 436 U.S. 49, 65-66, 98 S. Ct. 1670 (1978)*. To this extent, the United States Supreme Court is cognizant of federal policies of deference to tribal courts in determining the question of protecting significant tribal interests. *Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 16-17, 107 S. Ct. 971 (1987); United States v. Wheeler, 435 U.S. 313, 332, 98 S. Ct. 1079 (1978)*. This Court recognizes the Crow Tribal Court's competence to render just decisions by applying the laws promulgated by the Crow legislature. This Court places great deference on the Constitution and Bylaws of the Crow Tribe as well as the Crow Law and Order Code (CLOC) notwithstanding case law or federal statutes.

Our analysis continues with the Preamble of the 2001 Constitution and Bylaws of the Crow Tribe of Indians (Constitution). The Crow Indian Reservation was established by the Fort

Laramie Treaties of 1851 and 1868. The Constitution was created to enforce and exercise treaty rights, retain inherent sovereign rights, secure certain privileges, retain inherent powers, create a governing body to represent the members of the Crow Tribe of Indians, promote the general welfare of the Crow Tribe, and to provide for the lawful operation of government. *Crow Constitution and Bylaws, 2001*. Article II of the Constitution declares that "The jurisdiction of the Crow Tribal General Council shall extend to all lands within the exterior boundaries of the Crow Indian Reservation including those lands within the original boundaries of the Crow Indian Reservation as determined by federal statutes and case law and to such other lands as may hereafter be acquired by or for the Crow Tribe of Indians." *Id. at Article II*. The Constitution created a Judicial Branch of Crow Tribal government which:

> "shall consist of all courts established by the Crow Law and Order Code and in accordance with this Constitution. The Judicial Branch shall have jurisdiction over all matters defined in the Crow Law and Order Code. The Judicial Branch shall be a separate and distinct branch of government from the Legislative and Executive Branches of Crow Tribal Government..." *Id. at Article X*.

The Crow Law and Order Code (CLOC) contains statutory language enumerating the authority of the Crow Judicial Branch to exercise its jurisdictional power. *Chapter II, CLOC*. The Constitution's founders reserved to the Crow Judicial Branch the authority to be a court of general jurisdiction. *CLOC, 3-2-201*. It was the intention of the Crow Tribe of Indians "to exercise that jurisdictional authority which has not otherwise been abrogated by the United States Supreme Court or by legislation by the United States Congress. The failure of the United States Congress to legislate in a particular area shall not be deemed a waiver of the jurisdictional authority of the Crow Tribe. The jurisdiction of the Crow Tribal Court shall be used to insure due process and equal protection of the law for all persons, as defined herein." *Id.*

Under the CLOC, the Crow Tribal Court has personal jurisdiction over:
"all persons who reside, enter, and/or transact business within the exterior boundaries of

the Crow Indian reservation, provided that the Court shall not exercise criminal jurisdiction over non-Indians, unless such jurisdiction is granted by laws of the United States Congress. (2) For purposes of jurisdiction, "persons" shall include individuals, businesses, partnerships, associations, cooperatives, and corporations." *CLOC, 3-2-203*.

...and territorial jurisdiction "to any and all lands within the exterior boundaries of the Crow Indian Reservation as the same may exist from time to time including all easements, rights-of-way and fee patented lands within such boundaries." *CLOC, 3-2-202*.

This Court's attention is centered on subject matter jurisdiction. The CLOC contains subject matter jurisdiction language as follows: "The Crow Tribal Court shall have jurisdiction over all causes of action arising within the exterior boundaries of the Crow Indian Reservation and over all criminal offenses which are enumerated in Title 8 of the Crow Tribal Code and which are committed within the exterior boundaries of the Crow Indian Reservation. *CLOC, 3-2-205*.

With the framework of Crow Tribal court jurisdiction, *supra*, as enumerated through its Constitution and Bylaws and the CLOC, this Court begins its analysis simply with the personal, land, and activity status of Big Man and BHCEC. It is not disputed that Big Man is a Crow tribal member who receives electrical power from BHCEC as a cooperative member through a purchase agreement signed between the parties in 1999. Big Man lived within the exterior boundaries of the Crow Indian Reservation since 1999.

