IN THE CROW TRIBAL CIVIL COURT
IN AND FOR THE CROW INDIAN RESERVATION
PO BOX 489
CROW AGENCY, MONTANA, 59022
(406) 638-7400; FAX (406) 638-7415

| | | |
|---|---|---|
| ALDEN BIG MAN, | ) | **CIVIL CASE NO. 2012-118** |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| BIG HORN COUNTY ELECTRIC COOPERATIVE, INC., a Montana Corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

This case came before the Court for oral argument upon Plaintiff's Motion for Summary Judgment. After considering arguments made by the attorneys for the parties, both written and oral, together with the allegations set forth in the Complaint, the Answer to said Complaint, the affirmative defenses set forth therein, the attached exhibits, and affidavit filed herein, the Court makes the following:

### FINDINGS OF FACT

1. Plaintiff is an enrolled member of the Crow Tribe of Indians and a member of the Defendant Big Horn County Electric Cooperative, Inc.

2. Defendant is a not for profit rural electric cooperative, incorporated under the laws of the State of Montana contained in the "Rural Electric and Telephone Cooperative Act", M.C.A. § 35-18-101, which delivers electric services and energy

1

to its members in southern Montana and northern Wyoming, including the Crow Indian Reservation.

3. A commercial relationship exists between Plaintiff and Defendant by virtue of a written membership agreement. The relationship is limited to on-premises delivery of electrical service to Plaintiff's residence on the Crow Indian Reservation and Plaintiff's obligation to pay for the service.

4. After notice of disconnect for non-payment, Defendant disconnected Plaintiff's electrical service on January 26, 2012.

5. Plaintiff filed a Complaint alleging, as his cause of action, that Defendant terminated Plaintiff's electrical service in violation of Crow law contained in Title 20 of the Crow Law and Order Code, which states: "During the period of November 1st to April 1st . . . no termination of residential service may take place." Additionally, Plaintiff alleged no termination may take place during these winter months "except with specific approval of the board" [Crow Tribal Health Board] Crow Law and Order Code § 20-1-110(2).

6. Plaintiff's Complaint requests award of damages and attorney fees.

7. Defendant answered the Complaint denying factual representations made by Plaintiff but admitted disconnecting Plaintiff's electrical service on January 26, 2012, rather than January 24, 2012, as Plaintiff alleged.

8. Defendant raised numerous affirmative defenses in its Answer, including assertion this Court lacked jurisdiction over Defendant's conduct in connection with the commercial relationship between it and Plaintiff as a member of the electric cooperative.

9. Plaintiff filed a Motion for Summary Judgment contending the criteria

2

governing entry of summary judgment were satisfied by Defendant's acknowledgment of disconnect of Plaintiff's electrical service at a time prohibited by tribal law. Cognizant of the affirmative defense of lack of jurisdiction lodged by Defendant, Plaintiff acknowledged the necessity to address tribal jurisdiction over Defendant. A case decided over 26 years ago, *Harris v. Big Horn County Electric Cooperative*, No. 86-223 (Crow Tr. Ct. Dec. 9, 1986), was cited and relied upon by Plaintiff as authority for tribal court jurisdiction based upon consensual relationships between the tribe and its members and Defendant and a finding that delivery of power has a direct effect on the health and safety of the tribe and its members.

10. Defendant responded citing numerous federal cases, decided after the tribal court decision in the *Harris* case, addressing tribal authority over nonmember activities and conduct.

From the foregoing Findings of Fact the Court makes the following conclusions of law requiring denial of Plaintiff's Motion for Summary Judgment:

## CONCLUSIONS OF LAW

1. The Rules of Civil Procedure set forth in the Crow Law and Order Code require this Court to use the provisions of Rule 56 of the Federal Rules of Civil Procedure in conjunction with the Motion for Summary Judgment filed by Plaintiff.

Defendant objected to Plaintiff's Motion for Summary Judgment referencing Federal Rule 56(2) to support its argument that the fact the Crow Tribe adopted Title 20 of the Tribal Code, prohibiting disconnect of tribal members' electrical service between November 1 and April 1, was not by itself admissible evidence of its enforceability as against Defendant.

2. Defendant's jurisdictional challenge requires the Court to engage in a

3

particularized analysis of the facts and federal case law defining the extent of tribal governmental power over the activities of nonmembers. *Nat. Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845 (1985).

3. The federal principles which govern tribal civil jurisdiction over nonmembers were set out in *Montana v. United States*, 450 U.S. 544, 101 S. Ct. 1245, 67 L. Ed. 2d 493 [8 Indian L. Rep. 1005] (1981), and that decision remains the "'pathmarking case' on the subject." *Nevada v. Hicks*, 533 U.S. at 358, 121 S. Ct. 2304 (quoting *Strate v. A-1 Contractors*, 520 U.S. 438, 445, 117 S. Ct. 1404, 137 L. Ed. 2d 661 [24 Indian L. Rep. 1015] (1997)). In *Montana*, the Supreme Court concluded that the Crow Tribe lacked regulatory power to prohibit hunting and fishing by nonmembers on non Indian fee land within the reservation because "exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes." 450 U.S. at 564, 101 S. Ct. 1245. As a general matter, the Court held, "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Id.* at 565, 101 S. Ct. 1245.

