Joe Hardgrave
Montana Legal Services Association
2442 First Avenue North
Billings, Montana 59101
(406) 248-7113x339
Attorney for Alden Big Man

## IN THE CROW COURT OF APPEALS, IN AND FOR THE CROW INDIAN RESERVATION, P.O. BOX 489 CROW AGENCY, MT 59022

| | |
|---|---|
| ALDEN BIG MAN<br>PETITIONER/APPELLANT, | APPELLATE CASE NO. 13-001 |
| v. | APPELLANT BRIEF |
| BIG HORN COUNTY ELECTRIC COOP.<br>RESPONDENT/APPELLEE. | |

## STATEMENT OF THE ISSUES

1. Does the Crow Tribe have jurisdiction to enact and enforce Title 20 against the defendant, under the first *Montana* exception that "A tribe may regulate, through taxation, licensing or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealings, contracts, leases or other arrangements"?

2. Does the Crow Tribe have jurisdiction to enact and enforce Title 20 against the defendant, under the second *Montana* exception "when that conduct threatens or

1

has some direct effect on the political integrity, the economic security or the health or welfare of the tribe"?

3. Does the Crow Tribe's inherent authority to exclude the Defendant include the lesser authority of regulatory and adjudicative jurisdiction independent of *Montana*?

## STATEMENT OF THE FACTS

Alden Big Man is an enrolled member of the Crow Tribe, residing on the Crow Reservation at all times relevant to this lawsuit.[1] He received his electric power from the Big Horn County Electric Coop (BHCEC) pursuant to a "consensual contractual relationship with Plaintiff as alleged in paragraph 4 of the Complaint."[2]

In late January, 2012 BHCEC terminated utility services to Alden Big Man.[3] "[I]n July 1986, the Crow Tribal Council adopted Title 20, chapter I of the Crow Tribal Code which dealt with termination of services by utilities." *Harris*, 1 ILR at 6024. Title 20 prohibits utility shutoffs between November 1st through April 1st of each year without "specific prior approval of the [Health] Board" if "he or she is unable to pay, or able to pay only in installments, that he or she or a member of the household is at least 62 years old or that he or she is or a member of the household is handicapped." CLOC 20-1-110.

---

[1] Defendant responds, noting these allegations "speak for itself and requires no answer or other response." This non-response does not, on its face, controvert the allegations regarding membership and residence.

[2] See Answer to Complaint, p. 2, para. 3.

[3] The exact date is subject to dispute (Complaint p. 2, para. 1, claiming January 24, 2012 and the Answer at p. 2, para. 5 claiming January 26th 2012 shut off date). This dispute in dates is not a dispute in a "material fact" because either date is an illegal shut off date under CLOC 20-1-110 which prohibits shut offs between Novembers 1st to April 1st without further steps being taken, which are subject to pending dispute.

Alden Big Man sued BHCEC for illegally terminating his utility services in violation of the termination of services requirements of CLOC 20-1-110. BHCEC answered the Complaint admitting terminating the utility services,[4] but denying other allegations regarding notices of termination and Mr. Big Man's efforts to obtain LIEAP benefits to pay his pending bill with BHCEC.

CLOC 20-1-110 addresses "termination of services during winter months." It includes two sets of requirements:

1. A prohibition of terminations between November 1st to April 1st unless;
2. The termination is "with specific prior approval of the [Health] Board," or the customer fails to establish inability to pay, or pay only in installments, or is a member of a household which includes someone 62 years old or is handicapped.

Upon receipt of the Answer to Complaint, Mr. Big Man filed a motion for summary judgment because "BHCEC not only admits to the one material fact to establish a violation of law, but BHCEC provides documentation proving the termination of Mr. Big Man's power in January 2012….This case is appropriate for summary judgment." *See* Motion and Brief for Summary Judgment pp. 1-2.

The one essential fact required for summary judgment, that BHCEC shutoff Alden Big Man's power between November 1st through April 1st was established. However, the court below did more than deny summary judgment on whether CLOC 20-1-110 was violated. Rather it ruled:

> The Court concludes the Crow Tribe is without legislative jurisdiction to adopt and enforce Title 20 regulation over the activities of Defendant and as this Court's adjudicative jurisdiction does not exceed the Crow Tribe's legislative

---

[4] *See* Answer to Complaint, p. 2, para. 5.

3

jurisdiction (*Strate*, 520 U.S. at 4537), this Court is without jurisdiction over this case and the Plaintiff's Complaint must be dismissed, and It Is So Ordered."[5]

Thus, the lower court's Order dismissing this case is final and presents a significant issue involving the sovereignty of the Crow Tribe and the Tribe's ability to make their own laws and be ruled by them.

