IN THE CROW COURT OF APPEALS
IN AND FOR THE CROW INDIAN RESERVATION
P.O. BOX 489, CROW AGENCY, MONTANA

| | |
|---|---|
| ALDEN BIG MAN, | APPELLATE CASE NO. 13-001 |
| Petitioner/Appellant, | |
| vs. | RESPONDENT/APPELLEE'S BRIEF |
| BIG HORN COUNTY ELECTRIC COOPERATIVE, INC., | |
| Respondent/Appellee | |

James E. Torske
Attorney at Law
314 North Custer Avenue
Hardin, Montana  59034
406-665-1902
Attorney for Respondent/Appellee

Dated July 12th, 2013.

## INDEX

Summary of Argument .................................................................................. 2

Argument ..................................................................................................... 2

    Montana's Standards Determine Jurisdictional Authority ................................. 3

    Montana's First Exception is Here Inapplicable ................................................ 3

    Montana's Second Exception is Not Here Applicable ........................................ 6

    The Crow Tribe Has no Inherent Authority to exclude Big Horn ....................... 6

Conclusion ................................................................................................... 9

## TABLE OF CASES

Atkinson Trading Co. v. Shirley, 532 U.S. 645, 121 S. Ct. 1825,
    149 L. Ed. 2d 889 [28 Indian L. Rep. 1019] (2001) ........................................ 3

Big Horn County Elect. Cooperative Inc. v. Adams
    219 F.3d 944, [27 Indian L. Rep. 2207] (9th Cir. 2000) .................................. 5

Devil's Lake Sioux Tribe v. North Dakota Public Service Com'n,
    895 F. Supp. 955 (1995) .............................................................................. 8

Montana v. United States, 450 U.S. 544, 101 S. Ct. 1245,
    67 L. Ed. 2d. 493 [8 Indian L. Rep. 1005] (1981) ..................... 2, 3, 4, 5, 6, 7

Nord v. Kelly, [35 Indian L. Rep. 2073] (8th Cir. 2008) ........................................ 2

Plains Commerce Bank v. Long Family Land & Cattle Co.
    128 S. Ct. 2709, [35 Indian L. Rep. 1011] (2008) ................................. 3, 4, 5, 6

Prescott v. Little Six, Inc., [31 Indian L. Rep. 2553] (8th Cir. 2004) ...................... 2

Strate v. A-1 Contractors, 520 U.S. 438, 117 S. Ct. 1404
    137 L. Ed. 2d 661 [24 Indian L. Rep. 1015] (1997) ..................................... 3, 9

Water Wheel Camp Recreational Area, Inc. v. LaRance
    642 F.3d 802 (9th Cir. 2011) [38 Indian L. Rep. 2175] .................................. 7

James E. Torske
Attorney at Law
314 North Custer Avenue
Hardin, Montana  59034
406-665-1902
Attorney for Respondent/Appellee

## IN THE CROW COURT OF APPEALS
## IN AND FOR THE CROW INDIAN RESERVATION
## P.O. BOX 489, CROW AGENCY, MONTANA

| | |
|---|---|
| ALDEN BIG MAN, | APPELLATE CASE NO. 13-001 |
| Petitioner/Appellant, | |
| vs. | RESPONDENT/APPELLEE'S BRIEF |
| BIG HORN COUNTY ELECTRIC COOPERATIVE, INC., | |
| Respondent/Appellee | |

On May 24th, 2013, the Crow Tribal Civil Court entered an Order dismissing this case based upon a finding it lacked jurisdiction. Plaintiff/Appellant filed timely appeal on May 24th, 2013, and his Appellant Brief on June 27, 2013.

Appellant's appeal raises three issues. Stated briefly, they are that the Crow Tribe has regulatory authority and adjudicatory jurisdiction, to enact and enforce Title 20 against Defendant/Respondent (Big Horn), under the first and second *Montana* exceptions and lastly, as a matter of inherent tribal authority to exclude Big Horn from reservation land.

1

The extent of tribal court subject matter jurisdiction over claims against nonmembers is a question of federal law which an appellate court may review *de novo*. *Nord v. Kelly*, 35 Indian L. Rep. 2073 (8th Cir. 2008).

