IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BIG HORN COUNTY ELECTRIC COOPERATIVE, INC., | CV 17-65-BLG-SPW-TJC |
| Plaintiff, | |
| vs. | **FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |
| ALDEN BIG MAN, *et al*, | |
| Defendants. | |

Before the Court are defendant Alden Big Man's Motion to Dismiss Plaintiff's Complaint (Doc. 31), and defendants Unknown Members of Crow Tribal Health Board, the Hon. Chief Justice Joey Jayne, and the Hon. Justices Leroy Not Afraid and Kari Covers Up's (collectively, "Tribal Defendants") Motion to Dismiss the Complaint for Declaratory and Injunctive Relief (Doc. 33) (collectively, the "Motions"). The Motions each seek the dismissal in full of the Complaint for Declaratory Relief and Injunctive Relief (Doc. 1) (the "Complaint") filed by plaintiff Big Horn County Electric Cooperative, Inc. ("BHCEC"). After thorough examination of the Complaint and the parties' briefing on the instant Motions, the Court recommends that the Motions be **GRANTED**.

/ / /

1

## I.      Pertinent Facts

The following pertinent facts are taken from BHCEC's Complaint and documents referenced in and attached to the Complaint, and are assumed to be true for the purposes of the instant Motions.  *See U.S. v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003) (a court may consider documents attached to a complaint without converting a motion to dismiss into a motion for summary judgment).

BHCEC is a non-Indian Montana corporation with its principal place of business in Hardin, Montana.  (Doc. 1 at ¶ 3.)  BHCEC delivers electric energy and services to its members, at least some of whom are enrolled members of the Crow Indian Tribe residing within the boundaries of the Crow Indian Reservation (the "Reservation").  Defendant Big Man is a Crow tribal member who receives electric energy services from BHCEC within the boundaries of the Reservation, pursuant to a Membership Agreement between Big Man and BHCEC.  (*Id*. at ¶¶ 3-4.)

In January 2012, Big Man became delinquent in payment to BHCEC, and, following notice to Big Man, BHCEC disconnected Big Man's electric service. (*Id*. at ¶ 15.)  Big Man filed suit against BHCEC in Crow Tribal Court (the "Tribal Court") on May 2, 2012, alleging that BHCEC "violated Crow law" when it terminated his service.  Specifically, Big Man alleged that BHCEC violated Crow Law and Order Code 20-1-110, which prohibits the termination of residential utility services during the winter months (November 1 to April 1).  (*Id*. at ¶¶ 16-17;

Doc. 34 at 7.)  Following summary judgment motions from both Big Man and

BHCEC, the Crow Trial Court entered summary judgment in favor of BHCEC on

the grounds that it lacked subject matter jurisdiction, and dismissed Big Man's

claims accordingly.  (Doc. 1-7.)  Big Man timely appealed to the Apsaalooke

Appeals Court (the "Appellate Court").

In a lengthy opinion (*see* Docs. 1-4, 1-5), the Appellate Court reversed the

Tribal Court, finding in pertinent part that the Tribal Court had not conducted

sufficient fact-finding with respect to the relevant jurisdictional issues.  The

Appellate Court further found that the Tribal Court erred in concluding that it did

not have jurisdiction under recognized exceptions to the general rule that tribal

courts do not have subject matter jurisdiction over suits involving non-Indians.

(Doc. 1-5 at 8-12) (discussing exceptions recognized *Montana v. U.S.*, 450 U.S.

544 (1981)).  Then, in its conclusion, the Appellate Court stated: "[t]his Court rules

that the Crow trial court has subject matter jurisdiction over this matter consistent

with this opinion."  *Id.* at 16.  It then remanded the case to the Tribal Court "to rule

on the non-jurisdictional merits," and to "conduct further proceedings consistent

with the Crow Rules of Civil Procedure."  *Id.*

BHCEC thereafter filed the instant suit, seeking a declaratory judgment that

the Tribal Court does not have subject matter jurisdiction over Big Man's lawsuit

against BHCEC, and an injunction prohibiting the Crow Tribe from attempting to

regulate BHCEC's actions in the context of Big Man's lawsuit and otherwise.

(Doc. 1 at ¶¶ 32-44.)[1]  The Motions seeking to dismiss BHCEC's lawsuit followed.

