James E. Torske, Esq. (Bar #1563)
Torske Law Office, P.L.L.C.
314 North Custer Avenue
Hardin, Montana  59034
Telephone:  (406) 665-1902
Fax:  (406) 665-1903
torskelaw@tctwest.net

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| BIG HORN COUNTY ELECTRIC, COOPERATIVE, INC., | ) Case No. CV-17-065-BLG-SPW-TJC |
| Plaintiff, | ) **PLAINTIFF'S PRETRIAL STATEMENT** |
| -v- | ) |
| ALDEN BIG MAN, *et al.*, | ) |
| Defendants. | ) |

This Pretrial Statement is presented on behalf of Big Horn County Electric Cooperative (BHCEC), Plaintiff herein.  Pursuant to L.R. 16.2, and this Court's Amended Order requiring the parties to file a joint discovery plan, preliminary pretrial statements, and a Statement of Stipulated Facts by December 13th, 2018, Plaintiff hereby submits its Preliminary Pretrial Statement as required by L.R. 16.2(b)(1):

1

**A. Factual Outline of Case.**

1. BHCEC was incorporated in 1939 pursuant to Montana's "Rural Electric and Telephone Cooperative Act", M.C.A. § 35-18-101, *et seq.* BHCEC provides electric service and energy to approximately 4,000 meters for its members and consumers in Montana, Northern Wyoming, and on the Crow and Northern Cheyenne Indian Reservations.

2. The Crow Tribe's 2002 Law and Order Code contains Title 20, Utilities, Chapter 1, entitled: Termination of Electric Service, Compl., Ex. 2. Title 20, Section 20-1-110(2) provides: "No termination of service may take place during the period of November 1st to April 1st except with specific prior approval of the Board" (Unknown Defendant Members of the Crow Tribal Health Board).

Defendant Alden Big Man has been a member of BHCEC since February of 1999, (Compl., Ex. A, BHCEC's Crow Tribal Court, Motion for Summary Judgment.) Membership Agreements, signed by all BHCEC members as a condition to receipt of electric service and energy, require cooperative members to timely pay for electric energy purchased by the member. Additionally, the agreements contain choice of law and forum and venue selection provisions requiring any and all causes of actions "brought to determine the rights of either the cooperative or the applicant arising by reason of membership in the cooperative or delivery of electric energy to said member . . . " to be brought in the Big Horn County State District Court.

3. Defendant Alden Big Man became delinquent for nonpayment for the electricity

2

he used in December, 2011.  On January 26, 2012, after giving Defendant Alden Big Man a written termination notice for nonpayment on January 11, 2012, and Mr. Big Man not communicating with BHCEC staff his intention or request to obtain an installment payment agreement, his electric service was terminated in accordance with BHCEC's membership agreement and policy.

4. On May 2nd, 2012, Mr. Big Man filed a Complaint in Crow Tribal Court alleging the tribal court had jurisdiction because Mr. Big Man was an enrolled member of the Crow Tribe residing on the Crow Reservation and BHCEC entered into a consensual agreement to provide services on the Crow Reservation.  Mr. Big Man's Complaint alleges when his electric service was terminated "BHCEC violated Crow law".  Also, BHCEC failed to comply with notice requirements of Title 20" Tribal Crt. Compl. p. 3.

5. In the tribal court BHCEC challenged the jurisdictional authority of the Crow Tribe, both legislative and adjudicatory, and by Order dated May 24th, 2013, after considering briefs and argument, the Crow Tribal Court concluded the Crow Tribe lacked legislative authority to adopt and enforce Title 20 and the tribal court's jurisdiction did not exceed the Crow Tribe's legislative authority and by Order dismissed the case.

6. The matter was appealed to the Crow Appeals Court which reversed the Crow Tribal Court Order and the case was "REMANDED to the Crow Tribal Court to rule on the non-jurisdictional merits" of Mr. Big Man's Motion for Summary Judgment and to conduct further proceedings.  The appeals court concluded: "This Court rules that the Crow Trial

Court has subject matter jurisdiction over this matter consistent with this opinion." and in its opinion concluded: "BHCEC is subject to Crow Tribal regulation, such as Title 20, because it entered the Crow Reservation to engage the Crow Tribe in commerce. . . . " Op., p. 32 of 36, Compl. Ex. 3)

7. This action followed challenging Crow Tribal Regulatory (legislative) authority and adjudicatory jurisdiction of the Crow Tribal Court. BHCEC seeks this Court's judgment declaring the tribal court lacks subject matter and personal jurisdiction over BHCEC to enforce Title 20 and an injunction prohibiting enforcement of claims based upon violation of Title 20.

**B. Basis for Federal Jurisdiction and Venue.**

1. This Court has jurisdiction over the subject of this action, the federal question, whether the Crow Tribe has jurisdictional authority over the activities of BHCEC, a non-Indian pursuant to 28 U.S.C. § 1331.

2. The action is also brought under 28 U.S.C. § 2201, the Declaratory Judgment Act.

3. Venue is proper in this district and division as required by 28 U.S.C. § 1391(b) and L.R. 3.2(b) as Big Horn County is in the Billings Division, and Defendant Big Man resides in and all events occurred in Big Horn County.

