# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| BIG HORN COUNTY ELECTRIC, COOPERATIVE, INC., | ) Case No. CV-17-065-BLG-SPW-TJC )  |
| Plaintiff, | ) **BRIEF IN SUPPORT OF PLAINTIFF'S** ) **OBJECTION TO FINDINGS AND** ) **RECOMMENDATIONS OF U.S.** |
| -v- | ) **MAGISTRATE JUDGE** ) |
| ALDEN BIG MAN, *et al.*, | ) ) |
| Defendants. | ) |

Submitted this 12th day of August 2020.

By James E. Torske
    Counsel for Plaintiff

## TABLE OF CONTENTS

Legal Standard ……………………………………………………………………… 1

Basis for Objection ………………………………………………………………… 2

Magistrate Judge's Factual Findings Subject to Objection …….………………… 2

Conflicting Evidence in the Record ……………………………………………… 4

Homesite Lease ………………………………………………………………………5

Title Statue Report ……………………………………………………………….  6

Montana Rule ……………………………………………………………………10

Montana's First Exception …………………………………………………………11

Montana's Second Exception ………………………………………………………13

Conclusion ………………………………………………………………………… 14

Certificate of Compliance …………………………………………………………  15

Certificate of Service ……………………………………………………………… 15

---------------------------------------------------------------

## TABLE OF AUTHORITY

*Atkinson Trading Co. v. Shirley*, 532 U.S. 645 (2001) ……………………………. 3, 11

*Big Horn Elect. v. Adams*, 219 F.3d 944 (9th Cir. 2000) ……………………........ 8-13

*Burlington Northern Railroad Co. v. Redwolf*, 196 F.3d 1059 (9th Cir. 2000)……. 5, 8, 14

*Escondido Mutual Water Company v. LaJolla Mission Indians*,
    466 U.S. 765 (1984) ………………………………………………………………   6

*Glacier Elec. Coop. v. Gervais,* 2015 WL 13650531, (D. Mont. 2015) …………   14

*Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9 (1987) …………………………….10

*Montana v. United States,* 450 U.S. 544 (1981) …………….………………….4, 9, 13, 15

*Phillip Morris Usa v. King Mountain Tobacco Co.,* 569 F.3d 932 (9th Cir. 2009) . 3, 11, 14

*Plains Commerce Bank v. Long Family Land & Cattle Co.,*
 544 U.S. 316, 341 (2008) ……………………………………………………….13

*State Dept. of Transportation v. King*, 191 F.3d 1108 (9th Cir. 1999) ……………….7

*Strate v. A-1 Contractors*, 520 U.S. 438 (1997) ………………….………… 3, 5-8, 13

*United States v. Wheeler*, 435 U.S. 313 (1979) ……………………………………. 6

*Wilson v. Marchington*, 127 F.3d 805 (1997) …………………………………....  7

*Window Rock Unified Sch. Dist. v. Reeves*, 861 F.3d 894 (9th Cir. 2017) …….   10

Crow Allotment Act of 1920, 41 Stat. 751 ….……………………………………. 4

James E. Torske, Esq. (Bar #1563)
Torske Law Office, P.L.L.C.
314 North Custer Avenue
Hardin, Montana  59034
Telephone:  (406) 665-1902
Fax:  (406) 665-1903
torskelaw@tctwest.net

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| BIG HORN COUNTY ELECTRIC, COOPERATIVE, INC., | ) **Case No. CV-17-065-BLG-SPW-TJC** |
| | ) |
| Plaintiff, | ) **BRIEF IN SUPPORT OF PLAINTIFF'S OBJECTION TO FINDINGS AND RECOMMENDATIONS** |
| -v- | ) **OF U.S. MAGISTRATE JUDGE** |
| ALDEN BIG MAN, *et al.,* | ) |
| Defendants. | ) |

**LEGAL STANDARD**

Pursuant to Fed R. Civ. P. 56(c), when a party demonstrates there are no genuine issues of material fact and entitlement to judgment as a matter of law, summary judgment may be entered.  The Magistrate Judge pointed out that "Material facts are those which may affect the outcome of the case."  (Doc. 129 at 5.)

