IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BIG HORN COUNTY ELECTRIC COOPERATIVE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ALDEN BIG MAN, *et al*, <br><br> Defendants. | CV 17-65-BLG-SPW <br><br> ORDER ADOPTING FINDINGS AND RECOMMENDATIONS |

Before the Court are U.S. Magistrate Judge Cavan's Findings and Recommendations (Doc. 129) on the parties' cross-motions for summary judgment. (Doc. 83, 84, 87). Plaintiff Big Horn County Electric Cooperative ("BHCEC") filed this action against Big Man and several Judges and Justices of the Crow Tribal Courts and Unknown Members of the Crow Tribal Health Board ("Tribal Defendants") seeking declaratory and injunctive relief in response to a civil action Big Man brought against BHCEC in Crow Tribal Court. (*See* Doc. 1-2). Big Man sued BHCEC in Tribal Court for terminating his electrical service in January 2012, alleging that BHCEC's actions violated Title 20 of the Crow Law and Order Code, which bars winter termination of electrical service except with notice and approval by the Tribal Health Board. (Doc. 1-2). Judge Cavan

1

recommended that BHCEC's motion for summary judgment be denied, Tribal Defendant's motion for summary judgment be granted, and Big Man's motion for summary judgment on the issue of whether his membership agreement waived the Crow Tribe's power to regulate BHCEC be granted.

BHCEC timely objected. (Doc. 132). BHCEC makes eight objections, falling into three buckets. BHCEC objects to Magistrate Judge Cavan's findings that the land at issue, Big Man's homesite, is tribal trust land and subject to tribal jurisdiction, and that, even if the land was alienated to non-tribal members, both of the *Montana* exceptions allow the Tribe to exercise jurisdiction. (Doc. 133). Big Man and Tribal Defendants filed responses to BHCEC's objections. (Doc. 135 and 136). The Court will address each area of objection in turn after summarizing the applicable factual and legal background. For the reasons stated hereafter, Judge Cavan's Findings and Recommendations are adopted in full.

I. **Standard of Review**

The parties are entitled to *de novo* review of those findings or recommendations to which they object. 28 U.S.C. § 636(b)(1). When neither party objects, this Court reviews the Magistrate's Findings and Recommendation for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).

## II.     Factual and Procedural Background

The Crow Reservation was established in 1886 by the Second Treaty of Fort Laramie and was set apart for the absolute and undisturbed use and occupation by the Crow Tribe. *Montana v. United States*, 450 U.S. 544, 548 (1981). Congress subsequently reduced the size of the reservation to 2.3 million acres. *Id.* Under the General Allotment Act of 1887 and the Crow Allotment Act of 1920, Congress authorized certain divisions and conversions of tribal land into fee and then, eventually, alienation of Reservation land to non-Indians. *Id.* This created a patchwork of ownership, with portions of the Reservation owned by the federal government in trust for the Tribe and its members, as well as fee land owned by tribal members and non-tribal members. *Big Horn County Elec. Coop. v. Adams*, 219 F.3d 944, 948 (9th Cir. 2000).

BHCEC provides electrical service to Southeastern Montana and Northern Wyoming and has been judicially-recognized as the primary provider of electrical services on the Crow Reservation. (Doc. 101 at 1); *Adams*, 219 F.3d at 948. In 2000, the Tribe and its members made up approximately half of BHCEC's membership. *Id.* Big Man was one such member. (Doc. 101 at 2). Big Man, an enrolled member of the Crow Tribe, lives on trust land leased to him by the Tribe. (Doc. 116 at 1). He signed up for electrical service to his residence in 1999, and, when he joined BHCEC, he signed a BHCEC Application for Membership and for

3

Electrical Service, which contained a choice of law provision. (Doc. 1-6; 101 at 1).

On January 11, 2012, BHCEC notified Big Man that his account was delinquent, and that it would terminate service if non-payment continued. (Doc. 101 at 6-7). Big Man did not pay and BHCEC disconnected Big Man's service on January 26, 2012. (Doc. 101 at 7). Big Man sued BHCEC in Crow Tribal Court alleging that BHCEC's termination violated Title 20, Chapter 1 of the Crow Law and Order Code, which provides that "no termination of residential service shall occur between November 1 and April 1 without specific prior approval of the Crow Tribal Health Board." (Doc. 1-2). Initially, the Crow Trial Court dismissed the action based on lack of jurisdiction, but the Crow Court of Appeals held that the Tribal Courts had jurisdiction and remanded the case. (Doc. 1-4; 1-5; 1-7). BHCEC then filed this suit seeking declaratory and injunctive relief. (Doc. 1).