BHCEC is an electric cooperative who provides electricity to Big Man and other cooperative members on the Crow Indian Reservation. Because there is no record established in the proceedings below, this Court is without knowledge on the number of cooperative members BHCEC serves on the Crow Indian Reservation. The number of electrical customers is critical in the context of the *first* Montana exception because it would provide the number of "consensual" agreements between cooperative members and BHCEC. It is also unknown by what instrument or the year the Crow Tribe and BHCEC established electrical services for residents of the service

area. What is known is that BHCEC is a non-profit electric cooperative incorporated by the State of Montana. *Order, page 1.*

There is no record below establishing the land status of BHCEC within the Crow Indian Reservation. It is the responsibility of the parties to establish the record with the lower court. BHCEC's land status is pivotal in determining the application of case law in this matter. Before moving on to case law, this Court now applies, first, the Crow tribal law on jurisdiction as found in the CLOC.

Based purely on the CLOC, the Crow Tribal Court has personal jurisdiction over Big Man who is a Crow tribal member who lived in Crow Agency, Montana at or about the time of his Complaint. *CLOC, 3-2-203*. By the same statute, the Crow Tribal Court has personal jurisdiction over BHCEC since BHCEC, a cooperative, transacted business within the exterior boundaries of the Crow Indian Reservation. *Id.* For purposes of jurisdiction, "persons" shall include individuals, businesses, partnerships, associations, cooperatives, and corporations." *Id.* Since the cause of action arose within the exterior boundaries of the Crow Indian Reservation, the Crow tribal court has subject matter jurisdiction over this matter. *CLOC, 3-2-205*.

### C. *MONTANA* MAIN RULE

This Court, due to three (3) decades of political activism by the United States Supreme Court and federal courts regarding the umbrella of tribal court jurisdiction, recognizes there is now the necessity that a jurisdictional analysis is conducted when tribal courts assert jurisdiction over non-Indians. In so doing, this Court now turns to case law analysis to determine whether the Crow Tribal Court has subject matter jurisdiction over this matter since BHCEC raised a defense of subject matter jurisdiction. This analysis is paramount because the Crow trial court agreed with BHCEC that the "Crow Tribe is without legislative jurisdiction to adopt and enforce

Title 20 regulation over the activities of Defendant and as this Court's adjudicative jurisdiction does not exceed the Crow Tribe's legislative jurisdiction relying on *Strate, 520 U.S. at 453*." The lower court dismissed the complaint and Big Man appealed.

The Crow lower court's dismissal was based upon its conclusion that this case was about whether the Crow Tribe may deny BHCEC the right "to deliver electric service to tribal cooperative members" unless BHCEC agrees to the "non-disconnect provisions of Title 20." The Crow trial court relied, in part, on both *Plains Commerce* ("tribal jurisdiction depends upon what non-Indians reasonably should anticipate from their dealings with a tribe or its members in connection with activities on a reservation"); and *Hicks* ("right of the Indians to make their own laws and be governed by them") for its rationale that this case had nothing to do with the Crow Tribe's right of self-government and the right "to control internal relations" between the Crow Tribe and its members.

This Court disagrees with the lower court's rationale. We find that the lower court made an error when it concluded there was Crow Tribal "interference" with the cooperative agreement between Big Man and BHCEC. The lower court provided no contract terms on the initial agreement between the Crow Tribe and BHCEC (to establish electrical service on the Crow Reservation). A review of this contract would have shed light on the rights and limitations on the Crow Tribe or BHCEC in providing future electrical service. Since there was no finding of fact, this Court holds that the Crow trial court erred. We hold that the Crow trial court's reliance on *Plains Commerce* and *Hicks* is misplaced because the United States Supreme Court has never overruled its decision in *Montana*.