4. Although the issue in the *Montana* case was about tribal regulatory authority over nonmember fee land within the reservation, *Montana*, 450 U.S. at 547, 101 S. Ct. 1245, *Montana's* analytic framework now sets the outer limits of tribal civil jurisdiction – both regulatory and adjudicatory – over nonmember activities on tribal trust and nonmember fee land. The Supreme Court held in *Strate v. A-1 Contractors* that "[a]s to nonmembers . . . a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction." *Strate*, 520 U.S. at 453, 117 S. Ct. 1404. Tribal court jurisdiction thus "turns upon whether the actions at

4

issue in the litigation are regulable by the tribe." *Hicks*, 533 U.S. at 367 n.8, 121 S. Ct. 2304.

The threshold question with respect to the tribe's power to regulate Defendant's activities, extinguishing Plaintiff's wintertime payment requirement associated with Plaintiff's commercial relationship with Defendant, is whether the standards established in *Montana*, and reaffirmed in *Strate* with respect to both regulatory and adjudicatory inherent authority determinations, govern.

5. The United States Supreme Court in *Hicks* indicated that "*Montana* applies to both Indian and non-Indian land." *Hicks* at 360, 121 S. Ct. 2304; *see also id.* at 387, 121 S. Ct. 2304 (O'Connor, J., concurring in part) ("Today, the Court finally resolves that *Montana v. United States*, governs a tribe's civil jurisdiction over nonmembers regardless of land ownership.") (citation omitted); *MacArthur v. San Juan County*, 497 F.3d 1057, 1069-70 [34 Indian L. Rep. 2190] (10th Cir. 2007).

Therefore, Defendant's delivery of electricity to Plaintiff's residence on trust land may not be relied upon alone to provide the basis for exercise of tribal authority, whether regulatory or adjudicatory, over Defendant.

## APPLICATION OF MONTANA STANDARDS

For the reasons discussed above, Plaintiff must prove one of the *Montana* exceptions to; (a) rebut the presumptive absence of tribal civil authority over Defendant's enforcement of the terms of the membership agreement with Plaintiff or, alternatively, (b) to establish the Crow Tribe's power to enforce Title 20 regulations as against Defendant. Plaintiff has not carried this burden.

## THE FIRST EXCEPTION

The first exception provides that "tribes may regulate, through taxation,

licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana* 445 U.S. at 565.

Here, two "relationships" require consideration to determine the first exception application: First, the relationship between Plaintiff and Defendant as set forth in Plaintiff's membership agreement. Plaintiff's Complaint is not based upon that commercial relationship or violation of the terms thereof whether by Plaintiff or Defendant. Instead, Plaintiff's Complaint is based solely upon the second relationship, that which would exist as between Defendant and the Crow Tribe upon enforcement of the tribe's Title 20 regulatory provision. The effect of the later relationship would indeed eliminate "a continuing consensual" relationship between Plaintiff and Defendant of the type contemplated by *Montana's* first exception. See: *Burlington N. R.R. v. Red Wolf*, 196 F.3d 1059, 1064 (9th Cir. 1999). None exists of one party, here Plaintiff, need not perform contractual obligations.

Tribal regulatory authority is derived from traditional power, to exclude persons from the reservation, from which the tribe may set conditions on a nonmember's right of entry. See, e.g., *Hicks*, 533 U.S. at 359, 121 S. Ct. 2304 (*Montana* and *Strate* concern "tribal authority to regulate nonmembers activities on land"). Thus, the Tribe's Title 20 regulation, strictly applied would result in lack of nexus between a predicate relationship (between Plaintiff and Defendant) and the regulation's intended application.

In support of the first *Montana* exception giving tribal jurisdiction over "activities" of nonmembers, the Supreme Court in *Montana* cited four cases. The first, *Williams v. Lee, supra*, involved a tribal court suit brought by a non-Indian

over a contract dispute arising from a sale of goods to a tribal member on the reservation. The other three cases involved taxes associated with reservation based "activities" in which the tribe had an interest in the subject matter; (1) grazing livestock on trust land, (2) activities on trust land, and (3) severance tax on trust mineral production. In each tax case, the Court concluded the non-Indians' right to engage in the "activities" on the reservation were conditioned upon payment of the tax. In other words, regulatory authority, in the form of taxation, flows directly from a tribe's power to exclude i.e. deny the non-Indian the right to engage in the reservation based activity unless the condition, payment of tax, is satisfied.