## SUMMARY OF ARGUMENT

The Crow Tribe has regulatory and adjudicative jurisdiction over BHCEC, an entity that entered a consensual commercial relationship with Mr. Big Man to deliver service on the Crow Reservation. This jurisdiction exists based on the well founded exceptions in *Montana v. United States* as well as the Crow Tribe's inherent authority to exclude BHCEC. *Montana v. United States*, 450 U.S. 544 (1981); *Water Wheel Camp Rec. Area, Inc. v. Larance*, 642 F.3d 802, 805 (9th Cir. 2011).

## ARGUMENT

I. The Crow Tribal Court has jurisdiction over the Big Horn County Electric Cooperative under *Montana v. United States*, 450 U.S. 544 (1981).

A. *Montana v. United States*: the analytic framework:

In 1981 the United States Supreme Court decided *Montana v. United States*, 450 U.S. 544 (1981) which provides the frame of reference for the jurisdictional arguments in this case. The basic analytic framework of *Montana*, as applicable to this case is succinctly set forth in *Big Horn County Electric Cooperative, Inc. v. Adams*, 219 F.3d 944 (9th Cir. 2000).

> (1) '[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its

---

[5] See Crow Tribal Court Order dated May 6th 2013 at p. 9.

members, through commercial dealing, contracts, leases or other arrangements'; and (2) '[a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

219 F.3d at 951. The following discussion explains how each of *Montana*'s exceptions affirms the Crow Tribe's jurisdiction over BHCEC.

> B. The Crow Tribe has regulatory and adjudicative jurisdiction over BHCEC under the first *Montana* exception because the parties entered into a consensual and contractual relationship.

An analysis of the first *Montana* exception should begin with a careful reading of its text: "A tribe may regulate, through taxation, licensing or other means, the activities of nonmembers who enter consensual relationship with the tribe or its members, through commercial dealings, contracts leases or other arrangements." The term "or" is used first to define "tribe or its members" and used second to allow jurisdiction over "commercial dealings, contracts, leases or other arrangements." Thus the term "or" in the first exception notes the independent functioning of each of a series of exceptions, each operating independently.

As applied to the first *Montana* exception, tribes may have jurisdiction over non-members who have consensual dealings with "tribes or its members." The first exception includes dealings with members, not requiring involvement of the Tribe in the dealings at issue. This is the situation presented by Mr. Big Man's case. It is a dispute between a member, Mr. Big Man, and a nonmember, the BHCEC, a situation specifically encompassed under the first *Montana* exception.

5

The first exception also applies to "commercial dealings, contracts leases or other arrangements." Again, this language uses the term "or" to connect the various types of commercial dealings referenced. This expresses an intent to encompass a broad array of consensual commercial relations, clearly including the contract between Mr. Big Man and BHCEC.

The first exception also requires the relationship between the non-member and the tribe or member be consensual. "...*Montana* limits tribal jurisdiction under the first exception to the activities of nonmembers who enter [into] consensual relationships." *Adams*, 219 F.3d at 951. Applying this standard to the activities of BHCEC, the Ninth Circuit ruled "The district court correctly concluded that Big Horn formed a consensual relationship with the Tribe because Big Horn entered into contracts with tribal members for the provision of electrical services....Big Horn's voluntary provision of electrical services on the Reservation did create a consensual relationship." *Id*.

Finally, the first exception applies "to the activities of nonmembers." Here is where the first exception failed to authorize tribal taxation in *Adams*. On this point *Adams* concluded:

> An ad valorem tax on the value of Big Horn's utility property is not a tax on the activities of a nonmember, but is instead a tax on the value of property owned by a nonmember, a tax that is not included within Montana's first exception.

*Adams*, 219F.3d at 951. The key distinction between the Big Man case and the *Adams* case is this. *Adams* concluded BHCEC's passive status as a property owner is not an "activity" of a nonmember under *Montana's* first exception. However, *Adams* also concluded "...Big Horn's voluntary provision of electrical

6

services on the Reservation" was an activity which "did create a consensual relationship." *Adams*, 219 F.3d at 951.

We submit *Adams*' specific recognition of BHCEC's providing utility services as an "activity" is specifically applicable to this case. This nexus of both cases is centering on the "voluntary provision of electrical services on the Reservation" and BHCEC's challenged practices constituting "activities" of non-member render BHCEC subject to Crow Tribal jurisdiction under the first *Montana* exception.

Both the Crow Tribal Court and the 9th Circuit Court of Appeals have already decided the Crow Tribal Court has jurisdiction over disputes arising between a utility company providing utility services on the Crow Reservation and one of its customers residing on the Crow reservation under the first *Montana* exception, in cases involving BHCEC, specifically.