Resolution of jurisdictional issues by appellate courts involves review of findings of fact by the tribal court for clear error and in addition interpretation of tribal law. *Prescott v. Little Six, Inc.*, 31 Indian L. Rep. 2253 (8th Cir. 2004).

## SUMMARY OF ARGUMENT

Appellant has not pointed out clear error in the trial court's findings of fact. Instead, Appellant basically restates the basis for his only claim, namely, that Big Horn violated the terms of Title 20 of the Crow Law and Order Code which contains a prohibition of "termination of service" . . . between November 1st to April 1st except with specific prior approval of the [Health] Board." Sec. 20-1-110(2).

Appellant's argument for reversal is that the trial court should have concluded it had jurisdiction under both *Montana* exceptions because the tribe has continuing inherent authority to exclude Big Horn from the reservation and thus regulatory authority to adopt and adjudicatory authority to enforce Title 20 against Big Horn. Appellant's arguments are neither persuasive nor do they have merit. The tribal court's finding that it lacked jurisdiction was correct and in accord with prevailing legal precedent.

## ARGUMENT

As part of the tribal court analysis of the facts and law applicable in this case, an express conclusion of law was made (Conclusion No. 4) that the Crow Tribe's regulatory authority to extinguish Plaintiff's requirement to comply with his commercial contractual obligation to Big Horn depended upon whether the

2

standards established in *Montana v. United States*, 450 U.S. 544 (1981) govern. Order, p. 5.

### *MONTANA'S* STANDARDS DETERMINE JURISDICTIONAL AUTHORITY

As pointed out in the extensive briefs filed in the lower court, which Big Horn elects not to reproduce here, but to which this Court's attention is directed, *Montana's* standards are threefold - the main rule and the two exceptions thereto. One must start by acknowledging the main rule that an Indian tribe's power does not extend to the activities of nonmembers. *Id* at 565.

Tribal regulatory authority was most recently succinctly defined by the United States Supreme Court in *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 128 S. Ct. 2709, 35 Indian L. Rep. 1011, 1014 (2008). The following quotation is instructive:

> Given *Montana's* "'general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe,'" *Atkinson, supra*, at 651, 121 S. Ct. 1825 (quoting *Montana, supra*, at 565, 101 S. Ct. 1245), efforts by a tribe to regulate nonmembers, especially on non-Indian fee land, are "presumptively invalid," *Atkinson, supra,* at 659, 121 S. Ct. 1825. The burden rests on the tribe to establish one of the exceptions to *Montana's* general rule that would allow an extension of tribal authority to regulate nonmembers on non-Indian fee land. *Atkinson*, 532 U.S. at 654, 121 S. Ct. 1825. These exceptions are "limited" ones, *id.*, at 647, 121 S. Ct. 1825, and cannot be construed in a manner that would "swallow the rule," *id.*, at 655, 121 S. Ct.1825, or "severely shrink" it, *Strate*, 520 U.S. at 458, 117 S. Ct. 1404. The Bank contends that neither exception authorizes tribal courts to exercise jurisdiction over the Longs' discrimination claim at issue in this case. We agree.

35 ILR at 1014.

### *MONTANA'S* FIRST EXCEPTION IS HERE INAPPLICABLE

In the *Long* case the Supreme Court overruled a lower court which had taken positions nearly identical to those of Appellant in this case. Appellant here argues

3

the tribe has regulatory and adjudicatory authority "because the parties entered into a consensual and contractual relationship." Appellant's Br. p. 5. Similarly, in the *Long* case the Longs were relying upon enforcement of a tribal tort law much the same as Appellant's reliance here upon enforcement of Title 20 of the Crow Code. The lower court held the Longs' tort claim (discrimination) arose directly from a preexisting on reservation commercial relationship with the Bank which brought the Bank within the first exception relating to tribal jurisdiction over nonmembers outlined in *Montana*. *Id*. at 1012.

Like Appellant here alleges Big Horn is subject to tribal regulation because he has a consensual agreement and commercial relationship with Big Horn through his Cooperative Membership Agreement, the lower court in the *Long* case reached a similar conclusion which was later overturned by the Supreme Court as follows:

> When the Bank chose to deal with the Longs, it effectively consented to substantive regulation by the tribe: An antidiscrimination tort claim was just another way of regulating the commercial transactions between the parties. See *ibid*. In sum, the Tribe had authority to regulate the business conduct of persons who "voluntarily deal with tribal members," . . . We granted certiorari, 552 U.S. ____, 128 S. Ct. 829, 169 L. Ed. 2d 626 (2008), and now reverse.