## II.   Legal Standard

Previously, motions to dismiss for failure to exhaust have been treated as

unenumerated Fed. R. Civ. P. 12(b) motions.  *See Wyatt v. Terhune,* 315 F.3d

1108, 1119 (9th Cir. 2003) ("the failure to exhaust non-judicial remedies that are

not jurisdictional should be treated as a matter in abatement, which is subject to an

unenumerated motion to dismiss.").  Relying on *Wyatt*, this standard has been

applied to motions to dismiss for failure to exhaust tribal court remedies.  *See e.g.*

*Dish Network Corp. v. Tewa*, 2012 WL 5381437, *2 (D. Ariz. Nov. 1, 2012).

Applying this standard, "the court may look beyond the pleadings and decide

disputed issues of fact."  *Wyatt*, 315 F.3d at 1119-20.

Following the U.S. Supreme Court's decision in *Jones v. Bock*, 549 U.S. 199

(2007), however, the Ninth Circuit has concluded that *Wyatt* is no longer good law.

*Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014).  Nevertheless, the Court has

stated that exhaustion should typically be decided at the outset of the litigation.  *Id.*

at 1170.  When the "failure to exhaust is clear from the face of the complaint, a

---

[1] BHCEC also requested a stay of the proceedings in Tribal Court while the instant case is pending in this Court.  It appears that the Tribal Court already granted such relief in its September 11, 2017, Order Granting Stay.  (Doc. 32-3.)  Accordingly, the Court finds BHCEC's request for a stay to be moot and does not address the issue.

defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.* at 1169.  Otherwise, the issue must be decided on a motion for summary judgment, with disputed factual issues to be resolved by the court.  *Id.* at 1170.

In this case, the relevant documents necessary to determine the exhaustion issue are referenced in and attached to BHCEC's Complaint.  Therefore, in this instance the Court can determine the exhaustion issue under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## III.   Discussion

### A.     Exhaustion

The Tribal Defendants assert in their Motions that BHCEC has not exhausted available Tribal Court remedies, and contend that exhaustion is required before this Court can properly review the question of tribal jurisdiction.

BHCEC maintains, on the other hand, that exhaustion is not required in this situation, since this case falls within recognized exceptions to the exhaustion requirement.  Moreover, even if exhaustion is required, BHCEC asserts that tribal court remedies have been fully exhausted, and the question of tribal court jurisdiction is ripe for this Court's review.

The determination of tribal court jurisdiction over non-Indians is a question of federal law properly determined by federal courts under 28 U.S.C. § 1331.  *Natl.*

*Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 852-53 (1985).  "As a matter of comity, however, federal courts generally decline to entertain challenges to a tribal court's jurisdiction until the tribal court has had a full opportunity to rule on its own jurisdiction." *Elliott v. White Mountain Apache Tribal Court*, 566 F.3d 842, 844 (9th Cir. 2009), *cert. denied*, 558 U.S. 1024 (2009).  "A district court has no discretion to relieve a litigant from the duty to exhaust tribal remedies prior to proceeding in federal court." *Allstate Indemnity Co. v. Stump,* 191 F.3d 1071, 1073 (9th Cir. 1999) (citations omitted).

Following this policy "will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge." *Natl. Farmers Union,* 471 U.S. at 856-57.  It will also promote the "orderly administration of justice in the federal court . . . by allowing a full record to be developed in the Tribal Court." *Id.*  As to this consideration, the Ninth Circuit has recognized that "the Tribe itself is in the best position to develop the necessary factual record for disposition on the merits." *Burlington Northern R. Co. v. Crow Tribal Council*, 940 F.3d 1239, 1246 (9th Cir. 1991).

## B.    Exhaustion Exceptions

The Supreme Court has recognized four exceptions to the exhaustion requirement:

> (1) when an assertion of tribal court jurisdiction is "motivated by a desire to harass or is conducted in bad faith"; (2) when the tribal court

action is "patently violative of express jurisdictional prohibitions"; (3) when "exhaustion would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction"; and (4) when it is "plain" that tribal court jurisdiction is lacking, so that the exhaustion requirement "would serve no purpose other than delay."

*Elliott,* 566 F.3d at 847 (quoting *Nevada v. Hicks,* 533 U.S. 353, 369 (2001)).  In this case, BHCEC asserts the first, second and fourth exceptions apply to excuse the exhaustion requirement.