**C. Factual Basis for Claim or Defense.**

1. The underlying tribal court action alleges BHCEC violated Crow Law, Title 20 of the Crow Tribal Law and Order Code, which in part prohibits termination of electric service

between November and April without express approval of the Crow Tribal Health Board. Title 20 identifies and defines "customer" as "any purchaser of gas or electric service supplied by a utility for residential purposes." Thus, Title 20 presupposes tribal regulatory authority over BHCEC in connection with delivery of electric service to all cooperative members within the Crow Reservation, whether tribal members or not.

    2. There is no nexus between Mr. Big Man's tribal court lawsuit and the consensual agreements in the form of membership agreements between the tribe, tribal members, and BHCEC, and thus the consensual agreements do not provide the jurisdictional predicate for the lawsuit which is based solely on violation of Crow Tribal law. *Montana v. United States*, 450 U.S. 544, 565-66 (1981), and its progeny.

    3. Whether the Crow Tribe has legislative, regulatory and adjudicatory authority involves a combination of fact and law. The membership agreements contain contractual provisions which bind the parties whether they involve the Crow Tribe, tribal members, or non-Indians, all of whom are cooperative members of BHCEC. The contracts in part require:

> 1. Purchase and payment for all electric energy used by the member "in accordance with the by-laws of the cooperative . . . ";
>
> 2. Members agree to be bound by and follow the foundational articles of incorporation, by-laws, and rules and regulations adopted by the cooperative;
>
> 3. Members agree the laws of the State of Montana "shall control and be exclusively applied for the purpose of determining the rights of the cooperative . . . " and the members;

4. The parties agree the State District Court in "Big Horn County shall have exclusive jurisdiction and venue for the purpose of actions or proceedings brought to determine the rights of either the cooperative . . . " or the member by reason of delivery of electric energy under the membership agreement;

5. The members agree to grant the cooperative easements for purpose of distribution of energy to the members;

6. The fact, if it is a fact, a member's service and meter is located on land held in trust for the Crow Tribe or for an individual tribal member, does not conclusively determine whether the Crow Tribe has regulatory authority over BHCEC due to the contractual relationship created by the membership agreements. In other words, tribal regulatory jurisdiction, based upon the tribal right to exclude nonmembers from tribal land, does not apply under the circumstances electric energy is delivered to the Crow Tribe and tribal members subject to the binding contractual conditions described above.

7. Because of the choice of law and venue designation contained in the membership agreements, BHCEC could not have anticipated that it would be subject to regulation by the tribe and hailed into Crow Tribal Court by its member, Mr. Big Man.

**D. Underlying Legal Theory.**

**1. Federal Common Law**

The law of tribal regulatory and adjudicatory jurisdiction is a matter of federal common law. Over the past 40 years the Supreme Court has fashioned the body of Indian law cases which, when applied, should make sense in most, of not all, cases.

*Montana v. United States*, 450 U.S. 544 (1981), which involved the Crow Tribe's effort to regulate non-Indian activity (hunting and fishing) on the reservation was later designated by the Supreme Court as the pathmarking case. The court in *Montana*, citing *Oliphant v. Suquamish Tribe*, 435 U.S. 191 (1978), which clearly held Indian tribes lack

criminal jurisdictional authority over nonmembers, announced the "general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Montana* at 565.

The court in *Montana* outlined circumstances wherein a tribe retains inherent sovereign authority to exercise civil jurisdiction over nonmembers, "even on non-Indian fee lands." *Id.* The circumstances, now referred to in cases as the Montana exceptions, were by the Montana Court described as follows:

> A tribe may regulate, though taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe. *Id.*

In *Strate v. A-1 Contracting*, 520 U.S. 438 (1997), the Supreme Court decided the main proposition and the two exceptions apply to determine whether a tribe has adjudicative power as well as regulatory authority. In *Strate*, the court decided that tribal adjudicative jurisdiction does not exceed tribal regulatory jurisdiction. *Id.* at 453.

Important to this case, the *Strate* court held the governing rule is a presumption against tribal jurisdiction unless one of the two *Montana* exceptions exists or tribal jurisdiction is delegated by treaty provisions or statutes, which in the instance of this case there are none.

2. **Consensual Agreements Exception**

Thus, in this matter we know there are consensual agreements between BHCEC, the Crow Tribe, and its members.  BHCEC will show the membership agreements may only support an argument that "but for" the agreements with the tribe and its members BHCEC would not have engaged in the activity giving rise to the Big Man tribal court lawsuit.  But, because the suit is in fact based solely upon the contention BHCEC violated tribal law, the membership agreements do not represent consensual relationships of the qualifying kind referenced in *Montana*.  There is no nexus between the membership agreements and the Big Man tribal court Complaint alleging violation of tribal law, as set forth in Title 20.