1

The Magistrate Judge entered Findings and Recommendations that Tribal Defendants and Big Man be granted summary judgment and Big Horn's motion for summary judgment denied. All parties are entitled to file objections to the findings and recommendations of the Magistrate Judge pursuant to 28 U.S.C. § 636 in accordance with L.R. 72.3.

## BASIS FOR OBJECTION

The Magistrate Judge overlooked or ignored material facts which establish, by uncontested conclusive evidence in the record and controlling precedent, that Big Horn's activities, regarding delivery of electric energy and services to Mr. Big Man, occurred not upon tribal trust land but upon congressionally approved rights of way and thus on land equivalent to fee land alienated to non-Indians. Big Horn, not Defendants, is entitled to summary judgment.

Big Horn objects to the Magistrate Judge's combined factual and legal findings that because Big Man had a Homesite Lease on a tract of tribal land, which had been designated by Congress as Agency Reservation by Section 5 of the Crow Act of 1920, and was subject to a congressionally granted right of way to Big Horn for delivery of electric service and energy within the entire Agency Reservation, including to Big Man, the Crow Tribe nonetheless possessed retained inherent right of absolute and undisturbed right of occupation over that land and the right to exclude Big Horn, and thus the right to regulate Big Horn through enforcement of Title 20. (Doc. 129 at 11-15).

## MAGISTRATE JUDGE'S FACTUAL FINDINGS SUBJECT TO OBJECTION

2

1. At page 11 of the Magistrate's findings, the Court referenced Big Horn's argument that allotment of land to individual tribal members and sale of reservation land in fee to non-Indians divested the Crow Tribe of the right to exclude and thus the right to regulate, and stated: "The Court disagrees." Referring to the Declaration of Katherine R. Seaton Regarding Title Status Report (Doc. 114-3 at 4-6) the Magistrate Judge concluded: "In reviewing the submitted materials, the Court finds that Big Man's property is designated tribal trust land . . . [T]herefore, . . . the Tribe retains regulatory and adjudicatory authority over nonmember conduct on this land." (Doc. 129 at 10-11) Big Horn objects to the Judge's finding that "BHCEC offers no authority for the proposition that a tribe is divested of its right to exclude nonmembers from tribal lands certain areas of the reservation are held in trust for individual members or owned by non-Indians." *Id.* At 11.

The Court's statement is clearly erroneous. First, Big Horn's arguments, set forth in Doc. 83-4 at 15-16, do not relate to divestiture of tribal regulatory authority, as the Court stated, but are limited to the Ninth Circuit requirement there be a nexus between the tribal assertion of jurisdiction and the consensual relationship itself, articulated in *Phillip Morris Usa v. King Mountain Tobacco Co.*, 569 F.3d 932, 941 (9th Cir. 2009). In that case, the Ninth Circuit Court followed *Strate v. A-1 Contractors*, 520 U.S. 438 (1997) and *Atkinson Trading Co. v. Shirley*, 534 U.S. 645 (2001), both of which held the fact a nonmember has a consensual relationship with a tribe or tribal members does not mean the tribe has jurisdiction over that nonmember. The cases clearly limit tribal jurisdiction, under the

consensual relationship exception, set forth in the path marking case, *Montana v. United States*, 450 U.S. 544 (1981), to suits or tribal regulation having a clear "nexus to the consensual relationship itself".

## CONFLICTING EVIDENCE IN THE RECORD

The Court requested that the parties supplement the record regarding "<u>location and land status of Big Man's residence</u>". *Id.* At 10. Big Man, through one of his attorneys' Declaration, submitted for the record Big Man's Homesite Lease (Doc. 114-2 at 4-6) and a Title Status Report for Tribal Tract No. T-7011-W upon which Big Man's residence is located (Doc. 114-3 at 4-6) neither of which were complete copies of the documents which they were represented to be.

The Homesite Lease did not contain the legal description of the 2.09-acre tract subject to the lease. The Title Status Report (TSR) contained only pages 1 through 3, appendix "A" and "B", the description and ownership of the 288.83 acres set aside by Congress as an Agency Reservation in Section 5 of the Crow Allotment Act of June 4, 1920. The TSR did not include appendix "C" and "D", identified on page 1 of 7 as containing congressionally approved "title documents which have been approved by a properly delegated Federal official and are required to be recorded by law . . . and incorporated in this Title Status Report." *Id.* at 4. Although apparently accepted as presented by the Judge, the incomplete documents did not accurately reflect the actual location and land status of Big Man's residence as requested by the Judge. Tribal Defendant's Supplemental Statement of

4

Undisputed Facts (Doc. 114 at 4) recites that the TSR was "complete, correct and without defect", which it was not.