BHCEC asserts that the Crow Tribal Court lacks jurisdiction over BHCEC as relating to Big Man's suit. Each party moved for summary judgment on the undisputed material facts. (Doc. 83, 84, 87). Judge Cavan found that Defendants were entitled to summary judgment on both the Tribe's jurisdiction to regulate and adjudicate BHCEC's conduct as it relates to Big Man as well as on the issue of the enforceability of BHCEC's choice of law provision in its membership agreement.

### III. Discussion

#### A. Objections

The primary question governing each of BHCEC's objections is whether the Crow Tribe has legislative and adjudicative authority over BHCEC, a non-Indian entity, and its conduct on Big Man's land. If the Tribe has retained the right to exclude, then it may regulate BHCEC's conduct. If the Tribe has been divested of its right to exclude BHCEC on Big Man's land, then it may only regulate BHCEC under the narrow *Montana* exceptions. The first exception applies to the activities of non-members who enter consensual relationships with the Tribe. *Montana*, 450 U.S. at 565. However, the dispute between the non-member and the Tribe must have a nexus with that consensual relationship. The second exception applies where a tribe maintains jurisdiction over a non-member's conduct because that conduct has a direct effect or poses a threat to the political integrity, economic security, or health and welfare of the tribe. *Montana*, 450 U.S. at 566.

1. Right to exclude

Inherent sovereign tribal powers, such as the ability to exercise regulatory and adjudicative jurisdiction, do not typically extend to non-members of the tribe. *Montana*, 450 U.S. at 565. This prohibition on tribal regulation is strongest when that non-member's activity occurs on fee simple land (as opposed to land held in trust) owned by non-Indians. *Plains Commerce Bank v. Long Family Land &*

*Cattle Co.*, 554 U.S. 316, 328 (2008); *see also Strate v. A-1 Contractors*, 520 U.S. 438, 446 (1997). Determining the status of the land at issue is key; if the land has not been alienated (that is, if a tribe has retained the right to exclude), then the tribe retains "considerable control" over non-member conduct on tribal lands. *Strate*, 520 U.S. at 454.

To determine whether land has been alienated from tribal control, the first step is to look to the fee-status of the land. *Adams*, 219 F.3d at 949. If the land is held in fee simple by non-members, the land has been alienated and the tribe has lost the right to exclude. *Montana*, 450 U.S. at 562. If the land is still held by the tribe in trust, the court must determine whether the property should be considered the equivalent of non-Indian fee land, looking to whether the tribe has retained "dominion and control" over the land. *Adams*, 219 F.3d at 950. Rights-of-way created through grants of Congress and with the consent of the tribe generally are considered equivalent to non-Indian fee land; even where the land is not open to the public nor under state control, under *Strate* and its 9th Circuit progeny, the grant of the right-of-way and the corresponding loss of control divests the tribe of legislative and adjudicative authority. 520 U.S. at 454-56; *see Red Wolf*, 196 F.3d at 1063, and *Adams*, 219 F.3d at 950. In *Adams*, the 9th Circuit determined that BHCEC's rights-of-way for transmission and distribution systems were effectively non-Indian land for jurisdictional purposes. 219 F.3d at 950.

6

Where tribes possess authority to regulate the activities of non-members, civil jurisdiction presumptively lies in tribal courts unless affirmatively limited by a specific treaty section or federal statute. *Strate*, 520 U.S. at 453.

Judge Cavan determined, relying on Bureau of Indian Affairs ("BIA") documents, including the Title Status Report, that Big Man's homesite is designated tribal trust land owned by the Crow Tribe and held in trust by the United States. (Doc. 129 at 10). From that determination, Judge Cavan found that, unless abrogated by a treaty provision or federal statute, the Tribe may regulate non-member conduct on the land. Judge Cavan rejected BHCEC's argument that the Tribe's authority was divested by the General Allotment Act of 1887, the Crow Allotment Act of 1920, or the Tribe's prior designation of the land for public purposes because those acts are insufficiently explicit to abrogate jurisdiction. (Doc. 129 at 13).

Judge Cavan further determined that, although BHCEC's easement allowed them to access and service the Tribal land, Title 20 acts as a valid condition on that conduct, "separate and unrelated to BHCEC's easement over Tribal lands to provide electrical service," rather than a loss of the right to exclude. (Doc. 129 at 14). Judge Cavan relied on the Supreme Court's holding in *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 144-45 (1982), that the "lawful property right to be on Indian land [does not] also immunize the non-Indian from the tribe's lesser

7

included power [. . .] to place conditions on the non-Indian's conduct or continued presence on the land." Lastly, Judge Cavan decided that BHCEC's arguments regarding whether the Tribe's authority to apply Title 20 extends beyond tribal land and to non-members or to lands held in trust for individual members by non-Indians are inapplicable to the issue presented in this suit because Big Man's property does not fall into those categories. (Doc. 129 at 14-15).