Our examination of tribal court jurisdiction, then, turns to the United States Supreme decision in *Montana v. United States, 450 U.S. 544, 101 S. Ct. 1245 (1981)*. Pressed with

growing questions of tribal court jurisdiction over nonmembers, the United States Supreme Court, in 1981, decided that tribes possessed a couple of bases for their authority. First, tribes only had partial inherent power "necessary to protect tribal self-government and to control internal relations." *Id. 564, 101 S. Ct. 1245*. It contemplated a narrow set of attributes such as the power to "determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members." *Id*. Secondly, the Supreme Court touched on the Congressional relationship between tribes and the federal government by including in their decision that tribes only possessed "such additional authority as Congress may expressly delegate." *Id*.

Even though the United States Supreme Court in *Montana* concluded that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of a tribe," it recognized that Indian tribes retained "inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee land." *Montana, 450 U.S. at 565-66, 101 S. Ct. 1245*. Since it was known that tribal members interact with, married, or otherwise have relationships with non-Indians, the Supreme Court carved out two (2) exceptions. *Id*.

The Crow trial court concluded that *Montana* "set the outer limits of tribal jurisdiction, both regulatory and adjudicatory, over nonmember activities on tribal trust and nonmember fee land." It adopted *Strate* and *Hicks*. First, it upheld *Strate* by holding that the Crow Tribal Court could not exceed the Crow Tribe's legislative jurisdiction. Secondly, it cited *Hicks* for the proposition that Crow court jurisdiction "turns upon whether the actions at issue in the litigation are regulable by the tribe." Lastly, the Crow trial court conceded that "*Montana* applies to both Indian and non-Indian land" citing *Hicks at 360, 121 S. Ct. 2304*. The lower court added,

however, that BHCEC's delivery of electrical service to Big Man on trust land "may not be relied upon alone" on the issue of whether Crow Tribal court had regulatory or adjudicatory authority over Big Man. Based on that, the Crow trial court concluded that Big Man had to prove one of the *Montana* exceptions.

The Crow trial court erred when it did not inquire into BHCEC's land status within the Crow Indian Reservation since *Montana's* general rule is that "tribes do not possess authority over non-Indians who come within their borders" (*Montana at 450 U.S. 564*) and "is particularly strong when the nonmember's activity occurs on land owned in fee simple by non-Indians." *Strate v. A-1 Contractors, 520 U. S. 438*. Once tribal land is converted into fee simple, the tribe loses plenary jurisdiction over it. See *County of Yakima* v. *Confederated Tribes and Bands of Yakima Nation, 502 U. S. 251 (1992)*. The Crow trial court erred when it applied *Montana's* general rule to none-existent facts since it did not have a finding of fact on BHCEC's land status. With that backdrop, the Crow trial court proceeded to analyze the *first* and *second* exceptions to *Montana* as it applied to Big Man. This Court, consequently, begins an analysis of these exceptions, even in light of the error of the Crow trial court on *Montana's* general rule.

1. *Montana* **First Exception Analysis**

The *first Montana* exception centers on the consensual relationships between nonmembers with the tribe or its members. In an era of rapid Indian tribal business and economic expansion, the Supreme Court fashioned this exception to recognize that, "a tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id.* The Crow trial court's opinion is that it is the relationship between the Crow Tribe and BHCEC which controls this case – not the cooperative agreement

between Big Man and BHCEC. It reasoned that the enforcement of Title 20 fell upon the Tribe over BHCEC. The lower court stated Big Man's complaint did not allege a violation of the terms of the cooperative agreement between the parties nor was Big Man's complaint based on a "commercial relationship" between the parties. Therefore, the requirement of a consensual relationship under a *first* Montana exception was eliminated citing *Burlington N.R.R. v. Red Wolf*, 196 F.3d 1059, 1064 (9th Cir. 1999). We disagree with the lower court's conclusion.

This Court disagrees with the Crow trial court's interpretation of Big Man's complaint. The core of Big Man's complaint was that Big Man and BHCEC entered into a "consensual relationship" through a cooperative agreement placing jurisdiction in the hands of Crow tribal court due to a violation of Title 20 by BHCEC. We agree with Big Man that a consensual relationship was created between Big Man and BHCEC when the parties signed a cooperative agreement in 1999. A consensual relationship is a pivotal element of the *first* Montana exception as are commercial dealings and contracts. *Montana, supra*. This Court disagrees with the Crow trial court when it stated that "this case involves tribal interference in the contractual relations between Plaintiff and Defendant which have nothing whatsoever to do with the tribe and its members (relying on *Hicks*).