Again, in each tax case cited as containing the type of consensual relationships giving rise to tribal regulatory authority, under *Montana's* first exception, the tax directly related not only to the relationship giving rise to the consent, (tax on cattle grazing, cigarette sales, and tribal permit tax on privilege to do business on reservation land) but also the nonmember's decision to enter into the arrangement with fair notice of the tax (regulation).

Here, Defendant has for generations constructed permanent infrastructure "to encourage the use of . . . electric power . . . to facilitate the extension of these modern conveniences to sparsely settled Indian areas." See, 25 CFR § 169-22(c) at 469. Defendant has engaged the tribe and its members in the benefits from cooperative membership and use of utility facilities without prior expectation or notice of regulation of the Title 20 type, nor notice the tribe reserved a gatekeeping right to exclude Defendant from the reservation. Thus, this case is about whether the tribe may deny Defendant the right to deliver electric service to tribal

cooperative members unless Defendant agrees to the non-disconnect provisions of Title 20. The Supreme Court has indicated tribal jurisdiction depends upon what non-Indians "reasonably" should "anticipate" from their dealings with a tribe or its members in connection with activities on a reservation. *Plains Commerce Bank*, 554 U.S. at 337, 128 S. Ct. 2709.

Here, there is no contract dispute between Plaintiff and Defendant as in *Williams v. Lee*, nor voluntary submission to tribal court jurisdiction as in that case. This case involves tribal interference in the contractual relations between Plaintiff and Defendant which have nothing whatsoever to do with the tribe's right of self-government and right to control internal relations between the tribe and its members. See, *Hicks, supra*, at 361, 121 S. Ct. 2304. (Tribal assertion of regulatory authority over nonmembers must be connected to that right of the Indians to make their own laws and be governed by them.)

Given the nature and extent of Defendant's longstanding presence on the Crow Reservation, placed there without fair notice of tribal regulation as found in Title 20, the Court finds the Crow Tribe has no power to exclude as the basis for enforcing tribal regulation over Defendant's activities. *Montana's* first exception does not apply.

## THE SECOND EXCEPTION

Though Plaintiff's brief alleges the regulation "is designed to protect the health and safety of elderly and disabled tribal members . . . ," (Plaintiff's Brief p. 3.) the second *Montana* exception does not apply here. The United States Supreme Court, in the *Plains Commerce Bank* case, clarified its limited application stating:

> The second exception authorizes the tribe to exercise civil jurisdiction when non-Indians' "conduct" menaces the "political integrity, the

economic security, or the health or welfare of the tribe." *Montana*, 450 U.S. at 566, 101 S. Ct. 1245. The conduct must do more than injure the tribe, it must "imperil the subsistence" of the tribal community. *Ibid*. One commentator has noted that "th[e] elevated threshold for application of the second *Montana* exception suggests that tribal power must be necessary to avert catastrophic consequences." *Cohen* § 4.02[3][c], at 232, n.220.

35 ILR at 1017.

No allegation has been made that regulation of Defendant is necessitated by circumstances involving possible catastrophic consequences. As none exists, *Montana's* second exception is inapplicable.

## ORDER

The Court concludes the Crow Tribe is without legislative jurisdiction to adopt and enforce Title 20 regulation over the activities of Defendant and as this Court's adjudicative jurisdiction does not exceed the Crow Tribe's legislative jurisdiction, (*Strate*, 520 U.S. at 4537), this Court is without jurisdiction over this case and the Plaintiff's Complaint must be dismissed, and, It Is So Ordered.

Dated this 24th day of May, 2013.

_____
TRIBAL JUDGE

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Order was duly served by first class mail, postage prepaid, this 24th day of May, 2013, upon the following interested parties:

Joe Hardgrave, Attorney
Montana Legal Services Association
2442 1st Avenue North
Billings MT 59101

James E. Torske
Attorney at Law
314 North Custer Avenue
Hardin MT 59034

By: _Sydney J Eastman_

IN THE CROW TRIBAL CIVIL COURT
IN AND FOR THE CROW INDIAN RESERVATION
P.O. BOX 489; CROW AGENCY, MONTANA 59022
(406) 638-7400, FAX (406) 638-7415

## CERTIFICATE OF MAILING

CIVIL CASE NO. **12-118**

I, **Sydney J Eastman**, in the position of **Civil Court Clerk** in the CROW TRIBAL COURT System do hereby verify a true and accurate copy of the **NOTICE OF ORDER** was sent to the following addresses:

**Joe Hardgrave**
**Attorney at Law**
**Montana Legal Services Association**
**2442 First Ave. North**
**Billings, Montana 59101**

**James E. Torske**
**Attorney at Law**
**314 North Custer Ave.**
**Hardin, Montana 59034**

Notice was placed in the mail depository in the UNITED STATES POST OFFICE at Crow Agency, Montana on the 6th day of **May, 2013**.

_Sydney J Eastman_
Clerk of Court, Crow Tribal Court
(SEAL)