C. The Crow Tribe has jurisdiction over BHCEC under the second *Montana* exception because the delivery of power has obvious and recognized effects on the health or welfare of the tribe and its members.

Again, analysis of the second *Montana* exception should begin with a careful examination of its text: "A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security or health or welfare of the tribe." This language authorized tribal jurisdiction of conduct which effects either the political integrity or economic security or the health or welfare of the tribe. Each government interest will suffice.

7

The legitimacy of government interests here at issue, a dependable supply of energy for domestic utilities, were described by the U.S. Supreme Court as

> State regulation of natural gas sales to consumer serves important interests in health and safety in fairly obvious ways, in that requirements of dependable supply and extended credit assure that individual buyers of gas for domestic purposes are not frozen out of their houses in cold months.

*GMC v. Tracy*, 519 U.S. 278, 306-07 (1997).

The *Harris* decision described the Crow Tribe's parallel interests in public health and safety, as applied to south-central Montana, on the Crow Reservation, as

> Harris lives in the country outside Lodge Grass. He obtains water from an electric pump. His propane heater has an electric fan and will not operate without electricity. Without electric power Harris is without heat or water.
> In July 1986 the Crow Tribal Council adopted Title 20 chapter I of the Crow Tribal Code which dealt with termination of service by utilities. The Code specifically includes service from an electric cooperative. It requires certain procedure be followed by a utility before terminating service, including notice by certified mail, 20-1-105(3)(a), and personal notice or notice posted on the premises the business day prior to termination. It also requires a utility to accept reasonable installment payments from those only able to pay in installments. 20-1-115. It also seeks to protect consumers who do not receive public benefits in a timely manner. 20-1-101(h) and 20-1-108. It appears undisputed that the cooperative did not comply with the Code.
> Harris appears to be the type of consumer the tribe sought to protect. He receives public benefits which were late in September. He attempted to negotiate a two-installment payment over a short period of time. Without electric service his house is not habitable.

*Id.* at 6024. The Crow Tribe's interest in providing tribal members residing on Reservation with protections for their utility services, particularly for its most vulnerable residents, parallels the concerns of State or municipal governments "in important interests in health and safety in fairly obvious ways," that "individual buyers of gas for domestic purposes are not frozen out of their houses in cold months." per *Tracy, supra*. Certainly conduct which threatens to freeze people out of their homes for months on end constitutes "conduct [which] threatens or has some direct effect on the political integrity, the

economic security, or the health or welfare of the tribe." As a result, the lower court should be reversed for its failure to recognize the Crow Tribe's important "economic security" or "health or welfare" based government interests in protecting tribal members under the second *Montana* exception.

**II.** **The Crow Tribe's inherent authority to exclude BHCEC includes the lesser authority of regulatory and adjudicative jurisdiction over BHCEC independent of *Montana*.**

The power to exclude is the power to regulate. *Water Wheel Camp Rec. Area, Inc. v. Larance*, 642 F.3d 802, 805 (9th Cir. 2011); *See also Bourland*, 508 U.S. at 688-89 (describing *Montana* as establishing that when tribal land is converted to non-Indian land, a tribe loses its inherent power to exclude non-Indians from that land and thereby also loses "the incidental regulatory jurisdiction formerly enjoyed by the Tribe"). A simple way to describe *Montana* would be the exceptions were carved out to allow a Tribe's inherent authority to regulate the conduct of non-members even on non-member owned fee land. *Montana* does not extinguish this inherent sovereignty and from a tribe's inherent power to exclude flow lesser powers, including the power to regulate non-Indians on tribal land. *South Dakota v. Bourland*, 508 U.S. 679, 689, 113 S. Ct. 2309, 124 L. Ed. 2d 606 (1993) (recognizing that a tribe's power to exclude includes the incidental power to regulate). "Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty," and "[c]ivil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 18, 107 S. Ct. 971, 94 L. Ed. 2d 10 (1987). Nonmembers on tribal lands are subject to

the "tribe's *power* to exclude them" including "the lesser power to place conditions on entry, on continued presence, or on reservation conduct." *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 144 (1982). This progeny of case law lays a solid foundation for the Crow Tribe's exercise of jurisdiction over BHCEC.