35 ILR at 1012.

Thus, Appellant's position that tribal regulatory authority and adjudicatory authority may be predicated upon a consensual agreement alone has been stricken down by the United States Supreme Court. Additionally, Appellant is mistaken when he alleges both the Tribal Court and the 9th Circuit Court of Appeals have already decided the Crow Tribal Court has jurisdiction "over Bighorn in cases involving disputes with its customers under *Montana's* first exception." Appellant Br. p. 7.

Just as Appellant argues here, the plaintiff in the *Long* case argued the tribal tort of discrimination was permissible regulation "placing limits on how nonmembers may engage in commercial transactions." Reversing the lower court, the Supreme Court stated: "They argue the regulation is fully authorized by the first *Montana* exception. They are mistaken." *Id.* at 1014.

Again, the *Long* case clarifies the pronouncements first laid down in *Montana* defining the extent of tribal power:

> *Montana* and its progeny permit tribal regulation of nonmember *conduct* inside the reservation that implicates the tribe's sovereign interests. *Montana* expressly limits its first exception to the "activities of nonmembers," 450 U.S. at 565, 101 S. Ct. 1245, <u>allowing these to be regulated to the extent necessary to protect tribal self-government [and] to control internal regulations,</u>" *id.*, at 564. See, *Big Horn County Elect. Cooperative Inc. v. Adams*, 219 F.3d 944, 951 [27 Indian L. Rep. 2207] (9th Cir. 2000) ("*Montana* does not grant a tribe unlimited regulatory or adjudicative authority over a nonmember. Rather, *Montana* limits tribal jurisdiction under the first exception to the regulation of the *activities* of nonmembers" . . . . (Emphasis supplied.)

35 ILR at 1014.

The Tribal Court concluded the tribe's regulation represented interference in the contractual relationship between Big Horn and its member, the Appellant. This conclusion remains unchallenged. Additionally, a finding was made that enforcement of the regulation has no nexus between the <u>tribe's</u> right of self government and right to control internal relations between the tribe and its members. Order p. 8.

The court's finding the that tribal regulation "must be connected to the right of the Indians to make their own laws and be governed by them" also remains unchallenged and, as such, plainly, the presence of a consensual commercial relationship between a tribal member and nonmember does not by itself bestow

regulatory and adjudicatory authority on the tribe as Appellant argues. *Id.* The Tribal Court was correct; *Montana's* first exception does not apply.

### MONTANA'S SECOND EXCEPTION IS NOT HERE APPLICABLE

Appellant's assertion the Crow Tribe's governmental interest in protecting tribal members' "health and welfare" and "economic security" is sufficient to cause reversal of the tribal court finding that *Montana's* second exception is not applicable is ill-founded.

Although unintentionally redundant, it is necessary to recite *Long* as did the tribal court in support of its Conclusion:

> The second exception authorizes the tribe to exercise civil jurisdiction when non-Indians' "conduct" menaces the "political integrity, the economic security, or the health or welfare of the tribe." *Montana*, 450 U.S. at 566, 101 S. Ct. 1245. The conduct must do more than injure the tribe, it must "imperil the subsistence" of the tribal community. *Ibid*. One commentator has noted that "th[e] elevated threshold for application of the second *Montana* exception suggests that tribal power must be necessary to avert catastrophic consequences." Cohen § 4.02[3][c], at 232, n.220.

35 ILR at 1017.

The court concluded there was no allegation or circumstances demonstrating potential catastrophic consequences in absence of enforcement of the regulation. Order p. 9. Appellant presented neither facts nor compelling argument contrary to the tribal court's finding. The court was correct in holding *Montana's* second exception inapplicable and thus no reason exists for reversal.

### THE CROW TRIBE HAS NO INHERENT AUTHORITY TO EXCLUDE BIG HORN

Appellant is correct in his statement that the power to exclude is the source of tribal power to regulate. Appellant Br. p. 9. However, in order to reach the conclusion a tribe has the power to exclude one must engage in examination of the

facts to determine whether sufficient tribal sovereign interest is at stake to justify regulation. Obviously, a tribe's power to exclude and thus regulate the activities or conduct of nonmembers entering the reservation is limited. To conclude otherwise would fly in the face of *Montana*, as the "pathmarking case", and all of its progeny which are guided by the principle that in general "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Montana* 450 U.S. at 565.