### 1.   Harassment or Bad Faith Exception

BHCEC maintains that the Tribal Defendants have acted in bad faith "by filing the case in tribal court, appealing to Appeals Court, and now seeking to have the matter heard further in tribal court."  (Doc. 39 at 15.)  BHCEC's argument in this regard is premised primarily on a membership application Big Man submitted to BHCEC on February 15, 1999.  The application states "[t]he Applicant agrees that the laws of the State of Montana shall control and be exclusively applied for the purpose of determining  the rights of the Cooperative and the Applicant hereunder and the Montana Thirteenth Judicial District, Big Horn County shall have exclusive jurisdiction and venue for the purpose of actions or proceedings" under the agreement.  (Doc. 1-6 at 1.)  In its response to the present Motions, BHCEC also attaches two applications submitted by the Crow Tribe for membership with BHCEC which have the same choice-of-laws provision.  (Doc.

39-2 & 39-3.)[2]  BHCEC argues that Big Man and the Tribal Defendants are proceeding "in bad faith because they have disregarded the plain contractual choice of law and forum selection provisions to which they have agreed and are bound." (Doc. 39 at 11.)  The Court is not persuaded.

First, contractual choice-of-law disputes are not uncommon.  *See e.g., Bjorgen v. Marco Technologies, LLC*, 2018 WL 2023543, *6 (D. Mont. May 1, 2018).  Though one side may prevail in those disputes, the Court is not prepared to say that the losing party is proceeding in bad faith merely because their argument on the enforceability of a choice-of-law provision does not carry the day.  While forum selection clauses are generally enforceable, there are several exceptions to their enforceability, including "if enforcement would contravene strong public policy of the forum in which suit is brought."  *Id.* at *4 (internal citations and quotations omitted).  BHCEC does not provide any additional basis for its argument that the defendants are proceeding in bad faith other than the choice-of-law provisions, and the Court does not find those provisions to be sufficient basis for a finding of bad faith.

Next, although BHCEC maintains that "[t]he trial court recognized the contractual provisions were binding," the Court's review of the Trial Court's Order

---

[2]  The Tribal Defendants point out that these documents were never presented to the Tribal Court for its consideration in the first instance.  They contend this only demonstrates that further exhaustion is needed.  (Doc. 45 at 5.)

does not reveal any mention of a choice-of-law provision whatsoever, much less a finding that BHCEC's position with respect to such a provision is correct. (*See* Doc. 1-7.)  The fact that the Tribal Court has not yet considered BHCEC's choice-of-law argument – coupled with BHCEC's contention that the Appellate Court "simply ignored a contract existed" – only serves to bolster the conclusion that BHCEC has not exhausted its remedies in Tribal Court.  BHCEC may yet prevail on its choice-of-law argument, but it needs to present that argument first to the Tribal Court.

In addition, the Ninth Circuit has made clear that the bad faith exception to the exhaustion requirement only applies where the tribal court has acted in bad faith.  *Grand Canyon Skywalk Development, LLC*, 715 F.3d at 1201.  "Bad faith by a litigant instituting the tribal court action will not suffice."  *Id.*  Therefore, BHCEC's argument that the Tribal Defendants have acted in bad faith by filing their action in Tribal Court is unavailing.  It is the Tribal Court which must act in bad faith, not the Defendants in instituting their action in Tribal Court.

For these reasons, the Court does not find a sufficient basis to conclude that Big Man or the Tribal Defendants are proceeding in bad faith, and finds accordingly that the first exhaustion exception does not apply.

//

//

9

### 2.      Violative of Express Jurisdictional Prohibitions Exception

BHCEC's argument that tribal exhaustion would violate express jurisdictional prohibitions also is premised on the choice-of-law and forum-selection clauses in the membership agreements.  The Court does not find this exception excuses exhaustion in this case.

BHCEC does not cite to any federal or tribal statute which would preclude the exercise of jurisdiction and excuse exhaustion in this case.  There also does not appear to be any controlling authority on the issue of whether a forum-selection clause excuses exhaustion.  The parties do not cite any authority from the Ninth Circuit, and there appears to be a split of authority on this issue from two other circuits.  *Compare Enerplus Resources (USA) Corp.*, 865 F.3d 1094, 1097 (8th Cir. 2017) (finding tribal exhaustion is not required where parties have included a forum selection clause in their agreement) *with Ninigret Development v. Narragansett Indian Wetuomuck Hous. Auth.,* 207 F.3d 21, 33 (1st Cir. 2000) (interpretation of forum-selection clause and determination of tribal court jurisdiction should first be made by the tribal court); *see also Snowbird Const. Co., Inc. v. U.S.*, 666 F.Supp. 1437, 1444 (D. Idaho 1987) (finding the interpretation and enforcement of a forum-selection clause in a tribal contract must first be made by the tribal court).