That *Montana's* main rule and two exceptions must be considered to determine the extent of tribal authority over nonmember activity on both fee and tribal trust land was clarified in *Nevada v. Hicks*, 533 U.S. 353 (2001).  The majority in *Hicks* concluded:  "The ownership status of land . . . is only one factor to consider in determining whether regulation of the activities of nonmembers is necessary to protect tribal self-government or to control internal relations."  *Id.* at 360

Here, BHCEC will rely upon Supreme Court precedent that *Montana* applies even in instances where electric services are delivered to cooperative members on trust land.  It was so articulated in the concurring opinion in *Hicks* as follows:

> *Montana* applied this presumption against tribal jurisdiction to nonmember conduct on fee land within a reservation; I would also apply it where, as here, a nonmember acts on tribal or trust land, and I would thus make it explicit that land status within a reservation is not a primary jurisdictional fact, but is relevant only insofar as it bears on the application of one of *Montana's* exceptions to a particular case.  *Id.* at 375-76.

8

Here, because BHCEC has consensual commercial contracts with cooperative members who are tribal members purchasing electric service and energy on the reservation does not bestow upon the tribe jurisdiction over all suits involving BHCEC that arise on the reservation. The tribe may assert jurisdiction only over suits which arise directly from the consensual contracts or agreements. *Phillip Morris USA, Inc. v. King Mt. Tobacco Co.*, 569 F.3d 932 (9th Cir. 2009). In other words, "[a] nonmember's consensual relationship in one area does not trigger civil authority in another—it is not in for a penny, in for a pound." *Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 656 (2001).

### 3. Threatening Conduct Exception.

Delivery of electric energy for purchase by cooperative members on the Crow Reservation would have to "menace" the tribe's ability to govern itself and create conditions which do more than injure the tribe and tribal members before the second *Montana* exception woud justify assertion of tribal regulatory or adjudicatory authority. "The conduct must do more than injure the tribe, it must imperil the subsistence of the tribal community." *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 341 (2008). *Montana's* second exception has been narrowly interpreted as applicable only when "tribal power must be necessary to avert catastrophic consequences." *Id.* Neither this case nor any past or present conduct of BHCEC rises to the elevated threshold so as to adversely affect the Crow Tribe's ability to govern its members or control its internal affairs.

### 4. Jurisdiction Based on the Tribal Right to Exclude.

Two 9th Circuit cases, involving non-Indian use of tribal land, will be referenced by the Defendants as the source of tribal authority to adopt and enforce Title 20. *Water Wheel Camp Recreation Area, Inc. v. LaRance*, 642 F.3d 802 (9th Cir. 2011) and *Grand Canyon Sky Walk Development, LLC. v. 'Sa' Nyn Wa Inc.*, 715 F.3d 1196 (9th Circuit), are similar cases involving disputes relating to trespass upon and possession of vary valuable income producing tribal land.  The cases are distinguishable from this case as in those cases "the tribe's assertion of jurisdiction was proper in light of their significant interest in securing occupancy and control of tribal land . . ." . *Id.*   *Water Wheel*, 642 F.3d at 819, *Grand Canyon*, 715 F.3d at 1199.

Here, the tribal right to exclude does not invest the tribe with jurisdiction as the underlying tribal court case has nothing to do with tribal sovereign authority to regulate and protect tribal rights associated with use of valuable tribal assets or tribal land.

Plaintiff will apply federal common law to conclusively demonstrate Title 20 is unlawful as it exceeds the authority of the Crow Tribe.

**E.**  BHCEC does not seek damages.

**F.**  BHCEC has no knowledge of pendency or disposition of current related state or federal litigation.

**G.**  BHCEC seeks a stipulation there are not treaty provisions or federal statutes which authorize the Crow Tribe to regulate electric utilities in connection with delivery of electricity to members and consumers within the Crow Reservation.

  **H.** BHCEC requests the parties be granted thirty (30) days after the preliminary pretrial conference within which to determine whether additional parties should be joined or the pleadings amended.

  **I.** BHCEC submits the central legal issue, whether the Crow Tribe has authority to regulate utilities by enforcement of Title 20, is suitable for disposition through a timely filed Motion for Summary Judgment.

  **J.** BHCEC has provided Defendants' counsel by e-mail and U.S. mail, Plaintiff's Initial Disclosures containing the names, addresses, and telephone numbers of the individuals having relevant information, and summaries thereof, on December 6th, 2018. That information will be supplemented as required.

  **K.** BHCEC has insurance coverage through Federated Rural Electric Insurance Exchange which has been disclosed to Defendants' counsel in Plaintiff's Initial Disclosures referenced immediately above.

  **L.** Although brief discussions have occurred, relating to settlement, there are presently no settlement offers under consideration by the parties.

  **M.** BHCEC is unaware of any special procedures applicable to this case.

  **N.** BHCEC has not yet decided upon expert witness requirements and requests assignment of a designated date for disclosure in the Court's scheduling order.

  RESPECTIVELY SUBMITTED this 13th day of December, 2018.

           <u>/s/ James E. Torske</u>
           James E. Torske

## CERTIFICATE OF SERVICE

    I, James E. Torske, Counsel for Plaintiff, hereby certify that I electronically filed the foregoing document with the Clerk of Court for the United State District Court for the District of Montana, using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

    Dated this 13th day of December, 2018.

                                      /s/James E. Torske
                                       James E. Torske