Recognizing, whether or not Big Man's presentation of incomplete documents was intentional, the status of the land is one of several important elements to be considered associated with the analysis necessary to determine the extent of tribal jurisdictional authority, Big Horn engaged in extensive efforts, including a freedom of information request to the Bureau of Indian Affairs, to obtain the complete documents that were ultimately made a part of the record. (Docs. 124 and 128)

## HOMESITE LEASE

The Homesite Lease metes and bounds description (Doc. 124-1) contains intrinsic evidence which demonstrates the Crow Tribe does not have the right of absolute use and occupation of the land within Tribal Tract No. T-7011-W. That evidence is: (1) Big Man's 2.09-acre leased tract is bordered on the east by the Burlington Northern Railroad right of way and on the west by a state highway right of way. Each right of way has been subject to litigation and determined by the United States Supreme Court or Ninth Circuit Court to be land "equivalent for nonmember governance purposes, to alienated, non-Indian land. *Strate, supra, Burlington Northern Railroad Co. v. Redwolf*, 196 F.3d 1059, 1063 (9th Cir. 2000); (2) The Homesite Lease is bordered on the south by a congressionally authorized and approved subdivision of tribal land (Affidavit of Walter R. Egged, Doc. 113-1 at 5) pursuant to which long term leases, like Big Man's lease, were granted by the tribe without reserving

5

a gatekeeping right "valid and binding only after approval by the Secretary." (Doc. 114-1 at 6) Just like right of way grants, Congress has acted within its plenary power through enactment of federal statutes, to bestow rights throughout the Agency Reservation for various purposes, including subdivided parcels of tribal land, thereby limiting the rights of another, the Crow Tribe, to the same land. "[A]ll aspects of Indians sovereignty are subject to defeasance by Congress." *Escondido Mutual Water Company. v. La Jolla Band of Mission Indians*, 466 U.S. 765, 787 n.30 (1984) (citing *United States v. Wheeler*, 435 U.S. 313, 323 (1979).

## TITLE STATUS REPORT

Unquestionably, *Strate* and the BNRC case confirm the Crow Tribe has no right to exclude with regard to the Agency Reservation land subject to rights of way adjacent to the Big Man Homesite Lease. There is no principled distinction to be made between the jurisdictional analysis applicable to a congressionally granted utility easement or right of way to Big Horn for delivery of electricity to Big Man's Homesite Lease. Big Horn's activities all occur on land deemed "alienated" to non-Indians, not on tribal land.

Again, Big Man's and Tribal Defendants' failure to provide a "true and correct copy" of the TSR resulted in an erroneous outcome and recommendation by the Magistrate Judge for the following reasons: (1) The withheld appendix "C" and "D" (Doc. 128 at 4-7) contain intrinsic evidence identifying, (a) twenty-two (22) perpetual congressionally authorized and approved easements and rights of way for

6

highway and roads, railroad, and electricity and telephone service, (b) sixteen (16) unexpired congressionally authorized and approved utility easements and rights of way providing for delivery of electricity, telephone and fiber optic service, and, (c) most importantly, the perpetual electric utility easement and right of way granted to Big Horn covering the entire 288.830 acres within the Agency Reservation, beginning January 10, 1955, long before enactment of Title 20. (Doc. 128-1 at 4) Similar perpetual easements were granted to Big Horn and shown as encumbrances on the TSR covering the entire Agency reservation tract, beginning July 31, 1972, April 4, 1992, and June 21, 2002. (*Id.* At 5-6).