BHCEC registers six objections to Judge Cavan's findings on this issue. BHCEC first contends that Congress's division of the reservation under the Allotment Acts and subsequent easements limited the rights of the Tribe to the same land in such a way that the rights-of-way represent Congressional defeasance over the entire parcel, rather than just the easements. (Doc. 133 at 4-6). Specifically, BHCEC bristles at Judge Cavan's finding that "BHCEC offers no authority for the proposition that a tribe is divested of its right to exclude nonmembers from tribal lands because certain areas of the reservation are held in trust for individual members or owned by non-Indians." (Doc. 129 at 11; 133 at 3). In support of this objection, BHCEC cites to *Montana* and *Phillip Morris, USA v. King Mountain Tobacco Co.*, 569 F.3d 932, 412 (9th Cir. 2009), for the proposition that a nexus is required to regulate non-member conduct under the consensual relationship exception. While that is a true and correct statement of the law, Judge Cavan correctly noted that the authority cited is not useful for this

section of the analysis. Analyzing the land status does not require a nexus or a consensual relationship. This objection is therefore irrelevant and without merit on this point. The substance of the objection, if it were properly made, is discussed and addressed in Section III.A.2.ii, *infra*.

Likewise, BHCEC complains that Defendants only submitted the partial Title Status Report to the Magistrate, and that BHCEC had to supplement the record with the full metes and bounds description. (Doc. 133 at 6-7). The Court fails to see the purpose of this objection. While it is true that BHCEC provided a more complete Title Status Report, Judge Cavan mentions and relies on the complete report. (Doc. 129 at 10-11). Judge Cavan properly considered the full report and BHCEC's objection on this specific point is without merit.

BHCEC's final four objections on this point concern Judge Cavan's finding that the Tribe has the power to exclude and therefore the Tribe has regulatory authority to apply Title 20 and the adjudicative authority to enforce violations of Title 20. BHCEC asserts that the complete Title Status Report intrinsically demonstrates that the tract should be considered equivalent to non-Indian fee land because it reflects the rights-of-way bounding Big Man's tract. (Doc. 133 at 7). BHCEC also states that *Adams* resolved the issue of whether the Tribe can regulate the utility easement property and that Judge Cavan erred in distinguishing the present case. These objections fail to recognize the distinction between the present

9

case and *Adams*, *Strate*, and *Red Wolf*. Those cases all concerned non-Indian land that had been alienated through a grant of right-of-way. *Strate* and *Red Wolf* involve accidents that occurred directly on the right-of-way and therefore occurred on alienated land. 520 U.S. 438 and 196 F.3d 1059. *Adams* concerned a tax on non-member property. This case regulates non-member actions on trust property. BHCEC attempts to argue that the presence of an electrical easement means the entire property the easement services should be considered fee-equivalent. To hold that the presence of electrical service easements defeats tribal jurisdiction would render the entire Reservation (at least the portions with power) outside of Tribal control—a result clearly in conflict with the purpose of the doctrine that express Congressional intent is required to divest a tribe of jurisdiction over tribal lands. *See McGirt v. Oklahoma*, ___ U.S. ___, 140 S. Ct. 2452, 2462-63 (2020).

BHCEC continues to object that the issue of whether the Crow Tribe has authority to apply Title 20 to non-members on non-tribal fee land is before the Court in this matter. (Doc. 133 at 9). Given the Court's conclusion that Judge Cavan did not err in determining that Big Man's homesite is properly considered tribal land, and that the Tribe correspondingly had the right to condition BHCEC's conduct such as with Title 20, BHCEC's objection is likewise resolved. However, even if the land were alienated from Tribal control, as the Court explains below,

the Tribe still possesses jurisdiction to regulate and adjudicate the dispute under both *Montana* exceptions.