In 2016, the United State Supreme Court affirmed a 5th Circuit Court of Appeals decision in *Dolgencorp, Inc.; Dollar General v. Mississippi Band of Choctaw Indians; The Tribal Court of the Mississippi Band of Choctaw Indians*, 732 F.3d 409, 419-24(5th Cir. 2013). The United States Supreme Court upheld the Fifth Circuit of Appeals which upheld the jurisdiction of the Mississippi Band of Choctaw Tribal Courts over a tort claims brought by a tribal member against a non-Indian corporation doing business on the reservation. *Id.* That decision affirmed that "tribal courts have civil jurisdiction over non-Indian conduct arising from consensual relations

on Indian reservations. *Id.* This Court finds that the *General Dollar* decision is persuasive for cases arising on the Crow Indian Reservation as well as the case before us.

The Crow trial court's reasoning is not logical. It cannot eliminate the *first* Montana exception because first, a consensual relationship was established between the Crow Tribe and BHCEC when BHCEC established itself on the Crow Indian Reservation, and secondly, BHCEC created a consensual relationship with cooperative members through a cooperative agreement. The *first* Montana exception allows the Crow Tribal Court jurisdiction over BHCEC because BHCEC entered consensual relationships, through a commercial contract, with the Crow Tribe (when it entered into some type of contract to establish electricity on the reservation) and its members (Big Man) through a cooperative agreement. The Crow trial court erred in holding that, in the absence of a "continuing relationship' between the Crow Tribe and BHCEC, the *first* Montana exception was eliminated (based on *Burlington N.R.R.*). To buttress this Court's conclusion that the lower erred by dismissing the *first* Montana exception is demonstrated by our adoption of the 2000 *Adams* case in reference to consensual or contractual relationships. The federal court in *Adams* established that BHCEC created a consensual relationship with the Crow Tribe by "entering into contractual relationships with tribal members in order to supply electricity." *Adam, supra.* This Court, relying on *Adams,* also concludes that BHCEC created a consensual relationship with the Crow Tribe and Big Man notwithstanding *Adams* which concerned a valorem tax on BHCEC's utility property. This Court draws a different conclusion than the Crow trial court in that, for purposes of the *first* Montana exception, a consensual relationship was created between Big Man and BHCEC.

Moreover, BHCEC's reliance on *Plains Commerce* is misplaced since that case involved tribal regulation of a nonmember's sale of fee land located on a reservation. That Court found

that *Montana* did not authorize a tribe to regulate the sale of such land and "nor can regulation of fee land sales be justified by the Tribe's interest in protecting internal relations and self-government." *Plains Commerce, supra*. *Plains Commerce* is distinguishable from this case since it concerned the regulation of land sales. The *Plains Commerce* court had before it the land status of the parties unlike the Crow trial court which never established BHCEC's land status. Land status is paramount in the instant case. In order for the Crow trial court to determine whether the Crow Tribe's enforcement of Title 20 is an "interest in protecting internal relations and self-government" the Crow trial court must first establish land status and the conditions of entry by BHCEC. The lower court did not establish findings of fact of land status and entry conditions in its order.

This Court dismisses *Plain Commerce* as the precedent for this case, however, we continue our reliance on *Montana* since the United States Supreme Court has not overruled its general rule nor its exceptions.

It was error for the Crow trial court to conclude that it did not have jurisdiction over BHCEC to adjudicate the matter before it under the *first Montana* exception. The Crow trial court decision would place Big Man's complaint squarely in Big Horn County 13th district court. This is not logical because it would have the Crow Tribal government, its tribal members, members of other tribes, or non-tribal residents stand in line to appear before a foreign court for nonmember actions occurring within the exterior boundaries of the Crow Indian Reservation.