Surprisingly, the Crow Trial Court held "the Crow Tribe has no power to exclude as the basis for enforcing tribal regulation over Defendant's activities. *Montana*'s first exception does not apply."[6] The Court includes this erroneous conclusion in the analytical section considering the first *Montana* Exception. The Court fails to acknowledge the inherent authority the Tribe retains independent from *Montana*. A recent case from the 9th Circuit reaffirms and elaborates on this inherent authority to regulate the conduct of non-members based on the power to exclude and independent from *Montana*. *Water Wheel Camp Rec. Area, Inc. v. Larance*, 642 F.3d 802, 805 (9th Cir. 2011). In *Water Wheel*, the Court held "the tribe has regulatory jurisdiction through its inherent authority to exclude, independent from the power recognized in *Montana*." *Id* at 804. The *Water Wheel* Court reasoned: "As a general rule, both the Supreme Court and the Ninth Circuit have recognized that *Montana* does not affect this fundamental principle as it relates to regulatory jurisdiction over non-Indians on Indian land." *Id* at 812. *Water Wheel* was recently affirmed this year in another 9th Circuit case.[7] In *Grand Canyon Skywalk*, the Court held the ". . . *Strate* exception does not apply here to deny the tribal court of its initial jurisdiction. The tribal court does not plainly lack jurisdiction because *Montana's* main rule is unlikely to apply to the facts of this case. Furthermore, the district court correctly relied upon *Water Wheel*, which provides for tribal jurisdiction

---

[6] See Crow Tribal Court Order dated May 6th 2013 at p. 8.
[7] *Grand Canyon Skywalk Dev., LLC v. 'SA' Nyu Inc.*, 2013 U.S. App. LEXIS 8512 (9th Cir. Ariz. Apr. 26, 2013).

without even reaching the application of *Montana*." *Grand Canyon Skywalk Dev., LLC v. 'SA' Nyu Inc.*, 2013 U.S. App. LEXIS 8512 (9th Cir. Ariz. Apr. 26, 2013). The *Water Wheel* opinion also addresses *Nevada v. Hicks* and *Strate v. A-1 Contractors* which the Crow Trial Court relied on to drastically limit the Crow Tribe's sovereignty.[8]

The *Water Wheel* principal that a Tribe's inherent sovereign power to exclude includes the power to regulate and adjudicate applies to this case as an independent source of regulatory authority and jurisdiction over BHCEC. When BHCEC illegally shuts off power to a member residing on trust land, the inherent power described in *Water Wheel* applies. When BHCEC illegally shuts off power to a member residing on fee land, *Montana* applies. Regardless of the status of land, the Crow Tribe has regulatory and adjudicatory jurisdiction over the conduct of BHCEC on the Crow Reservation.

---

[8] "In *Hicks*, the Court held that where a state has a competing interest in executing a warrant for an off-reservation crime, the tribe's power of exclusion is not enough on its own to assert regulatory jurisdiction over state officers and *Montana* thus applies

Even though in its analysis the Court interpreted *Montana* broadly as applying to both Indian and non-Indian land, the Court explicitly recognized that in some cases, land ownership 'may sometimes be a dispositive factor' in establishing a tribal court's regulatory jurisdiction over non-Indians. *Id.* at 360. *Hicks* expressly limited its holding to "the question of tribal-court jurisdiction over state officers enforcing state law" and left open the question of tribal court jurisdiction over nonmember defendants generally. *Id.* at 358 n.2; *id.* at 371 (noting that the issue being considered concerned "a narrow category of outsiders"). Furthermore, the Court did not overrule its own precedent specifying that *Montana* ordinarily applies only to non-Indian land.

We have recognized the limited applicability of *Hicks*. *See McDonald*, 309 F.3d at 540 n.9 (rejecting the argument that *Montana* should be extended to bar tribal jurisdiction over the conduct of non-Indians on tribal land because doing so would be inconsistent with *Montana's* narrow holding and "[e]ven if *Hicks* could be interpreted as suggesting that the *Montana* rule is more generally applicable than either *Montana* or *Strate* have allowed, *Hicks* makes no claim that it modifies or overrules *Montana*"); *see also Elliott v. White Mtn. Apache Tribal Court*, 566 F.3d 842, 850 (9th Cir. 2009) (acknowledging "the Supreme Court's instruction that ownership of the land may be dispositive in some cases" concerning the extent of a tribe's regulatory jurisdiction over a non-Indian and explicitly rejecting the argument that *Hicks* forecloses tribal court jurisdiction over non-Indians on tribal land)." *Water Wheel Camp Rec. Area, Inc. v. Larance*, 642 F.3d 802, 813 (9th Cir. 2011).

## CONCLUSION

The Crow Court has jurisdiction over BHCEC under both the *Montana* exceptions and based on the inherent sovereign power to exclude. For these reasons, the Order of the court below, dismissing this case for lack of jurisdiction should be reversed.

Dated this 27th day of June, 2013.

_____
Joe Hardgrave

## CERTIFICATE OF SERVICE

I certify that on the 27th day of June, 2013, a copy of this APPELLANT BRIEF was served on the following counsel of record by certified mail per CLOC Rule 9(b) to counsel of record:

James E. Torske
Attorney at Law
314 N. Custer Ave.
Hardin, MT 59034

_____
Joe Hardgrave