Appellant's reliance upon *Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802 (9th Cir. 2011) 38 Indian L. Rep. 2175, is misguided. The *Water Wheel* case involved an "unlawful detainer action for breach of a lease of tribal lands and trespass" by a nonmember over which <u>obviously</u> the tribe had retained regulatory power in order to protect its most valuable assets and to preserve tribal self-government. The Ninth Circuit Court recognized this reserved sovereign authority stating:

> Here, the land is tribal land and the tribe has regulatory jurisdiction over Water Wheel and Johnson. While it is an open question as to whether a tribe's adjudicative jurisdiction is equal to its regulatory jurisdiction, the important sovereign interests at stake, the existence of regulatory jurisdiction, and long-standing Indian law principles recognizing tribal sovereignty all support finding adjudicative jurisdiction here. Any other conclusion would impermissibly interfere with the tribe's inherent sovereignty, contradict long-standing principles the Supreme Court has repeatedly recognized, and conflict with Congress' interest in promoting tribal self-government. Accordingly, we hold that in addition to regulatory jurisdiction, the CRIT has adjudicative jurisdiction over both Water Wheel and Johnson.

38 ILR 2180

The long-standing principle referenced by the Supreme Court above is that the tribe does not have the same reserved power over other reservation land which lacks the same status as tribal land. Appellant's statement, "Regardless of the

status of land, the Crow Tribe has regulatory and adjudicatory jurisdiction over the conduct of BHCEC on the Crow Reservation" is a misrepresentation of the law. Appellant Br. p 11.

That Indian tribes do not have retained regulatory authority over electric service to all land within a reservation is borne out by the federal court's decision in *Devil's Lake Sioux Tribe v. North Dakota Public Service Com'n,* 895 F. Supp. 955 (1995) a case with similarities to this case. There, the facts of the case reflected the tribe had adopted a complex utility regulation, claiming it had the sovereign power to regulate all electric service on the reservation without regard to land status (tribal or individual trust land or fee land) or ownership, just as Appellant alleges here. *Id* at 957.

The court in *Devil's Lake* also determined that "[The] facts of this case present no justification for exercise of regulatory authority . . . " over electrical service on the reservation or demonstrate threat to health, welfare, or safety. *Id.* at 961. The judgment issued in *Devil's Lake,* applied to this case, would unquestionably render Title 20 of the Crow Tribal Code fatally flawed. Declaring tribal regulation of electrical service within the reservation limited and inappropriate, the court held:

> The promulgation and enforcement of a reservation wide utility regulation scheme, without regard to land ownership, occupancy or use is beyond the sovereign authority of the tribe—under the fact specific situation present here.

*Id.* at 962

A thorough review of Title 20 reveals it contains no limitation upon its application based upon whether the land served by electricity is fee or trust land owned by members or nonmembers. As enacted, it purports to apply to all

8

customers who are defined as purchasers of gas or electric service for residential purposes. (See, Title 20, Sec. 21-1-101(c).) Thus, Title 20 would, upon application of Federal law, certainly have the same fate as the tribal regulation in the *Devil's Lake* case.

## CONCLUSION

Application of the federal principals and precedent cited above lends to one conclusion only – enactment of Title 20 in its present form was a legislative act which exceeded and was beyond the sovereign authority of the tribe. The applicable rule is that the adjudicatory authority of the tribe does not exceed its legislative authority, *Strate v. A-1 Contractors,* 520 U.S. 438, 453 [24 Indian L. Rep. 1015). Thus, the Tribal Court was absolutely correct in its finding that it has no jurisdiction over this case and ordering its dismissal. No basis has been shown, nor can be, to reverse the Tribal Court Order.

RESPECTFULLY SUBMITTED this 12th day of July, 2013.

James E. Torske
Attorney for Respondent/Appellee

### Certificate of Service

This is to certify that the foregoing Motion for Respondent/Appellee's Brief was duly served by U.S. mail, first class postage prepaid, this 12th day of July, 2013, upon the following interested party:

Joe Hardgrave, Attorney at Law
Montana Legal Services Association
2442 First Avenue North
Billings MT 59101

By: James E. Torske

9