In *Ninigret*, the First Circuit determined that the "existence and extent of tribal court jurisdiction must be made with reference to federal law, not within the four corners of an underlying contract." *Ninigret*, 207 F.3d at 33. The court found "the pivotal question is not which court the parties agreed would have jurisdiction, but which court should, in the first instance, consider the scope of the tribal court's jurisdiction and interpret the pertinent contractual clauses (including any forum-selection proviso)." *Id.*

In the absence of any controlling precedent directly bearing on the relationship between choice-of-law/forum-selection clauses and tribal exhaustion, the Court finds the more prudential path is to follow the approach of the First Circuit. The Tribal Court should be provided the first opportunity to consider the choice-of-law and forum-selection clauses, and to issue a ruling as to the operation and enforceability of those clauses. *Nat'l Farmers Union*, 471 U.S. at 856.

Allowing the Tribal Court the first opportunity to fully address the jurisdictional issues is particularly appropriate in this case. Aside from the forum-selection clause itself, the primary underlying dispute is not focused on an attempt by either Big Man or BHCEC to enforce a provision of the agreement between the two. Rather, the primary dispute is whether BHCEC is subject to Crow tribal law for activities conducted on the Crow Indian Reservation – *i.e.*, whether BHCEC can insulate itself from Crow tribal law by including a choice-of-law provision in a

11

contract with a third party.  To be clear, the Court takes no opinion on the issue at this time, but the nature of the underlying dispute provides further justification for allowing the Tribal Court to consider the issue in the first instance.

For the foregoing reasons, the Court finds the "patently violative of express jurisdictional prohibitions" exception to exhaustion does not apply here.

### 3.    Plainly Lacking Exception

Finally, BHCEC contends that tribal court exhaustion is not required because it is plain that tribal court jurisdiction is lacking.  The plainly lacking exception does not apply when jurisdiction is "colorable" or "plausible."  *Window Rock Unified School District v. Reeves,* 861 F.3d 894, 898 (9th Cir. 2017).  The Court must, therefore, analyze whether there is a colorable or plausible claim of tribal court jurisdiction.

Ninth Circuit "case law has long recognized two distinct frameworks for determining whether a tribe has jurisdiction over a case involving a non-tribal-member defendant: (1) the right to exclude, which generally applies to nonmember conduct on tribal land; and (2) the exceptions articulated in [*Montana*], which generally apply to nonmember conduct on non-tribal land."  *Window Rock Unified School Dist. v. Reeves*, 861 F.3d 894, 898 (9th Cir. 2017.)  In *Montana*, the Supreme Court held a tribe may regulate nonmembers "who enter consensual relationships with the tribe or its members, through commercial dealing, contracts,

leases or other arrangements." *Montana*, 450 U.S. at 565.  The Supreme Court

further held that a tribe may exercise authority "over the conduct of non-Indians on

fee lands within its reservation when that conduct threatens or has some direct

effect on the . . . health or welfare of the tribes." *Id.* at 566.

With respect to the right-to-exclude framework, the Supreme Court has

recognized that Indian tribes have sovereign powers, including the power to

exclude non-tribal members from tribal land.  *See e.g. New Mexico v. Mescalero*

*Apache Tribe*, 462 U.S. 324, 333 (1983).  A tribe's regulatory authority derives

from these sovereign powers.  As the Supreme Court has explained:

> This power [to exclude] necessarily includes the lesser power to place
> conditions on entry, on continued presence, or on reservation conduct,
> such as a tax on business activities conducted on the reservation.  When
> a tribe grants a non-Indian the right to be on Indian land, the tribe agrees
> not to exercise its ultimate power to oust the non-Indian as long as the
> non-Indian complies with the initial conditions of entry.  However, it
> does not follow that the lawful property right to be on Indian land also
> immunizes the non-Indian from the tribe's exercise of its lesser-
> included power to tax or to place other conditions on the non-Indian's
> conduct or continued presence on the reservation.

*Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 144-45 (1982).  In *Strate v. A-1*

*Contractors*, 520 U.S. 438 (1997), the Supreme Court tied the scope of

adjudicative jurisdiction to regulatory jurisdiction by holding that "[a]s to

nonmembers . . . a tribe's adjudicative jurisdiction does not exceed its legislative

jurisdiction." *Id.* at 453.