The legal effect of the contents of the TSR, not included in the portions filed by Defendants (Doc. 114-3) but ultimately made a part of the record (Doc. 128), which should have been recognized by the Magistrate Judge, is subject to and governed by the following precedent: (1) State Highway ROW – "The right-of-way . . . acquired for the State's highway renders the 6.59-mile stretch equivalent, for nonmember governance purposes, to alienated, non-Indian land." *Strate, supra*, at 454, *Wilson v. Marchington,* 127 F.3d 805, 814 (9th Cir. 1997), *See also, State Dept. of Transportation v. King*, 191 F.3d 1108, 1112 (9th Cir. 1999), holding the tribe lacks regulatory authority to enforce tribal employment ordinances (TERO) in connection with MDOT worker employment within state highway right of way through the reservation. (2) Railroad ROW—"under the congressionally-granted right-of-way, the tribe had no reserved power to exclude the railroad from the reservation, nor to exercise dominion or control over the right-of-way. As in *Strate*, the tribe has lost

7

the "right of absolute and exclusive use and occupation" of the right-of-way . . . " *Burlington N. Railroad Co., supra*, at 1063. (3) Big Horn's easements—"The state highway in *Strate* was built on a right of way granted by the federal government pursuant to 25 U.S.C. §§ 323-28, the same authority used to grant Big Horn's easements for its transmission and distribution lines . . . under *Redwolf* and *Strate*, therefore Big Horn's rights-of-way are the equivalent of non-Indian fee land for the purpose of considering the limits of the tribe's regulatory jurisdiction." *Big Horn Elect. v. Adams*, 219 F.3d 944 (9th Cir. 2000).

The Magistrate's findings that Big Horn "Offers no authority to support its argument that a tribe loses the right to exclude—and thus to regulate—non-Indians from tribal trust land which has been designated for a particular purpose" is erroneous. (Doc. 129 at 12) So also is the Judge's conclusion Big Horn's argument, because Big Horn has an easement "the Crow Tribe no longer has the right to exclude it from Big Man's property", fails. (*Id*. at 13)

Both Plaintiff's Brief in Support of Summary Judgment (Doc. 83-4 at 11), and the complete TSR admitted into evidence without objection, (Doc. 128) establish the Crow Tribe does not have an inherent power to exclude Big Horn from the Agency Reservation where Big Man resides as the Judge concluded. (Doc. 129 at 13).

Big Horn objects to the finding; "Thus, while the easement allows Big Horn's access to tribal lands to provide electric service to tribal members, Title 20 governs the termination of that same service on tribal lands." (*Id.* at 14) As a matter of *stare decisis*, the 9th Circuit Court, in *Big Horn Elect. v. Adams, supra*, identified Big

8

Horn's right of ways as "the equivalent of non-Indian fee land for the purpose of considering the limits of the tribe's regulatory jurisdiction." 219 F.3d at 950-1. Big Horn has utility easements covering all land, including the subdivisions and the townsite, as well as Big Man's homesite, in the Agency Reservation which must be considered as equivalent to fee land. (Doc. 128 at 4-7)

Big Horn also objects to the Magistrate Judge's finding ". . . the issue of whether the Crow Tribe has regulatory and adjudicatory jurisdiction to apply this code section (Title 20) on non-tribal fee lands is not before the Court" and also, "it is not necessary to consider whether the tribe's authority to regulate BHCEC's activities based on its right to exclude would also extend to lands held in trust for individual members, by non-Indians, or by the state or federal government." (*Id. a*t 14-15)

Big Horn's Complaint (Doc. 1 at 10) plainly demonstrates the Judge's statements are erroneous. Paragraph 27 of the Complaint expressly alleges Big Man seeks tribal regulation over Big Horn to its detriment, "through assertion of Tribal Court jurisdiction, tribal regulation . . . and an extension of tribal authority over . . . Big Horn, a nonmember, for activity on Indian and non-Indian land . . . "

Big Horn objects to the finding the Crow Tribe "has maintained the right to exclude BHCEC from Big Man's property; and has regulatory and adjudicative authority over BHCEC's conduct on the property." (*Id.* at 15).

Plainly, as a matter of settled law, it is a fact Big Horn's activities regarding delivery of electric service and energy to the Agency Reservation, including to Big Man, occurred upon congressionally approved rights-of-way determined by the 9th

Circuit Court to be "the equivalent of non-Indian fee land . . . " *Big Horn Elect. v. Adams* at 950. All of the Magistrate Judge's findings, to the contrary, that Big Horn's activities occurred on tribal land are erroneous.