2. The *Montana* exceptions

Judge Cavan found that both *Montana* exceptions apply. Therefore, even if Big Man's homesite is considered alienated, the Tribe would still possess jurisdiction. BHCEC objects to both findings. (Doc. 133 at 12-13).

    i.    Consensual relationship

Judge Cavan found that BHCEC and the Tribe had a consensual relationship because BHCEC entered contracts with tribal members (specifically Big Man) and that a nexus existed between that relationship and the regulation sought to be enforced. (Doc. 129 at 15); *see Adams*, 219 F.3d at 951. BHCEC argues that BHCEC's provision of electrical service cannot be related to the regulation because the underlying Tribal suit is centered on BHCEC's violation of Title 20, which BHCEC asserts is unrelated to its "actual provision of service" to Big Man. BHCEC insists that because the consensual relationship involves contracts, only regulations concerning those contracts have a nexus as contemplated by the first *Montana* exception, and further insists that Title 20 does not regulate those contracts. BHCEC also asserts that if a nexus exists between the consensual relationship and Title 20, it will somehow eliminate the need for Tribal members to adhere to their service contracts.

11

Each of these positions is illogical. Title 20 prevents termination of electrical service during winter months without approval of the tribal health board. BHCEC has chosen to avail itself of the Tribe's customer base and in doing so created a consensual relationship. The Tribe then conditioned one aspect of that service with Title 20. This is exactly the nexus required by the first exception.

Unlike in *Phillip Morris*, where a tribe sought to exercise jurisdiction over a trademark suit when the consensual relationship arose from stores on the reservation that sold Marlboro cigarettes, here the connection is direct. 569 F.3d at 941. Here, the issue directly arises from the association between a tribe and a non-member: the relationship arises from BHCEC's decision to provide electrical service to tribal members on the reservation and the Tribe is seeking to regulate the manner in which BHCEC provides (and stops providing) electrical service. This is not the scenario warned of in *Atkinson Trading Co. v. Shirley* (holding that a tribe could not impose a hotel occupancy tax on a non-member because the connection between the tribe and hotelier stemmed from business dealings separate from hotel use), where the Supreme Court declared that non-members are not "in for a penny, in for a pound," and cautioned that a consensual relationship in one area does not trigger civil tribal authority in another area. 532 U.S. 645, 656 (2001).

The Court also fails to see any merit in BHCEC's contention that the application of Title 20 will allow recipients to cease performing contractual

12

obligations. Title 20 does not allow customers to receive free electrical service; Title 20 merely requires that, for four months of the year, a provider must obtain permission from the Tribe before terminating that service.

    ii.    Direct effects

Judge Cavan concluded that termination of electric service during the winter months has a direct effect on the health and welfare of the Tribe and therefore satisfies the second *Montana* exception. (Doc. 129 at 19). BHCEC declares that this determination "unquestionably exceeds" the scope of that exception. (Doc. 133 at 13). BHCEC claims that, because the absence of tribal authority to enforce Title 20 would not menace the Tribe's ability to govern its members or its internal relations, *Montana*'s second exception does not apply.

This argument ignores the "health and welfare" provision of the exception and selectively quotes from cases where that portion of the exception was not at issue. The conduct at issue here imperils tribal health and welfare on a much greater scale than generalized safety concerns on roadways or railroads as in *Strate* and *Redwolf*. Winter in Montana can be bitterly cold and electric service provides the necessary power to keep the heat on. Termination of that service clearly imperils the health and welfare of any Tribal member who obtains service from BHCEC—a class of approximately 1,700 members—and therefore the Tribe itself. The second *Montana* exception applies.

13

B. Unobjected to portions

The Court has reviewed Judge Cavan's Findings and the parties' briefing. Unobjected portions are subject to clear error review. *See* Section I, *supra*. Neither party objects to Judge Cavan's Finding that the choice of law provision in the BHCEC membership agreement did not constitute a waiver of Tribal sovereign authority and therefore it is not at issue in the instant case. (Doc. 129 at 20-24). The Court finds no error in Judge Cavan's analysis on the issue and adopts those findings.

## IV. Conclusion

Judge Cavan properly determined that under the undisputed material facts, Big Man and the Tribal Defendants are entitled to summary judgment in their favor. Judge Cavan also correctly determined that BHCEC is not entitled to summary judgment in its favor. Accordingly, Judge Cavan's Findings and Recommendations (Doc. 129) are ADOPTED in their entirety. IT IS ORDERED THAT:

1. Tribal Defendants' motion for summary judgment (Doc. 87) is GRANTED;

2. Big Man's motion for summary judgment (Doc. 84) is GRANTED on the issue of whether the membership agreement constituted a waiver of the Crow Tribe's sovereign power to regulate BHCEC; and

14

3. BHCEC's motion for summary judgment (Doc. 83) is DENIED.

DATED this 26th day of February 2021.

                                                       /s/ Susan P. Watters  
                                                      SUSAN P. WATTERS  
                                                      United States District Judge