2. *Montana* Second Exception Analysis

The United States Supreme Court moved towards an intra- personal stance with the *second* Montana exception. This latter exception wove together inward relationships with activity that affected a tribe's "political integrity, economic security, health, or welfare." *Strate*,

*520 U.S. at 446, 117 S. Ct. 1404.* The Supreme Court delegated additional power to tribes by giving them inherent power to exercise civil authority over the activities of non-Indians on fee lands within its reservation "when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe. *Montana, 450 U.S. at 565-66, 101 S. Ct. 1245.*

The Crow trial court opined that since Big Man did not make an allegation that the conduct of BHCEC created "catastrophic consequences," the *second* Montana exception did not apply. This Court is not persuaded by the lower court's conclusion that there must be "catastrophic consequences" because this Court will not rely on Cohen, a commentator. In *Plains Commerce,* the Supreme Court quoted itself by stating "the second exception authorizes the tribe to exercise civil jurisdiction when non-Indians' conduct menaces the political integrity, the economic security, or the health or welfare of the tribe." *Montana, 450 U.S. 566, 101 S. Ct. 1245.* "The conduct must do more than injure the tribe, it must "imperil the subsistence" of the tribal community." *Id.* The court in *Plains Commerce* stated that the resale of fee land by a non-Indian to another non-Indian hardly "imperil[s] the subsistence or welfare of the tribe." *Ibid.*

This Court views the facts in *Plains Commerce* as distinguishable from the instant case wherein the involuntary shut-off of electricity in the middle of January in Montana imperils the health and welfare of the Crow Tribe's responsibility in protecting its members. Big Man argued that when BHCEC disconnected his electrical service in the "middle of winter" this was conduct "which threatens to freeze people out of their homes for months on end." This Court agrees with Big Man. The Crow trial court erred when it concluded that the *second* Montana exception is inapplicable because no catastrophic consequences existed.

3. Exclusion

A year after *Montana* was decided the United States Supreme Court was confronted with another issue: exclusion of non-Indians from reservations. This Court begins with the 1982 case, *Merrion*, to analyze the Crow Tribe's inherent authority to exclude non-Indians from tribal land, without applying *Montana*. *Merrion*, 455 U.S. 130, 144-145, 102 S. Ct. 894 (1982). In *Merrion*, the court ruled that nonmembers who lawfully "enter tribal lands remain subject to the tribe's power to exclude them." *Id.* It added that "when a tribe grants a non-Indian the right to be on Indian land, the tribe agrees not to exercise its ultimate power to oust the non-Indian as long as the non-Indian complies with the initial conditions of entry." *Id.* at 455 U.S. 144-145. The *Merrion* court held that, "the power to exercise tribal civil authority over non-Indians derives not only from the tribe's inherent powers necessary to self-government and territorial management, but also from the power to exclude nonmembers from tribal land." *Id.* at 455 U.S. 141-144. The Crow trial court chose not to include *Merrion* in its order. However, this Court states that *Merrion* establishes the initial framework for exclusion cases on tribal reservations.

Of particular importance to this Court is the language from *Merrion* which stated that, "If the power to exclude implies the power to regulate those who enter tribal lands, the jurisdiction that results is a consequence of the deliberate actions of those who would enter tribal lands to engage in commerce with the Indians. It is true that "a tribe has no authority over a nonmember until the nonmember enters tribal lands or conducts business with the tribe." *Id.* at 455 U.S. at 142, 102 S. Ct. 894. This Court agrees with the *Merrion* court. BHCEC is subject to Crow tribal regulation, such as Title 20, because it entered the Crow Reservation to engage the Crow Tribe in commerce (setting up an electrical company to serve residents of the Crow Reservation).

Before moving to recent exclusion cases, this Court draws attention to the early stance of the United States Supreme Court in its pivotal decision on tribal lands and sovereignty. *Iowa*

*Mutual Ins. Co. v. LaPlante, 480 U.S. 9,18, 107 S. Ct. 971, (1987)*("...tribal authority over non-Indian activities on reservation lands is an important part of tribal sovereignty). In that same case on non-Indian activity on tribal lands, the court stated that "...civil jurisdiction lies in tribal courts unless limited by a specific treaty provision or federal statute." *Id. Iowa* has never been overruled.