"[B]ecause tribes generally maintain the power to exclude and thus to regulate nonmembers on tribal land, tribes generally also retain adjudicative jurisdiction over nonmember conduct on tribal land." *Window Rock*, 861 F.3d at 899. However, "the Supreme Court has held that a tribe does not possess any inherent sovereign right to regulate nonmembers on non-tribal land, even if the land falls within the boundaries of a reservation." *Id*. at 900. Accordingly, whether a non-member's conduct occurred on tribal land is central in determining whether a tribe has jurisdiction to regulate that conduct and to adjudicate cases involving that conduct in a tribal court.

Here, there does not appear to be any dispute between the parties that the Tribal Court has not considered whether the relevant conduct occurred on tribal land. Since the result of that inquiry may be central to whether the Crow Tribe has legislative and adjudicatory jurisdiction over BHCEC, the Court cannot say at this point that the Tribe "plainly" lacks jurisdiction. *See Window Rock*, 861 F.3d at 906 ("In sum, because the conduct at issue here occurred on tribal land over which the Navajo Nation has the right to exclude nonmembers, and because state criminal law enforcement interests are not present, we hold that tribal jurisdiction is at least colorable or plausible and that exhaustion in the tribal forum is therefore required."); *Glacier Elec. Coop., Inc. v. Gervais*, 2015 WL 13650531, *3-4 (D. Mont. April 24, 2015) ("Whether the land underlying the dispute is Indian or non-

Indian remains unclear from the record at this point….Glacier Electric's actions could be subject to the Blackfeet Tribe's right to regulate and adjudicate non-members based on interference with its right to exclude.").

The Court finds therefore finds that the "plainly lacking jurisdiction" exception to the exhaustion requirement does not apply in this case.  The Court cannot rule out that tribal court jurisdiction could arise under the right-to-exclude framework without a determination regarding the land-status on which the relevant conduct occurred.  The Tribal Court must be given the opportunity to develop the factual record and consider that issue before this Court can address it.  *Nat'l Farmers Union*, 471 U.S. at 856.

In addition, on remand the Tribal Court will have the opportunity to develop the factual record as to the remaining *Montana* exceptions.  That is, (1) whether BHCEC entered into a consensual relationship with the tribe by virtue of its contracts and commercial dealings with the Crow Tribe and its members; and (2) whether the practice of disconnecting electrical service during the winter months has some direct effect on the health and welfare of tribal members.

## C.    Whether Exhaustion Has Occurred

Finally, BHCEC argues that any necessary exhaustion already has occurred because the Appellate Court determined that the Tribal Court has subject matter jurisdiction.  BHCEC cites indirectly to *Ford Motor Co. v. Todecheene*, 488 F.3d

1215, 1217 (9th Cir. 2007).  There, the Ninth Circuit remanded a case to Navajo

tribal court, holding that "Ford will be deemed to have exhausted its tribal

remedies once the Navajo Nation Supreme Court either resolves the jurisdictional

issue or denies a petition for discretionary interlocutory review pursuant to Navajo

Nation Code tit. 7, § 303 ('The Supreme Court [of the Navajo Nation] shall have

the power to issue any writs or orders ... [t]o prevent or remedy any act of any

Court which is beyond such Court's jurisdiction.')."  BHCEC argues that since the

Appellate court has "resolve[d] the jurisdictional issue," any necessary exhaustion

has occurred.

This argument does have some support.  As noted above, the Appellate

Court's Opinion concludes, "[t]his Court rules that the Crow trial court has subject

matter jurisdiction over this matter consistent with this opinion," and that "[t]his

case is REMANDED to the Crow trial court to rule on the *non-jurisdictional*

merits...."  (Doc. 1-5 at 16 (italics added).)  Read in isolation, this language can be

interpreted as a conclusion that jurisdiction in the Tribal Court has been

established.

The Court finds nevertheless that the necessary exhaustion has not occurred.

First, the Court must read the Appellate Court's Opinion in full, and not merely

isolate language that suggests full consideration of the jurisdictional issue.

Considered in full, the Opinion is replete with admonitions that the Tribal Court

failed to make sufficient factual findings to justify its decision regarding subject matter jurisdiction.

With respect to the consensual agreement exception to non-jurisdiction over non-Indians, for example, the Appellate Court stated:

> Because there is no record established in the proceedings below, this Court is without knowledge on the number of cooperative members BHCEC serves on the Crow Indian Reservation. The number of electrical customers is critical in the context of the *first* Montana exception because it would provide the number of "consensual" agreements between cooperative members and BHCEC. It is also unknown by what instrument or the year the Crow Tribe and BHCEC established electrical services for residents of the service area. (Doc. 1-5 at 4-5 (emphasis in original).)