The Magistrate Judge's finding the Crow Tribe has regulatory and adjudicatory authority over Big Man's tribal trust land and over Big Horn's conduct on the property, based upon the tribe's right to exclude Big Horn (Doc. 129 at 13) is clearly in conflict with the fact the property must be considered fee land for the purpose of determining tribal jurisdictional and regulatory authority. The Judge has made an error concerning a critical material fact which affects the outcome of the case (Doc. 129 at 5).

**MONTANA RULE**

Big Horn's activities relative to delivery of electric service and energy to Big Man's property can only be described as activities of a nonmember on non-Indian fee land, not on tribal land. *See, Big Horn Elect. v Adams, supra,* at 950-51. As such, there is not a presumption of civil jurisdiction or regulatory authority over Big Horn nor are *Iowa Mutual Ins. Co., v LaPlante*, 480 U.S. 9 (1987) or *Window Rock Unified Sch. Dist. v. Reeves*, 861 F.3d 894 (9th Cir. 2017), jurisdictional authority in this matter as determined by the Magistrate Judge. Both cases are clearly distinguishable, relating only to the issue of exhaustion of tribal court remedies, therefore, the main rule set forth in *Montana, supra,* at 564-65, that absent a treaty or a federal law, a tribe has no civil regulatory authority over tribal nonmembers applies, subject only to two exceptions.

10

**MONTANA'S FIRST EXCEPTION**

Big Horn objects to the Magistrate Judge's finding "that the first Montana exception is satisfied." (Doc. 129 at 18) It is undisputed that Big Man's tribal court complaint is based solely upon Big Horn's alleged violation of "Title 20 of the Crow Law and Order Code . . . " (Doc. 1-2, Doc. 86, Doc. 89) The Magistrate Judge referencing Montana's first exception stated: "This exception also requires a nexus to the consensual relationship between the nonmember and the disputed commercial contacts with the tribe". (Doc. 129 at 15) The 9th Circuit Court in the *Big Horn Elect.* case, concluded there is "a consensual relationship with the tribe because Big Horn entered into contracts with tribal members for provision of electrical services." 219 F.3d at 951. The Court also stated: "The mere fact that a nonmember has some consensual contacts with a tribe does not mean that the tribe has jurisdiction over all suits involving that nonmember, or even over all such suits that arise within the reservation; the suit must also arise out of those consensual contacts." *Phillip Morris Usa, supra*, at 941. In other words, '[a] nonmember's consensual relationship in one area does not trigger tribal civil authority in another – it is not in for a penny, in for a Pound." *Atkinson Trading Co., supra*, at 656.

Although the contracts are, according to the Court in the *Big Horn Elect.* case, the consensual relationships, none of Big Horn's contracts to provide electricity to tribal members are at issue in the lawsuit filed in the Tribal Court. (Doc. 1-6, Ex. 4, p. 10, ¶ 25-26) Rather, the Tribal Court lawsuit centers entirely on Big Horn's violation of Title 20 which is unrelated to Big Horn's actual provision of service in

conformance with, and not in violation of any contractual obligation owed Big Man as a member of Big Horn. Doc. 1-2). In other words, there were no "disputed commercial contacts with the tribe" having a nexus to the contract, the consensual relationship, between Big Horn and Big Man.

Big Horn objects to the Magistrate Judge's finding that a "nexus exists between the consensual relationship and the disputed regulation." (Doc. 129 at 18) That finding conflicts with the 9th Circuit finding regarding Montana's first exception that: "The District Court correctly concluded that Big Horn formed a consensual relationship with the tribe because Big Horn entered into <u>contracts</u> with tribal members for provision of electrical services." (Emphasis supplied, 219 F.3d at 957)

It has never been alleged, nor could it be, that the contractual relationships with Big Horn which "formed a consensual relationship with the tribe" was in any way breached nor was it a "disputed commercial contact with the tribe." The Judge's finding a nexus exists between the consensual relationship and Title 20, (*Id. at 18),* in effect would eliminate a continuing consensual relationship of the type contemplated by Montana's first exception. If recipients of electrical service on the reservation need not perform contractual obligations, there would no longer be a consensual relationship upon which to predicate tribal governance under Montana's first exception.

There is no place in the analysis necessary to determine the extent of tribal regulatory authority for a "but for" view as adopted by the Magistrate Judge. If allowed, it would have an effect repeatedly rejected by Courts, because it would

"swallow Montana's main rule, because virtually any tribal . . . (regulation) would fall under the . . . (first) exception, a result that the Supreme Court has never endorsed and which conflicts with the Supreme Court's view that tribal jurisdiction is limited." *Big Horn Elect.* at 951. (Same analysis as applicable to the second exception in the Big Horn case.)

### MONTANA'S SECOND EXCEPTION

Big Horn objects to the Magistrate Judge's conclusion that Big Horn's conduct of terminating electric service during winter months has a direct effect upon tribal members and the tribe satisfying the second exception. The Judge's conclusion unquestionably exceeds the scope of the second Montana exception. The second Montana exception – the political integrity exception – only applies if Big Horn's activities on the reservation are of an aggravated nature which would "menace" the Crow Tribe's ability to govern itself. *Strate*, 520 U.S. at 457-58. "The conduct must do more than injure the tribe, it must imperil the subsistence of the tribal community." *Plains Commerce Bank v. Long Family Land & Cattle Co.,* 544 U.S. 316, 341 (2008)*.* "Read in isolation, the Montana rule's second exception can be misperceived.", and it was by the Magistrate Judge. *Strate*, 520 U.S. at 459. "Key to its proper application, however, is the Court's preface: 'Indian Tribes retain their inherent power [to punish tribal offenders,] to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members . . . But [a tribe's inherent power does not reach] beyond what is necessary to protect tribal self-government or to control internal relations." *Id.*

13

*Glacier Elec. Coop. v. Gervais, 2015 WL 13650531, (D. Mont. 2015)* is not controlling precedent, as cited by the Magistrate Judge, for the notion Big Horn's conduct had a direct effect on the health and welfare of the Crow Tribe. That case is again no more than a tribal jurisdiction exhaustion case considering only whether the Blackfoot Tribe had colorable authority over Glacier Electric and thus, under the circumstances, exhaustion of tribal remedies was necessary.

The generalized, perceived or imagined threat that turning electricity off poses for any society is not what the second exception is intended to capture. See, *Phillip Morris, supra,* at 943, *Burlington Northern Railroad Co., supra*, at 1065, (nonmembers impact must be "demonstrably serious", injury of multiple tribal members does not satisfy Montana's second exception.) What the second exception requires Defendants to prove by demonstrative evidence, and didn't, is that the absence of tribal authority to enforce Title 20 would harm the tribe's ability to govern its own members and/or diminish the tribe's control over its internal relations.

Big Man's tribal court suit does not assert or claim damages arising from the tribe's inability to govern its own members or control internal relations but reaches beyond tribal authority to control the conduct of a nonmember, Big Horn. Big Horn's expectation and requirement that its members comply with the terms of their contracts with Big Horn does not have an adverse effect upon the internal relations that the Crow Tribe has with its members. Thus, Montana's second exception does not apply.

**CONCLUSION**

Because Defendants have not, by proof consisting of material fact, established tribal jurisdiction over Big Horn based upon the Crow Tribe's right to exclude or either exception to the main rule set forth in *Montana v. United States, supra*, that the inherent authority of an Indian tribe does not extend to the activities of nonmembers, Big Horn objects to the findings and recommendations of the Magistrate Judge that the Tribal Defendant's motion for summary judgment be granted, and Big Man's motion for summary judgment be granted. Big Horn requests that the Court not accept the recommendations of the Magistrate Judge but instead issue its order granting Plaintiff's motion for summary judgment.

Respectfully submitted this 12th day of August 2020.

/s/James E. Torske
James E. Torske
Counsel for Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I certify that this response brief is printed with a proportionately spaced Times New Roman text typeface of 14 points, is double spaced except for footnotes and for quoted and intended material. Pursuant to Local Rule 7.1(d)(2)(E), I certify that the word count calculated by Microsoft Word for Windows is 3,778 words, excluding the caption, index, table of cases, and certificates of service and compliance.

/s/ James E. Torske
James E. Torske

## CERTIFICATE OF SERVICE

I, James E. Torske, Counsel for Plaintiff, hereby certify that I electronically filed the foregoing document with the Clerk of Court for the United State District Court for the District of Montana, using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated this 12th day of August 2020.

/s/James E. Torske
James E. Torske