The Crow trial court overlooked the Crow Tribe's sovereignty in its order. Big Man and BHCEC agreed that the "power to exclude is the power to regulate" but there must be an examination of facts "to determine if tribal sovereignty interest is at stake to justify regulation." *Appellee Brief, page 6*. The lower did not examine any facts to ascertain whether tribal sovereignty was at stake to justify Title 20. However, this Court places great respect on the sovereign status of the Crow Tribe's Treaty rights, Constitution, tribal customs and traditions, and the Crow Law and Order Code. Crow Tribal sovereignty serves as a basis for its power to regulate and exclude. (relying on *Iowa Mutual Ins. Co. v. LaPlante, supra.*)

The "power to exclude is the power to regulate." *South Dakota v. Bourland, 508 U.S. 679, 689, 113 S. Ct. 2309 (1993)* (a tribe's power to exclude includes the incidental power to regulate). The court in *Bourland* stated that *Montana* proposed that "when an Indian Tribe conveys ownership of its tribal lands to non-Indians, it loses any former right of absolute and exclusive use and occupation of the conveyed lands and hence, loses "the incidental regulatory jurisdiction formerly enjoyed by the tribe." *Bourland, 508 U.S. at 689*.

In order to come to any conclusion on whether the Crow Tribe has ever lost regulatory jurisdiction over BHCEC, it was necessary for the Crow trial court to make findings on BHCEC's land status, date and initial entry conditions onto the Crow Indian Reservation. The lower court made no such findings. The court in *Hicks,* found that "ownership status of land" is

a significant factor to consider since *Montana* "applies to both Indian and non-Indian land." *Nevada v. Hicks*, 353 U.S. at 360, 121 S. Ct. 2304 (2001). ("We leave open the question of tribal-court jurisdiction over nonmember defendants in general." *Hicks*, 353 U.S. at 358.) The Crow trial court erred when it concluded that the "Crow Tribe has no power to exclude as the basis for enforcing tribal regulation over Defendant's activities."

In addition to *Bourland, supra,* this Court finds a 2011 federal court persuasive on the issue of exclusion. The federal court, in *Water Wheel Camp Rec. Area, Inc. v. LaRance*, 642 F.3d 802, 805 (9th Cir. 2011), held that the Colorado River Indian Tribes (CRIT) has "regulatory jurisdiction through its inherit authority to exclude, independent from the power recognized in *Montana*. *Water Wheel*, 642 F.3d at 804. The court added that the CRIT had both regulatory jurisdiction and adjudicative jurisdiction over a nonmember on tribal land. That court found that there was "important sovereign interests at stake, the existence of regulatory jurisdiction, and long standing Indian law principles recognizing tribal sovereignty all support finding adjudicative jurisdiction here. Any other conclusion would impermissibly interfere with the tribe's inherent sovereignty, contradict long-standing principles the Supreme Court has repeatedly recognized, and conflict with Congress' interest in promoting tribal self-government." *Water Wheel Camp Rec. Area, Inc. v. LaRance*, 642 F.3d 802, 805 (9th Cir. 2011). The conditions of entry by BHCEC onto the Crow Indian Reservation was unknown to the Crow trial court. The lower court erred by applying *Plains Commerce* to non-existent facts to justify its dismissal of this matter.

This Court addresses the Crow trial court's reliance on *Plains Commerce* for its conclusion that "tribal jurisdiction depends on what non-Indians "reasonably" should "anticipate" from their dealings with a tribe or tribal members on a reservation. *Plains*

*Commerce, supra.* It has long been held that regulation of the affairs of non-Indians "must stem from the tribe's inherent sovereign authority to set conditions on entry, preserve tribal self-government, or control internal relations." *Plains Commerce*, 554 U.S. 316, 337 (citing *Montana*, 450 U.S. at 564).

Since there was no record established in the Crow trial court in regard to what BHCEC reasonably should anticipate from their dealing with Crow tribal cooperative members or the Crow Tribe, it was error for the Crow tribal court to make a decision without proper findings of fact. Thus, unless there is a full record established in the Crow trial court, this Court finds it improper and in error for the lower court to make assumptions on the merits of this case. *National Farmer's Union Ins. Cos. v. Crow Tribe*, 471 U.S. 856, 105 S. Ct. 2447 (1985)("…the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the tribal court before either the merits or any question concerning appropriate relief is addressed.) Without findings of fact, the Crow trial court erred when it concluded the Crow Tribe did not have the power to enforce Title 20 against BHCEC.

## V. CONCLUSION

This Court rules that the Crow trial court has subject matter jurisdiction over this matter consistent with this opinion. This Court VACATES the Crow trial court Order of May 24, 2013 dismissing the case. Since this Court REVERSES the Crow trial court's Order based on subject matter jurisdiction, this Court did not address the merits of Appellant Alden Big Man's motion for summary judgment in this Opinion.

This case is REMANDED to the Crow trial court to rule on the non-jurisdictional merits of Appellant Alden Big Man's motion for summary judgment and conduct further proceedings consistent with the Crow Rules of Civil Procedure.

SO ORDERED this 15th day of April, 2017.

Respectfully,

_____
Chief Justice, Joey Jayne

_____
Justice, Leroy Not Afraid

_____
Justice, Kari Covers Up

EXHIBIT 3

COPY

IN THE APSAALOOKE APPEALS COURT
APSAALOOKE (CROW) INDIAN RESERVATION
CROW AGENCY, MONTANA

| | | |
|---|---|---|
| ALDEN BIG MAN, | ) | Case No. 12-118 |
| | ) | |
| Petitioner/Appellant, | ) | AP-2013-001 |
| | ) | |
| v. | ) | |
| | ) | **MANDATE** |
| BIG HORN COUNTY ELECTRIC | ) | |
| COOPERATIVE, INC., | ) | |
| Respondent/Appellee. | ) | |
| | ) | |

TO: CHIEF CLERK, CROW TRIBAL COURT:

Pursuant to the Order dated April 15, 2017, the Appeal of this case has been REVERSED AND REMANDED WITH INSTRUCTIONS TO THE CROW TRIAL COURT. A certified copy of the Court of Appeal's Opinion is attached.

DONE and DATED this __17__ day of April, 2017.



_____
Clerk of the Crow Appeals Court

CERTIFICATE OF MAILING

I, __Sariah OldCrow__ (appeals clerk), do hereby certify that a true and correct copy of the Mandate was mailed on this __17__ day of April, 2017 to the following:

Joe Hargrove
Attorney
Montana Legal Services
616 Helena Ave. Ste 100
Helena, MT. 59601

James E. Tarski
Attorney at Law
314 N. Custer Ave.
Hardin, MT. 59034

IN THE APSAALOOKE APPEALS COURT
APSAALOOKE (CROW) INDIAN RESERVATION
CROW AGENCY, MONTANA

| | |
|---|---|
| ALDEN BIG MAN, | Case No. 12-118 |
| Petitioner/Appellant, | AP-2013-001 |
| v. | |
| BIG HORN COUNTY ELECTRIC COOPERATIVE, INC., | **NOTICE OF ENTRY OF JUDGMENT** |
| Respondent/Appellee. | |

On the 17 day of April, 2017, the following judgment was entered in accordance with this Court's Order dated April 15, 2017. **REVERSED AND REMANDED.**

DONE and DATED this 17 day of April, 2017.

_____
Clerk of the Crow Appeals Court

**CERTIFICATE OF MAILING**

I, Sarah Old Crow (clerk), do hereby certify that a true and correct copy of the Notice of Entry of Judgment was mailed on this 17 day of April, 2017 to the following:

Joe Hargrove
Attorney
Montana Legal Services
616 Helena Ave. Ste 100
Helena, MT. 59601

James E. Tarski
Attorney at Law
314 N. Custer Ave.
Hardin, MT. 59034

1