The Appellate Court also found the Tribal Court failed to make any factual finding regarding the terms of the agreement between the Crow Tribe and BHCEC:

> The lower court provided no contract terms on the initial agreement between the Crow Tribe and BHCEC (to establish electrical service on the Crow Reservation). A review of this contract would have shed light on the rights and limitations on the Crow Tribe or BHCEC in providing future electric service. Since there was no finding of fact, this Court holds that the Crow trial court erred. (*Id.* at 6.)

In addition, the Appellate Court reiterated on several occasions that the Tribal Court failed to make necessary findings regarding the status of the land underlying the dispute:

> - There is no record below establishing the land status of BHCEC within the Crow Indian Reservation . . . . BHCEC's land status is pivotal in determining the application of case law in this matter. (*Id.* at 5.)

17

- The Crow trial court erred when it did not inquire into BHCEC's land status within the Crow Indian Reservation since *Montana's* general rule is that "tribes do not possess authority over non-Indians who come within their borders" (*Montana* [at 450 U.S. 564]) and "is particularly strong when the nonmember's activity occurs on land owned in fee simple by non-Indians." (*Id.* at 8.)

- Land status is paramount in the instant case. In order for the Crow trial court to determine whether the Crow Tribe's enforcement of Title 20 is an "interest in protecting internal relations and self-government" the Crow trial court must first establish land status and the conditions of entry by BHCEC. The lower court did not establish findings of fact of land status and entry conditions in its order. (*Id.* at 11.)

- In order to come to any conclusion on whether the Crow Tribe has ever lost regulatory jurisdiction over BHCEC, it was necessary for the Crow trial court to make findings on BHCEC's land status, date and initial entry conditions onto the Crow Indian Reservation. The lower court made no such findings. (*Id.* at 14.)

Finally, the Appellate Court concluded its discussion of the jurisdictional issues with the following paragraph:

Since there was no record established in the Crow trial court in regard to what BHCEC reasonably should anticipate from their dealing with Crow tribal cooperative members or the Crow Tribe, it was error for the Crow tribal court to make a decision without proper findings of fact. Thus, unless there is full record established in the Crow trial court, this Court finds it improper and in error for the lower court to make assumptions on the merits of this case. *National Farmer's Union Ins. Cos. v. Crow Tribe,* 471 U.S. 856, 105 S. Ct. 2447 (1985) (". . . the orderly administration of justice in federal court will be served by allowing a full record to be developed in the tribal court before either the merits or any question concerning appropriate relief is addressed.["]) Without findings of fact, the Crow trial court erred when it concluded the Crow Tribe did not have the power to enforce Title 20 against BHCEC. (*Id.* at 16.)

18

In light of the Appellate Court's numerous directions to the Tribal Court to conduct further fact-finding in the interest of determining whether it has jurisdiction, the Court finds exhaustion has not occurred.

Moreover, as noted above, one of the principle reasons for requiring exhaustion is to allow adequate development of the factual record by the tribal court.  As discussed at length, one of the most significant outstanding factual issues is the land-status relative to the underlying dispute.  Since that finding may be dispositive as to the issue of subject matter jurisdiction, the Court finds that it will not be able to consider the issue completely until that question is resolved in the record.   As recognized in *Burlington Northern R. Co.* 940 F.2d at 1246, "[w]ithout the tribal record," this Court would be "faced [with] an action based on an uninterpreted tribal ordinance and an obscure factual record."

Accordingly, regardless of the somewhat contradictory nature of the Appellate Court's Order, the issue of subject matter jurisdiction will not be ripe for review unless and until the Tribal Court conducts sufficient fact-finding with respect to the right-to-exclude framework, and the exceptions set forth in *Montana*.

Big Man and the Tribal Defendants each make additional arguments in support of their Motions.  But because the Court finds their arguments regarding lack of Tribal Court exhaustion to be dispositive, it is not necessary to address any additional issues at this juncture.

## IV. Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that:

(1)    Big Man's Motion to Dismiss Plaintiff's Complaint (Doc. 31) and the Tribal Defendants' Motion to Dismiss the Complaint for Declaratory and Injunctive Relief (Doc. 33) be **GRANTED**;

(2)    that BHCEC's Complaint for Declaratory Relief and Injunctive Relief (Doc. 1) be **DISMISSED** without prejudice; and

(3)    that this case be **REMANDED** to the Tribal Court for further proceedings consistent herewith.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties.  The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court, and copies served on opposing counsel, within fourteen (14) days after entry hereof, or objection is waived.

DATED this 15th day of August, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge